**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

**LAW OFFICES OF GOLDBERG & GAGE**
Bradley C. Gage, Esq. (Bar No. 117808)_
bgage@goldbergandgage.com
23002 Victory Blvd, Woodland Hills, CA 91367
Tel:   (818) 340-9252
Fax:   (818) 340-9088

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.B., a minor, by and through guardian *ad litem* Elonda Holman, individually and as successor in interest to Terron Boone, deceased; T.A. and T.B., minors, by and through guardian *ad litem* Sharice Armstead, individually and as successors in interest to Terron Boone, deceased; D.S., a minor, by and through guardian *ad litem* Shellondra Thomas, individually;  and SHELLONDRA THOMAS, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br>1. Unlawful Detention and Arrest (42 U.S.C. § 1983)<br>2. Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)<br>3. Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)<br>4. Fourteenth Amendment—Substantive Due Process<br>5. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>6. Municipal Liability—Ratification (42 U.S.C. § 1983)<br>7. Municipal Liability—Failure to Train (42 U.S.C. § 1983)<br>8. False Arrest/False Imprisonment |

9.  Battery (wrongful death)
10. Battery
11. Negligence (wrongful death)
12. Negligence
13. Negligent Infliction of Emotional Distress
14. Violation of Cal. Civil Code § 52.1

**DEMAND FOR JURY TRIAL**

1

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs N.B., by and through guardian *ad litem* Elonda Holman, individually and as a successor in interest to DECEDENT Terron Boone; T.A. and T.B., by and through guardian *ad litem* Sharice Armstead, individually and as successors in interest to DECEDENT Terron Boone; D.S., by and through guardian *ad litem* Shellondra Thomas, individually; and Shellondra Thomas, in each case individually, for their Complaint against Defendants County of Los Angeles and Does 1-10, inclusive, and allege as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and one of the incidents giving rise to this action occurred in this district.

## INTRODUCTION

3. This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal officer-involved shooting of Terron Boone ("DECEDENT") and Shellondra Thomas on June 17, 2020.

///

1

**PARTIES**

2      4.      At all relevant times, DECEDENT was an individual residing in the

3  City of Palmdale, California.

4      5.      Plaintiff N.B. (a minor) is an individual residing in Las Vegas, Nevada

5  and is the natural child of DECEDENT.  N.B., by and through guardian *ad litem*

6  Elonda Holman, sues in her individual capacity as the daughter of DECEDENT and

7  also as a successor in interest to DECEDENT.  N.B. seeks both survival and

8  wrongful death damages under federal and state law.

9      6.      Plaintiffs T.A. and T.B. (minor) are individuals residing in Las Vegas,

10  Nevada and is the natural children of DECEDENT.  T.A. and T.B., by and through

11  guardian *ad litem* Sharice Armstead, sue in their individual capacities as the children

12  of DECEDENT and also as successors in interest to DECEDENT.  T.A. and T.B.

13  seek both survival and wrongful death damages under federal and state law.

14      7.      Plaintiff D.S. (a minor) is an individual residing in City of Rosamond,

15  California, and was in a backseat of Shellondra's car at the time Defendants DOE

16  DEPUTIES stopped the car and started shooting at the car.  D.S., by and through

17  guardian *ad litem* Shellondra Thomas, brings claims under state and federal law in

18  her individual capacity.  D.S. seeks damages under federal and state law.

19      8.      Plaintiff SHELLONDRA THOMAS ("THOMAS") is and was, at all

20  times pertinent hereto, an individual residing in the City of Rosamond, California,

21  and was in a driver's seat of her car when the Defendants started shooting at the car.

22  THOMAS brings claims under state and federal law in her individual capacity.

23  THOMAS seeks damages under federal and state law.

24      9.      At all relevant times, Defendant COUNTY OF LOS ANGELES

25  ("COUNTY") is and was a municipal corporation existing under the laws of the

26  State of California.  COUNTY is a chartered subdivision of the State of California

27  with the capacity to be sued.  COUNTY is responsible for the actions, omissions,

28

COMPLAINT FOR DAMAGES

policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles County Sheriff's Department ("LASD") and its agents and employees.  At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the LASD and its employees and agents complied with the laws of the United States and of the State of California.  At all relevant times, COUNTY was the employer of Defendants DOES 1-10.

10. Defendants DOES 1-7 ("DOE DEPUTIES") are police officers working for the LASD.  At all relevant times, DOE DEPUTIES were acting under color of law within the course and scope of their duties as police officers for the LASD.  At all relevant times, DOE DEPUTIES were acting with the complete authority and ratification of their principal, Defendant COUNTY.

11. Defendants DOES 8-10 are managerial, supervisorial, and policymaking employees of the COUNTY/LASD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the COUNTY/LASD.  DOES 8-10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

12. On information and belief, DOES 1-10 were residents of the COUNTY of Los Angeles.

13. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOE DEPUTIES were acting on the implied and actual permission and consent of Defendants DOES 8-10 and the COUNTY.

14. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-10 were acting on the implied and actual permission and consent of the COUNTY.

15. The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to

Plaintiffs, who otherwise sue these Defendants by such fictitious names.  Plaintiffs will seek leave to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

16.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

17.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

18.     DOES 1-10 are sued in their individual capacity.

19.     On November 30, 2020, Plaintiff N.B. filed comprehensive and timely claims for damages with the COUNTY of Los Angeles pursuant to applicable sections of the California Government Code.  These claims were deemed rejected by operation of law on January 14, 2021.

20.     On December 7, 2020, Plaintiffs T.A. and T.B. filed comprehensive and timely claims for damages with the COUNTY of Los Angeles pursuant to applicable sections of the California Government Code.  These claims were deemed rejected by operation of law on January 21, 2021.

21.     On June 23, 2020, Plaintiffs THOMAS and D.S. filed comprehensive and timely claims for damages with the COUNTY of Los Angeles pursuant to applicable sections of the California Government Code.  These claims were rejected by COUNTY on September 11, 2020.

1

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

2        22.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

3 through 21 of their Complaint with the same force and effect as if fully set forth

4 herein.

5        23.    At the time of the shooting incident giving rise to this lawsuit,

6 DECEDENT was a 31 year-old male.

7        24.    On January 11, 2020, THOMAS was driving her car with DECEDENT

8 sitting in the passenger seat and D.S. sitting at the back seat.  DECEDENT and

9 THOMAS noticed that two unmarked cars were following them.  DECEDENT

10 asked THOMAS to take a right turn by a park to see whether these two cars would

11 keep following them.  DECEDENT then noticed that the two cars kept following

12 them.  Thereafter, THOMAS pulled into an apartment complex's parking lot at 3400

13 15th Street West, Rosamond, California.

14        25.    Defendants DOES 1-5 had stopped THOMAS's car and approached her

15 car with their guns drawn.  At that time, DOES 1-10 did not have reasonable

16 suspicion to believe that THOMAS had violated the law.

17        26.    Defendants DOES 1-5 ignored the fact that THOMAS and D.S. were

18 sitting in the car and failed to de-escalate this situation.

19        27.    While acting under color of state law and in the course and scope of

20 their duties as Sheriff's deputies for the LASD, DOES 1-5 escalated the situation

21 and fired multiple shots at THOMAS, DECEDENT, and D.S. striking and injuring

22 THOMAS and DECEDENT and ultimately killing DECEDENT.

23        28.    At all relevant times, including during all of the shots, THOMAS was

24 unarmed and posed no immediate threat of death or serious bodily injury to any

25 person.  Therefore, the shooting was excessive and unreasonable.

26        29.    At all relevant times, including during all of the shots, D.S. was a

27 minor sitting in the back seat and posed no immediate threat of death or serious

28

bodily injury to any person.  Therefore, the shooting was excessive and unreasonable.

30.    At all relevant times, DECEDENT was extremely fearful of his life and distraught as his brother was found hanging from a tree outside Palmdale City Hall in lynching style.

31.    On information and belief, DOES 1-5 failed to give THOMAS, D.S. and DECEDENT a warning that deadly force would be used prior to shooting.  The shooting violated DOES 1-5's training and standard police officer training, including violating training with respect to the use of deadly force.

32.    After being shot with rounds from a lethal firearm, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment.  Defendants did not timely summon medical care or permit medical personnel to treat DECEDENT.  The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering, and was a contributing cause of DECEDENT'S death.

33.    Before and while being shot with rounds from a lethal firearm, THOMAS kept yelling to DOES 1-5 that her baby was in the car all the while she was bleeding from gunshot wounds.

34.    After the shooting, DOES 6-7 held D.S. against her will without her mother THOMAS's consent for an extended period of time for questioning at Lancaster Office of Los Angeles County Sheriff's Department.

35.    Plaintiffs N.B., T.A., and T.B. are DECEDENT's successors in interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT's interest in this action as the natural children of DECEDENT. Plaintiffs incurred funeral and burial expenses as a result of the shooting.

///

///

## **FIRST CLAIM FOR RELIEF**

**Unreasonable Search and Seizure—Unlawful Detention and Arrest**

**(42 U.S.C. § 1983)**

(By Plaintiffs against Defendant DOES 1-7)

36.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 35 of this Complaint with the same force and effect as if fully set forth herein.

37.     The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable detention in violation of their right to privacy.  42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.  DOES 1-5 violated DECEDENT's right to be free from unreasonable search and seizures, which is guaranteed to him by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

38.     DOES 1-5 violated THOMAS's and D.S.'s right to be free from unreasonable search and seizures, which is guaranteed to them by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

39.     DOES 6-7 violated D.S.'s right to be free from unreasonable search and seizures, which is guaranteed to them by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment, when DOES 6-7 detained D.S. without her mother THOMAS's consent at the Lancaster station for an extended period of time while THOMAS was in a hospital.

40.     At all relevant times, DOES 1-7 acted under color of state law. DOES 1-5 had no reasonable suspicion to detain THOMAS, D.S., and DECEDENT and no probable cause to arrest them.  In addition to the detention itself being unreasonable, the scope and manner of the detention was unreasonable.  It was not necessary to

1 use force against THOMAS, D.S., and DECEDENT in order to take any of them
2 into custody, if that were even necessary.

3     41.    The conduct of the DOES 1-7 was willful, wanton, malicious, and done
4 with an evil motive and intent and a reckless disregard for the rights and safety of
5 THOMAS, D.S., and DECEDENT and therefore warrants the imposition of
6 exemplary and punitive damages as to DOES 1-7.

7     42.    As a direct result of the unreasonable detention and arrest, THOMAS
8 and D.S. experienced severe pain and suffering.  As a direct result of the
9 unreasonable detention and arrest, DECEDENT experienced severe pain, suffering,
10 the loss of life, and enjoyment of life, for which he, through his successor in interest,
11 is entitled to recover damages.

12     43.    Plaintiffs THOMAS and D.S. bring this claim individually and seek
13 damages permitted by law on this claim.

14     44.    Plaintiffs N.B., T.A., and T.B. bring this claim as successors-in-interest
15 to DECEDENT.  Plaintiff N.B., T.A., and T.B. seek survival damages on this claim,
16 including for DECEDENT's injuries, pre-death pain and suffering and loss of life
17 and loss of enjoyment of life.  Plaintiffs also seek attorney's fees under this claim.

18

19       **SECOND CLAIM FOR RELIEF**
20    **Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**
21      (By Plaintiffs Against Defendants DOES 1-5)

22     45.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1
23 through 44 of their Complaint with the same force and effect as if fully set forth
24 herein.

25     46.    On June 17, 2020, THOMAS was driving her car with DECEDENT
26 sitting in the front passenger seat and D.S. in the back seat.

27

28

47.     Defendants DOES 1-5 stopped THOMAS's car at an apartment complex's parking lot at 3400 15th Street West, Rosamond, California when THOMAS had pulled into the parking lot.

48.     DOES 1-5 approached THOMAS's car with their guns drawn.  At that time, DOES 1-5 did not have reasonable suspicion to believe that THOMAS, the driver of the car, had violated the law.

49.     DOES 1-5 failed to de-escalate this situation and ignored that THOMAS and D.S. were sitting in the car.

50.     While acting under color of state law and in the course and scope of their duties as deputies for the LASD, DOES 1-5 escalated the situation and fired multiple shots at THOMAS's car, striking and injuring THOMAS and DECEDENT and ultimately killing DECEDENT.

51.     At all relevant times, including during all of the shots, THOMAS and D.S. were unarmed and posed no immediate threat of death or serious bodily injury to any person.  Therefore, the shooting was excessive and unreasonable.

52.     DOES 1-5 failed to give THOMAS, D.S., and DECEDENT a warning that deadly force would be used prior to shooting.  The shooting violated DOES 1-5's training and standard police officer training.

53.     Defendants' unjustified shooting and other uses of force against THOMAS, D.S. and DECEDENT deprived them of their rights to be secure in their person against unreasonable searches and seizures as guaranteed to them under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

54.     As a result of the foregoing, THOMAS and D.S. suffered physical pain and great emotional distress.

COMPLAINT FOR DAMAGES

55.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death after the shooting, loss of enjoyment of life, loss of life, and lost earning capacity.

56.     The conduct of DOES 1-5 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of THOMAS, D.S., and DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-5.

57.     Plaintiffs THOMAS and D.S. bring this claim individually and seek damages permitted by the law.

58.     Plaintiffs N.B., T.A., and T.B. bring this claim as successors-in-interest to DECEDENT.  Plaintiffs N.B., T.A., and T.B. seek survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.  Plaintiffs also seek attorney's fees under this claim.

### THIRD CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(By Plaintiffs N.B., T.A., and T.B. against Defendants DOES 1-5)

59.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 58 of their Complaint with the same force and effect as if fully set forth herein.

60.     After being shot with a lethal firearm, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment.  Defendants did not timely summon medical care or permit medical personnel to treat DECEDENT.  The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering and was a contributing cause of DECEDENT's death.

61.     The denial of medical care by DOES 1-5 deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

62.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

63.     DOES 1-5 knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

64.     DECEDENT survived for a period of time after incident.

65.     The conduct of DOES 1-5 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-5.

66.     Plaintiffs N.B., T.A., and T.B. bring this claim as successors-in-interest to DECEDENT.  Plaintiffs N.B., T.A., and T.B. seek survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.  Plaintiffs also seek attorney's fees under this claim.

### FOURTH CLAIM FOR RELIEF

### Fourteenth Amendment-Substantive Due Process (42 U.S.C. § 1983)

(By Plaintiffs N.B., T.A., T.B. against DOES 1-5)

67.     Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68.     DOES 1-5 acted under color of state law at all relevant times.

69.     By engaging in the foregoing conduct, DOES 1-5 deprived Plaintiffs N.B., T.A., and T.B. of their rights to a familial relationship with DECEDENT in such a manner as to shock the conscience, including by using excessive and unreasonable deadly force against him and by denying him medical care, all of which caused injuries that resulted in DECEDENT's death.  This conduct violated Plaintiffs' rights, privileges, and immunities secured by the Fourth, and Fourteenth Amendments to the United States Constitution.

70.     By engaging in the foregoing conduct, DOES 1-5 acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective. DOES 1-5 are liable to Plaintiffs for the interference with their familial relationship.

71.     DOES 1-5 thus violated the substantive due process rights of Plaintiffs N.B., T.A., and T.B. to be free from unwarranted interference with their familial relationship with DECEDENT, their father.

72.     As a direct and proximate cause of the acts of DOES 1-5, Plaintiffs N.B., T.A., and T.B. suffered emotional distress, mental anguish, and pain. Plaintiffs N.B., T.A., and T.B. have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

73.     The conduct of DOES 1-5 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs N.B., T.A., and T.B. and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1-5.

74.     Plaintiffs N.B., T.A., and T.B. bring this claim in each case individually and seek wrongful death damages under this claim for the interference with their familial relationship with DECEDENT.  Plaintiffs also seek attorney's fees under this claim.

**FIFTH CLAIM FOR RELIEF**

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(By all Plaintiffs against Defendants COUNTY and DOES 8-10)

75.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 74 of their Complaint with the same force and effect as if fully set forth herein.

76.     DOE DEPUTIES acted under color of law at all relevant times, including during the shooting.

77.     DOE DEPUTIES acted under color of law at all relevant times.

78.     When DOE DEPUTIES unlawfully detained THOMAS and D.S. in their car then fired at THOMAS and D.S. while they were unarmed and committing no crime, failed to de-escalate a situation, DOE DEPUTIES acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY.

79.     When DOES 6-7 unlawfully detained D.S. at a Lancaster Sheriff's Department away from her mother, THOMAS, held against D.S.'s will for extended period of time, and questioned D.S. without THOMAS's consent, DOES 6-7 acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY.

80.     When DOE DEPUTIES unlawfully detained and arresed DECEDENT and then fatally shot DECEDENT while he was committing no crime, failed to de-escalate a situation involving an extremely fearful and distraught person who felt panic and severe fear when he saw two unmarked and unidentified vehicles following the car he was in and who learned about his brother's body being found in lynching style only a week prior to the date of the incident, and also when DOE DEPUTIES denied DECEDENT prompt and necessary medical care after they shot

DECEDENT, DOE DEPUTIES acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY.

81. When DOE DEPUTIES denied DECEDENT prompt and necessary medical care after the shooting of DECEDENT, DOE DEPUTIES acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY.

82. On information and belief, DOE DEPUTIES were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

83. Defendants DOES 8-10, together with other COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a) Using excessive force, including excessive use of deadly force;

(b) Providing inadequate training regarding the use of deadly force, and providing inadequate training with respect to handling situations involving mentally ill individuals and de-escalating a situation involving a mentally ill individual;

(c) Employing and retaining as deputies such as DOE DEPUTIES, whom Defendant COUNTY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d) Inadequately supervising, training, controlling, assigning, and disciplining COUNTY officers and other personnel, including DOE DEPUTIES, whom Defendant COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including a

failure to train with respect to the use of deadly force and de-escalating situations involving emotionally unstable individuals;

(e)    Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by COUNTY officers;

(f)    Failing to adequately discipline COUNTY officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g)    Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(h)    Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i)    Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which law enforcement officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

(j)    Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings and other uses of force, including by failing to discipline, retrain, investigate,

terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people.

84.     By reason of the aforementioned acts and omissions, Plaintiffs THOMAS and D.S. have suffered physical and emotional damages.

85.     By reason of the aforementioned acts and omissions, Plaintiffs N.B., T.A., and T.B. have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

86.     Defendants COUNTY and DOES 8-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, Defendants COUNTY and DOES 8-10, condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

87.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DOES 8-10 acted with intentional, reckless, and callous disregard for the life of THOMAS, D.S., and DECEDENT and for DECEDENT's and all Plaintiffs' constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOES 8-10 were affirmatively linked to and were a significantly influential force behind the injuries of THOMAS, D.S., DECEDENT and Plaintiffs N.B., T.A., and T.B.

88.     The following are only a few examples of continued misconduct by LASD officers, which indicate the COUNTY's failure to properly train its deputies:

a) The October 6, 2020 shooting of Nicholas Burgos, a 39 year-old man shot nine (9) times in the UCLA Harbor Hospital Mental Care Center.

b) The August 31, 2020 shooting death of Dijon Kizzee.

c) The June 26, 2019 shooting of Timothy Neal in his home; case No. 2:20-cv-06315-CBM-JC.

d) The July 3, 2019 shooting death of the unarmed Rickie Starks; Case No. 19STCV38462.

e) The August 16, 2017 shooting death of Kenneth Lewis, Jr.; case No.:2:18-cv-04910-CBM-SK.

f) In *Berry, et al. v. County of Los Angeles, et al.,* Case No.:15-cv-09715-BRO (KSx); in events captured on video, numerous Los Angeles County deputies was beat, pepper sprayed, tased, and fired over 30 bullets without warning at John Berry while seated in his car and killing him. Upon information and belief, the County found that the deputies' use of force was within policy, and none of the deputies were disciplined, reprimanded, retrained, suspended, or otherwise penalized for their actions.

g) In *V.W., et al. v. County of Los Angeles, et al.,* Case No.: 2:18-cv-03684-FMO-ARG; on February 4, 2018 Deputy Gregory Van Hoesen shot and killed the 16 year-old Anthony Weber, shooting him in the back while unarmed.

h) In *K.C.R., et al. v. County of Los Angeles, et al.,* Case No.: 2:13-cv-03806-PSG-SS, on June 21, 2012, the unarmed Kenneth Rivera III was shot and killed by Deputy Norma Silva.

i) In *C.M., et al. v. County of Los Angeles, et al.,* Case No.:2:17-cv-05135-VAP-AGR, on August 2, 2016. Deputy Jeffrey Brito shot and killed the unarmed William Bowers. On information and belief,

Deputy Brito was not disciplined, reprimanded, retrained, suspended, or otherwise penalized for his actions.

j) In *Mitchell v. County of Los Angeles, et al.,* Case No.: CV-8421-RJK (AWx), Defendant County argued that the use of deadly force against an unarmed civilian (Robert Mitchell) was reasonable; the jury found otherwise, returning a $4,000,000 verdict after finding that Deputy Rick Manes used excessive and unreasonable force when he shot the unarmed Mr. Mitchell in the back six times, killing him.  Deputy Manes was not disciplined or retrained for his use of deadly force.

k) In *Guitierrez, et al. v. County of Los Angeles, et al.,* Case No.: cv-10-7608 PSG (AJWx), a jury found that Deputy David Salazar used excessive and unreasonable force when he shot and killed Efrain Gutierrez, and awarded Mr. Gutierrez' family $2,000,000. Deputy Salazar was not disciplined or retrained for his use of deadly force.

l) In In *Beets v. County of Los Angeles, et al.*, Case No.: KC-057667, a jury determined that the use of deadly force by the defendant County deputy, was excessive and unreasonable under the circumstances, and returned a $1,035,000 verdict in favor of the plaintiff.

m) In *Jacobo, et al. v. County of Los Angeles, et al.*, Case No.: CV-11-7212 GW (SSx), on August 8, 2009, County Deputy Mat Taylor shot and killed Ezequiel Jacobo, who was unarmed. Police reports confirmed that Mr. Jacobo was unarmed. Deputy Taylor was not disciplined or retrained for shooting Mr. Jacobo.

n) In *Lobrono, et al. v. County of Los Angeles, et al.*, Case No.: CV-13-03838, on February 1, 2013, County Deputy Ray Huang shot Michael Lobrono, who was unarmed. Police reports confirmed that Mr. Lobrono

was unarmed. Deputy Huang was not disciplined or retrained for his use of deadly force.

o) In *Sanchez v. County of Los Angeles, et al.*, Case No.: CV 13-0383; on April 20, 2013, County Deputy Christopher Gomez shot Chalino Sanchez, who was unarmed and riding his bicycle at the time of the shooting. Police reports confirmed that Mr. Sanchez was unarmed. Deputy Gomez was not disciplined or retrained for his use of deadly force.

p) In *N.K.A., et al. v. County of Los Angeles, et al.*, Case No.:CV 13-05507; on May 11, 2013, County Deputy Luis Mendoza shot and killed Rigoberto Arceo, who was unarmed and had his hands up at the time of the shooting. Police reports confirmed that Mr. Arceo was unarmed. Deputy Mendoza was not disciplined or retrained for his use of deadly force.

q) In *D.A.B., et al. v. County of Los Angeles, et al.*, Case No.:CV-14-05207 FMO (ASx); on May 23, 2013, County Deputies Dru Strong and Gregory Rodriguez shot and killed Rashawn Brown, who, according to percipient witnesses, was unarmed at the time he was shot. Deputies Strong and Rodriguez were not disciplined or retrained for their use of deadly force.

r) In *Gonzalo Martinez v. County of Los Angeles, et al.*, Case No.: 2:14-cv-05456-DSF-MAN, County Deputy Cuauhtemoc Gonzalez discharged his weapon at a moving vehicle, striking Gonzalo Martinez, who was an unarmed backseat passenger. Deputy Gonzalez was not disciplined or retrained for his use of deadly force.

89.    Accordingly, Defendants COUNTY and DOES 8-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

90.     Plaintiffs THOMAS and D.S. bring this claim individually and seek damages permitted by the law.

91.     Plaintiffs N.B., T.A., and T.B. bring this claim individually and as successors-in-interest to DECEDENT.  Plaintiffs N.B., T.A., and T.B. seek wrongful death and survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life. Plaintiffs also seek attorney's fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability—Ratification (42 U.S.C. § 1983)

(By all Plaintiffs against Defendants COUNTY and DOES 8-10)

92.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 91 of this Complaint with the same force and effect as if fully set forth herein.

93.     DOE DEPUTIES' acts, including unlawfully detaining and arresting THOMAS, D.S., and DECEDENT, fatally shooting DECEDENT while he was committing no crime, failing to give a warning that deadly force would be used prior to shooting, failing to de-escalate a situation involving an emotionally unstable person, denying DECEDENT prompt and necessary medical care, and then holding and questioning D.S., a minor, without THOMAS's consent for an extended period of time deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

94.     At all relevant times, DOE DEPUTIES were acting under color of law.

95.     Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning DOE DEPUTIES' acts, ratified DOE DEPUTIES' acts and the bases for them.  Upon information and belief, the final policymakers knew of and specifically approved of DOE

1  DEPUTIES' acts, including the shooting.  Upon information and belief, the final

2  policymaker(s) have determined that DOE DEPUTIES' actions were "within

3  policy."

4         96.    As a direct and proximate result of the aforementioned conduct,

5  THOMAS and D.S. endured pain and suffering.

6         97.    As a direct and proximate result of the aforementioned conduct,

7  DECEDENT endured pain and suffering and lost his life, his enjoyment of life, and

8  his earning capacity.

9         98.    Plaintiffs THOMAS and D.S. bring this claim individually and seek

10  damages permitted by the law.

11         99.    Plaintiffs N.B., T.A., and T.B. bring this claim individually and as

12  successors-in-interest to DECEDENT.  Plaintiffs N.B., T.A., and T.B. seek

13  wrongful death and survival damages on this claim, including for DECEDENT's

14  injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.

15         100.   Plaintiffs also seek attorney's fees and costs under this claim.

16

17              **SEVENTH CLAIM FOR RELIEF**

18        **Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

19              (Against Defendants COUNTY and DOES 8-10)

20         101.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

21  through 100 of their Complaint with the same force and effect as if fully set forth

22  herein.

23         102.   Defendants DOE DEPUTIES acted under color of law.

24         103.   DOE DEPUTIES' acts, including unlawfully detaining and arresting

25  THOMAS, D.S., and DECEDENT, shooting at THOMAS and D.S. while they were

26  unarmed and committing no crime, fatally shooting DECEDENT while he was

27  committing no crime, failing to give a warning that deadly force would be used prior

28  to shooting, and then denying DECEDENT prompt and necessary medical care,

1 deprived DECEDENT and Plaintiffs of their particular rights under the United

2 States Constitution.

3  104.   The training policies of Defendant COUNTY were not adequate to

4 train its officers to handle the usual and recurring situations with which they must

5 deal.  This includes training polices with respect to the use of the use of force,

6 including deadly force, and with respect to handling and de-escalating situations

7 involving emotionally unstable individuals.

8  105.   Defendant COUNTY was deliberately indifferent to the obvious

9 consequences of its failure to train its officers adequately.

10  106.   The failure of Defendant COUNTY to provide adequate training caused

11 the deprivation of Plaintiffs' rights by DOE DEPUTIES; that is, the defendants'

12 failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be

13 the moving force that caused the ultimate injury.

14  107.   The following are only a few examples of continued misconduct by

15 police officers working for the COUNTY, which indicate the COUNTY's failure to

16 properly train its police officers:

17  a)  The October 6, 2020 shooting of Nicholas Burgos, a 39 year-old man
18  shot nine (9) times in the UCLA Harbor Hospital Mental Care Center.

19  b)  The August 31, 2020 shooting death of Dijon Kizzee.

20  c)  The June 26, 2019 shooting of Timothy Neal in his home; case No.
21  2:20-cv-06315-CBM-JC.

22  d)  The July 3, 2019 shooting death of the unarmed Rickie Starks; Case
23  No. 19STCV38462.

24  e)  The August 16, 2017 shooting death of Kenneth Lewis, Jr.; case
25  No.:2:18-cv-04910-CBM-SK.

26  f)  In *Berry, et al. v. County of Los Angeles, et al.,* Case No.:15-cv-09715-
27  BRO (KSx); in events captured on video, numerous Los Angeles

28

County deputies was beat, pepper sprayed, tased, and fired over 30 bullets without warning at John Berry while seated in his car and killing him.  Upon information and belief, the County found that the deputies' use of force was within policy, and none of the deputies were disciplined, reprimanded, retrained, suspended, or otherwise penalized for their actions.

g) In *V.W., et al. v. County of Los Angeles, et al.,* Case No.: 2:18-cv-03684-FMO-ARG; on February 4, 2018 Deputy Gregory Van Hoesen shot and killed the 16 year-old Anthony Weber, shooting him in the back while unarmed.

h) In *K.C.R., et al. v. County of Los Angeles, et al.,* Case No.: 2:13-cv-03806-PSG-SS, on June 21, 2012, the unarmed Kenneth Rivera III was shot and killed by Deputy Norma Silva.

i) In *C.M., et al. v. County of Los Angeles, et al.,* Case No.:2:17-cv-05135-VAP-AGR, on August 2, 2016. Deputy Jeffrey Brito shot and killed the unarmed William Bowers.  On information and belief, Deputy Brito was not disciplined, reprimanded, retrained, suspended, or otherwise penalized for his actions.

j) In *Mitchell v. County of Los Angeles, et al.,* Case No.: CV-8421-RJK (AWx), Defendant County argued that the use of deadly force against an unarmed civilian (Robert Mitchell) was reasonable; the jury found otherwise, returning a $4,000,000 verdict after finding that Deputy Rick Manes used excessive and unreasonable force when he shot the unarmed Mr. Mitchell in the back six times, killing him.  Deputy Manes was not disciplined or retrained for his use of deadly force.

k) In *Guitierrez, et al. v. County of Los Angeles, et al.,* Case No.: cv-10-7608 PSG (AJWx), a jury found that Deputy David Salazar used

excessive and unreasonable force when he shot and killed Efrain Gutierrez, and awarded Mr. Gutierrez' family $2,000,000. Deputy Salazar was not disciplined or retrained for his use of deadly force.

l) In In *Beets v. County of Los Angeles, et al.*, Case No.: KC-057667, a jury determined that the use of deadly force by the defendant County deputy, was excessive and unreasonable under the circumstances, and returned a $1,035,000 verdict in favor of the plaintiff.

m) In *Jacobo, et al. v. County of Los Angeles, et al.*, Case No.: CV-11-7212 GW (SSx), on August 8, 2009, County Deputy Mat Taylor shot and killed Ezequiel Jacobo, who was unarmed. Police reports confirmed that Mr. Jacobo was unarmed. Deputy Taylor was not disciplined or retrained for shooting Mr. Jacobo.

n) In *Lobrono, et al. v. County of Los Angeles, et al.*, Case No.: CV-13-03838, on February 1, 2013, County Deputy Ray Huang shot Michael Lobrono, who was unarmed. Police reports confirmed that Mr. Lobrono was unarmed. Deputy Huang was not disciplined or retrained for his use of deadly force.

o) In *Sanchez v. County of Los Angeles, et al.*, Case No.: CV 13-0383; on April 20, 2013, County Deputy Christopher Gomez shot Chalino Sanchez, who was unarmed and riding his bicycle at the time of the shooting. Police reports confirmed that Mr. Sanchez was unarmed. Deputy Gomez was not disciplined or retrained for his use of deadly force.

p) In *N.K.A., et al. v. County of Los Angeles, et al.*, Case No.:CV 13-05507; on May 11, 2013, County Deputy Luis Mendoza shot and killed Rigoberto Arceo, who was unarmed and had his hands up at the time of the shooting. Police reports confirmed that Mr. Arceo was unarmed.

Deputy Mendoza was not disciplined or retrained for his use of deadly force.

q) In *D.A.B., et al. v. County of Los Angeles, et al.*, Case No.:CV-14-05207 FMO (ASx); on May 23, 2013, County Deputies Dru Strong and Gregory Rodriguez shot and killed Rashawn Brown, who, according to percipient witnesses, was unarmed at the time he was shot. Deputies Strong and Rodriguez were not disciplined or retrained for their use of deadly force.

r) In *Gonzalo Martinez v. County of Los Angeles, et al.*, Case No.: 2:14-cv-05456-DSF-MAN, County Deputy Cuauhtemoc Gonzalez discharged his weapon at a moving vehicle, striking Gonzalo Martinez, who was an unarmed backseat passenger. Deputy Gonzalez was not disciplined or retrained for his use of deadly force

108. By reason of the aforementioned acts and omissions, Plaintiffs THOMAS and D.S. have suffered pain and suffering.

109. By reason of the aforementioned acts and omissions, Plaintiffs N.B., T.A., and T.B. have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

110. Accordingly, Defendants COUNTY and DOES 8-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

111. Plaintiffs THOMAS and D.S. bring this claim individually and seek damages on this claim for their physical and emotional injuries.

112. Plaintiffs N.B., T.A., and T.B. bring this claim individually and as a successor-in-interest to DECEDENT. Plaintiffs N.B., T.A., and T.B. seek survival

damages and wrongful death damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.

113.   Plaintiffs also seek attorney's fees and costs under this claim.

## EIGHTH CLAIM FOR RELIEF

### False Arrest / False Imprisonment

(Survival and Wrongful Death)

(Against DOE DEPUTIES and COUNTY)

114.   Plaintiffs re-allege and incorporates by reference herein paragraphs 1 through 113 of this Complaint.

115.   DOE DEPUTIES detained THOMAS, D.S., and DECEDENT without reasonable suspicion.  Not only was the detention itself unreasonable, but the scope and manner of the detention was unreasonable as set forth above.  DOE DEPUTIES intentionally restricted THOMAS, D.S., and DECEDENT's freedom of movement for an appreciable amount of time when DOE DEPUTIES stopped THOMAS's car at the parking lot.  DOES 6-7 intentionally restricted D.S.'s freedom of movement for considerable amount of time when they held D.S. at Lancaster Sheriff's Office without her mother THOMAS's consent.  THOMAS, D.S., and DECEDENT did not consent to the restriction of their freedom of movement at all relevant times. THOMAS and D.S. were unarmed and committing no crime at all relevant times. DECEDENT was not committing any crime when the DOE DEPUTIES stopped THOMAS's car with their guns drawn.

116.   As an actual and proximate result of DOE DEPUTIES' false arrest/false imprisonment of THOMAS, D.S., and DECEDENT and the force used thereafter, THOMAS and D.S. sustained injuries, and DECEDENT died.  As a result, Plaintiffs N.B., T.A., and T.B. have sustained pecuniary loss resulting from the loss of companionship, comfort, support, society, care and services of DECEDENT, and will continue to be so deprived for the remainder of their natural

1   lives.  Accordingly, all Plaintiffs are entitled to compensatory damages on this

2   claim.

3        117.   Defendants committed the aforementioned acts and omissions

4   knowingly, willfully, maliciously, with the expressed intent to harm THOMAS, D.S.

5   and DECEDENT and with conscious or reckless disregard for DECEDENT's rights.

6   By reason thereof, Plaintiffs seek punitive and exemplary damages from DOE

7   DEPUTIES in an amount according to proof at trial.

8        118.   Defendant COUNTY is vicariously liable for the wrongful acts of DOE

9   DEPUTIES pursuant to section 815.2(a) of the California Government Code, which

10  provides that a public entity is liable for the injuries caused by its employees within

11  the scope of employment if the employee's act would subject him or her to liability.

12       119.   Plaintiffs THOMAS and D.S. bring this claim individually and seek

13  damages permitted by the law.

14       120.   Plaintiffs N.B., T.A., and T.B. bring this claim individually and as

15  successors-in-interest to DECEDENT.  Plaintiffs N.B., T.A., and T.B. seek

16  wrongful death and survival damages on this claim, including for DECEDENT's

17  loss of life and loss of enjoyment of life.

18

19                    **NINTH CLAIM FOR RELIEF**

20                    **Battery** (wrongful death)

21     (By Plaintiffs N.B., T.A., and T.B. against Defendants DOES 1-5 and COUNTY)

22       121.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

23  through 120 of their Complaint with the same force and effect as if fully set forth

24  herein.

25       122.   DOES 1-5, while working and acting within the course and scope of his

26  duties as deputies for the LASD, shot DECEDENT.  At the time of the shooting,

27  DECEDENT was extremely fearful of his life and emotionally distraught by the

28

news that his brother had been found dead in lynching style.  The shooting was excessive and objectively unreasonable.

123.   As a direct and proximate result of the shots fired by DOES 1-5 as alleged above, DECEDENT sustained injuries, died from his injuries and also lost his earning capacity.

124.   The COUNTY is vicariously liable for the wrongful acts of DOES 1-5 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

125.   The conduct of DOES 1-5 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and DECEDENT, entitling Plaintiffs, individually and as the successors in interest to DECEDENT, to an award of exemplary and punitive damages as to DOES 1-5.

126.   Plaintiffs N.B., T.A., and T.B. bring this claim individually and seek wrongful death and survival damages on this claim.

## TENTH CLAIM FOR RELIEF
### Battery

(By Plaintiffs THOMAS against Defendants DOES 1-5 and COUNTY)

127.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 126 of their Complaint with the same force and effect as if fully set forth herein.

128.   DOES 1-5, while working and acting within the course and scope of his duties as deputies for the LASD, shot THOMAS.  At the time of the shooting, THOMAS was unarmed and posed no immediate threat of death or serious bodily injury to anyone.  The shooting was excessive and objectively unreasonable.

129.   As a direct and proximate result of the shots fired by DOES 1-5 as alleged above, THOMAS sustained injuries to her chest and forehead.

130.   The COUNTY is vicariously liable for the wrongful acts of DOES 1-5 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

131.   The conduct of DOES 1-5 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff THOMAS, entitling her, individually, to an award of exemplary and punitive damages as to DOES 1-5.

132.   Plaintiff THOMAS brings this claim individually and seek damages permitted by law under this claim.

## ELEVENTH CLAIM FOR RELIEF

### Negligence (wrongful death)

#### (by Plaintiffs N.B., T.A., and T.B. Against all Defendants)

133.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 132 of their Complaint with the same force and effect as if fully set forth herein.

134.   Deputies, including DOE DEPUTIES, have a duty to use reasonable care to prevent harm or injury to others.  This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

135.    DOE DEPUTIES breached this duty of care.  The actions and inactions of Defendants DOE DEPUTIES were negligent and reckless, including but not limited to:

(a)   the failure to properly and adequately assess the need to use deadly force against DECEDENT;

(b)   the negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence;

(c)   the negligent use of deadly force against DECEDENT, including negligently shooting at emotionally unstable individual;

(d)   the failure to provide prompt medical care to DECEDENT;

(e)   the failure to properly train and supervise DOE DEPUTIES with respect to the use of deadly force;

(f)   the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT; and

(g)   the negligent communication of information during the incident.

136.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died.  Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs N.B., T.A., and T.B have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

137.   The COUNTY is vicariously liable for the wrongful acts of DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or her to liability.

138.   Plaintiffs N.B., T.A., and T.B. bring this claim individually and as successors-in-interest to DECEDENT.  Plaintiffs N.B., T.A., and T.B. seek

wrongful death and survival damages on this claim, including for DECEDENT's loss of life and loss of enjoyment of life.

## TWELFTH CLAIM FOR RELIEF

### Negligence

(by Plaintiffs THOMAS and D.S. Against all Defendants)

139.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 138 of their Complaint with the same force and effect as if fully set forth herein.

140.   Deputies, including DOE DEPUTIES, have a duty to use reasonable care to prevent harm or injury to others.  This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

141.   DOE DEPUTIES breached this duty of care.  The actions and inactions of Defendants DOE DEPUTIES were negligent and reckless, including but not limited to:

    (a)    the failure to properly and adequately assess the need to use deadly force against THOMAS, and D.S.;

    (b)    the negligent tactics and handling of the situation with THOMAS and D.S., including pre-shooting negligence;

    (c)    the negligent use of deadly force against THOMAS and D.S. including negligently shooting at the vehicle where other passengers were still inside and when a mother of a minor child kept saying "my baby is in the car.";

    (e)    the failure to properly train and supervise DOE DEPUTIES with respect to the use of deadly force;

(f)   the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of THOMAS and D.S.; and

(g)   the negligent communication of information during the incident.

142.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, THOMAS sustained injuries and D.S. sustained emotional injuries.

143.   The COUNTY is vicariously liable for the wrongful acts of DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or her to liability.

144.   Plaintiff THOMAS and D.S. bring this claim individually and seek damages permitted by the law on this claim.

## THIRTEENTH CLAIM FOR RELIEF
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(By Plaintiff D.S. against Defendants DOES 1-5)

145.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 144 of their Complaint with the same force and effect as if fully set forth herein.

146.   Plaintiff D.S. claims that she suffered serious emotional distress as a result of perceiving the injury of her mother THOMAS by Defendants DOES 1-5.

147.   Defendants DOES 1-5 negligently caused injury to THOMAS when they opened fire at her car while THOMAS and D.S were sitting unarmed in the car.

148.   Defendants DOES 1-5 at all relevant times were working within the course and scope of their duties when they negligently and carelessly inflicted

1   severe emotional distress on D.S. by shooting into the vehicle and injuring D.S.'s
2   mother, THOMAS.

3       149.   At the time of the shooting, Plaintiff D.S. was sitting in the back seat of
4   the car, and THOMAS was screaming to DOES 1-5 that her baby was in the car.

5       150.   Plaintiff D.S. was aware that the shooting was causing her mother,
6   THOMAS, injury and bleeding.

7       151.   Plaintiff suffered serious emotional distress including but not limited to
8   anxiety, anguish, humiliation, shock, fright, and other injuries to her nervous
9   system.

10      152.   Defendants DOES 1-5's conduct was substantial factor in causing
11  Plaintiff D.S.'s serious emotional distress.

12      153.   The COUNTY is vicariously liable for the wrongful acts of DOE
13  DEPUTIES pursuant to section 815.2(a) of the California Government Code, which
14  provides that a public entity is liable for the injuries caused by its employees within
15  the scope of the employment if the employee's act would subject her or her to
16  liability.

17      154.   Plaintiff D.S. brings this claim in her individual capacity and seeks
18  damages permitted by the law including compensatory damages for her severe pain
19  and suffering she sustained as a result of observing the negligent use of force against
20  THOMAS, her mother, and seeks damages permitted by the law.

21

22              **FOURTEENTH CLAIM FOR RELIEF**
23              **Violation of Cal. Civil Code § 52.1**
24                (Against all Defendants)

25      155.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1
26  through 154 of their Complaint with the same force and effect as if fully set forth
27  herein.

28

156.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from intentionally interfering with a person's constitutional rights, which can be shown by a reckless disregard for that person's constitutional rights.  Here, DOE DEPUTIES acted with a reckless disregard for THOMAS, D.S., and DECEDENT's constitutional rights when they shot THOMAS and DECEDENT and shot at the direction of D.S., which shows DOE DEPUTIES' intent to violate THOMAS, D.S. and DECEDENT's constitutional rights.

157.   On information and belief, DOE DEPUTIES, while working for the COUNTY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against THOMAS, D.S., and DECEDENT, including shooting at THOMAS's car when THOMAS and D.S. were in the car, fatally shooting DECEDENT with a firearm without justification or excuse and denying DECEDENT necessary medical care.

158.   When DOE DEPUTIES shot THOMAS, shot in the presence of D.S., and fatally shot DECEDENT with a firearm, they interfered with THOMAS, D.S., and DECEDENT's constitutional rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

159.   On information and belief, DOE DEPUTIES intentionally shot THOMAS and DECEDENT in presence of D.S. in the same car, and violated THOMAS, D.S., and DECEDENT's constitutional rights.  On information and belief, THOMAS, D.S. and DECEDENT reasonably believed and understood that DOE DEPUTIES intended to shot THOMAS, D.S., and DECEDENT and intentionally shot them to violate their constitutional rights and/or to prevent them from exercising their constitutional rights.  DOE DEPUTIES' actions against DECEDENT were unreasonable and showed reckless disregard for THOMAS, D.S. and DECEDENT's constitutional rights.

160.   The conduct of DOE DEPUTIES was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

161.   The COUNTY is vicariously liable for the wrongful acts of DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.  Defendants DOE DEPUTIES are vicariously liable under California law and the doctrine of *respondeat superior*.

162.   The conduct of DOE DEPUTIES was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to DOE DEPUTIES.

163.   Plaintiffs THOMAS and D.S. bring this claim individually and seek damages permitted by the law.

164.   Plaintiffs N.B., T.A., and T.B. bring this claim as successors-in-interest to DECEDENT.  Plaintiffs N.B., T.A., and T.B. seek survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.

165.   Plaintiffs also seek attorney's fees and a multiplier under this claim pursuant to Cal. Civ. Code §52 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs THOMAS, D.S., N.B., T.A., and T.B. request entry of judgment in their favor and against Defendants DOE DEPUTIES, the County of Los Angeles and Does 1-10, inclusive, as follows:

A.   For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

B.   For funeral and burial expenses, and loss of financial support;

C.   For punitive damages against the individual defendants in an amount to be proven at trial;

D.   For interest;

E.   For reasonable attorneys' fees, including litigation expenses;

F.   For costs of suit; and

G.   For such further other relief as the Court may deem just, proper, and appropriate.

DATED: March 9, 2021                    LAW OFFICES OF DALE K. GALIPO


                                        /s/ Dale K. Galipo

                                        Dale K. Galipo
                                        *Attorney for Plaintiffs*

1

## **DEMAND FOR JURY TRIAL**

2         Plaintiffs hereby demand a trial by jury.

3

4    DATED: March 9, 2021                    LAW OFFICES OF DALE K. GALIPO

5

6

7                                            /s/ Dale K. Galipo

8                                            Dale K. Galipo

9                                            *Attorney for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28