1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo, Esq. (SBN 144074)
2  dalekgalipo@yahoo.com
   Renee V. Masongsong, Esq. (SBN 281819)
3  rvalentine@galipolaw.com
   21800 Burbank Boulevard, Suite 310
4  Woodland Hills, CA  91367
   Tel:   (818) 347-3333
5  Fax:   (818) 347-4118

6  LAW OFFICES OF GOLDBERG & GAGE
7  Bradley C. Gage, Esq. (Bar No. 117808)
   bgage@goldbergandgage.com
8  23002 Victory Blvd, Woodland Hills, CA 91367
9  Tel:   (818) 340-9252
   Fax:   (818) 340-9088

10
11 *Attorneys for Plaintiffs*

12

13          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| 15  N.B., a minor, by and through guardian *ad litem* Elonda Holman, individually and as successor in interest to Terron Boone, deceased; T.A. and T.B., minors, by and through guardian *ad litem* Sharice Armstead, individually and as successors in interest to Terron Boone, deceased; D.S., a minor, by and through guardian *ad litem* Shellondra Thomas, individually; and SHELLONDRA THOMAS, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF LOS ANGELES, et al., <br><br> Defendants. | Case No.: 2:21-cv-02165-FLA-PD <br><br> **PLAINTIFFS' RENEWED *EX PARTE* APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS** <br><br> [Verifications by Guardians ad Litem, Declaration of Renee V. Masongsong and Exhibits thereto, and Proposed Order *filed concurrently herewith*] |

1  **TO THIS HONORABLE COURT, AND ALL PARTIES THROUGH THEIR**

2  **ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE THAT** Plaintiffs, N.B., a minor, by and through

4  guardian *ad litem* Elonda Holman, individually and as successor in interest to

5  Terron Boone, deceased; T.A. and T.B., minors, by and through guardian *ad litem*

6  Sharice Armstead, individually and as successors in interest to Terron Boone,

7  deceased; D.S., a minor, by and through guardian *ad litem* Shellondra Thomas,

8  individually; and SHELLONDRA THOMAS, individually, ("Plaintiffs") hereby

9  move this Court by way of this Renewed Ex Parte Application for Approval of

10 Compromise of the Claims of the minor plaintiffs, N.B., T.A., T.B., and D.S.

11 ("Minor Plaintiffs")

12     Plaintiffs make this application pursuant to Central District Local Rule 7-19.

13 The grounds for this application are set forth in the Memorandum of Points and

14 Authorities, which follows below, and the Declaration of Renee V. Masongsong,

15 which is submitted concurrently herewith. Prior to filing the initial *ex parte*

16 application (Dkt. 70), on February 27, 2025, Plaintiffs' counsel contacted

17 Defendants' counsel in compliance with Local Rule 7-19 through 7-19.1.

18 Defendants are represented by: Jill Williams; Carpenter, Rothans & Dumont; 500

19 South Grand Avenue, 19th Floor; Los Angeles, California 90071; 213-228-0400;

20 jwilliams@crdlaw.com. (Declaration of Renee V. Masongsong in Support of Ex

21 Parte Application for Approval of Minor's Compromise ("Masongsong Decl.") at ¶¶

22 2-3).

23     Defendants' counsel previously indicated that they do not oppose the filing of

24 the application for approval of the minors' compromise on an *ex parte* basis, and

25 Defendants and their counsel take no position as to the distribution of the settlement

26 funds. Defendants' counsel previously represented that Defendants will not be filing

27 an opposition or response to the minor's compromise petition. (Masongsong Decl. at

28 ¶¶ 2-3). Plaintiffs seek approval of the minors' compromises on an *ex parte* basis

-i-

because the interest rates for the annuities will expire if this matter is heard as a regularly noticed motion. (Masongsong Decl. at ¶ 4).

DATED:   April 18, 2025                LAW OFFICES OF DALE K. GALIPO

By:  _____*s/ Renee V. Masongsong*_____
Dale K. Galipo
Renee V. Masongsong
*Attorneys for Plaintiffs*

RENEWED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF CLAIMS OF THE MINOR PLAINTIFFS

1

# **TABLE OF CONTENTS**

2

3

RENEWED EX PARTE APPLICATION FOR APPROVAL OF
COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS ....................... 1

I.    INTRODUCTION ............................................................................................ 1

II.    BRIEF SUMMARY OF THE FACTS AND CLAIMS ...................................... 2

III.   JUDGMENTS AND SETTLEMENTS IN SIMILAR CASES ........................... 7

IV.   DISCUSSION ................................................................................................. 11

       Disclosures pursuant to California Rule of Court 7.950: ............................... 12

       Disclosures pursuant to California Rule of Court 7.951: ............................... 17

       Petitioners' Endorsements: ............................................................................. 17

V.    CONCLUSION ............................................................................................... 19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## Cases

3

*A.B., et al. v. City of Santa Ana, et al.,*
Case No. SA CV 18-1553-DOC-ADS ................................................................9

4

*A.H. et al., v. County of San Bernardino, et al.,*
Case No. 5:23-cv-01028-JGB-SHK ..................................................................9

5

6

*Acosta v. County of San Francisco,*
Case No. C924321SC .......................................................................................10

7

*Angela Hernandez v. City of Huntington Beach,*
Case No. 17-01257 PA (KESx) ........................................................................8

8

*Anthony Alvarado v. City of San Gabriel,*
Case No. 2:21-cv-09742-JAK-AS ...................................................................10

9

*Barron v. State of California, et al.,*
Case No. 8:17-cv-1275 JVS (KESx) ................................................................8

10

11

*Cano v. City of Los Angeles,*
Case No. CV15-00333 JAK (Ex) .....................................................................10

12

*Christopher Pettersen, et al. v. County of Los Angeles, et al.,*
Case No. CV 14-04699 ....................................................................................10

13

*Dacanay v. Mendoza,*
573 F.2d 1075 (9th Cir. 1978) .........................................................................11

14

*Fernando Del Castillo, et al. v. City of Tempe, et al.,* Case No. CV-14-01945-PHX-DLR ................................................................................................................8

15

16

*Garcia v. County of Stanislaus,*
Case No. 07-cv-01376-LJO-SMS .....................................................................10

17

*J.G. v. City of Arvin,*
Case No. 1:20-cv-00941-JLT-BAK ..................................................................9

18

*Loida Cavazos v. County of Fresno, et al.,*
Case No. 1:23-00859-JLT-BAM .......................................................................10

19

*R.E. v. City of Long Beach, et al.,* Case No. 2:21-cv-06072-SB (KSx) .....................7

20

*Robidoux v. Rosengren,*
638 F.3d 1177 (9th Cir. 2011) .........................................................................11

21

*Salmeron v. United States,*
724 F.2d 1357 (9th Cir. 1983) .........................................................................11

22

*Soria v. County of San Bernardino, at al,*
Case No. 5:22-cv-01958-JGB-KK ...................................................................9

23

24

*Speer v. County of San Bernardino, et al.,*
Case No. 5:20-cv-00044-JGB-SP .....................................................................8

25

*Starks v. County of Los Angeles,*
Case No. 19STCV38462 ...................................................................................7

26

*Starks v. County of Los Angeles, et al.,*
Case No. 2:21-cv-05209 HDV (GJSx) ..............................................................7

27

*Yuriar, at al., v. County of Alameda, et al.,*
Case No. 23-cv-06438-KAW .........................................................................10

28

Statutes

California Code of Civil Procedure Section 372 ....................................................... 11

Rules

California Rules of Court, Rule 3.1384 ................................................................... 11

Federal Rule of Civil Procedure 17 ....................................................................... 11

RENEWED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF CLAIMS OF THE MINOR
PLAINTIFFS

**RENEWED EX PARTE APPLICATION FOR APPROVAL OF**

**COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS**

## I.    INTRODUCTION

Shellondra Thomas, guardian *ad litem* for minor plaintiff D.S., Elonda Holman, guardian *ad litem* for minor plaintiff N.B., and Sharice Armstead, guardian *ad litem* for minor plaintiffs T.A. and T.B., hereby submit this renewed petition and proposed order for approval of the compromise of the claims of D.S., N.B., T.A., and T.B. ("Minor Plaintiffs") in this matter, and request that the Court approve of the proposed distribution of the minors' funds. Shellondra Thomas is D.S.'s legal guardian and natural mother. Elonda Holman is N.B.'s legal guardian and natural mother. Sharice Armstead is T.A.'s and T.B.'s legal guardian and natural mother.

The instant claims of minor plaintiffs N.B., T.A., and T.B. arose out of the fatal shooting of their father, decedent Terron Boone, by Los Angeles Sheriff's Department deputies on June 17, 2020. Mr. Boone was in the passenger seat of a vehicle when he was shot and killed, and his children (N.B., T.A., and T.B.) brought their claims as successors in interest to Mr. Boone. The instant claims of minor plaintiff D.S. arose from her being in the backseat of the vehicle that Mr. Boone occupied at the time of the shooting. D.S.'s mother, Shellondra Thomas, is also a plaintiff in this case and was the driver of the vehicle Mr. Boone occupied at the time of the shooting.

Plaintiffs and Defendants have agreed to settle the above-referenced case, and the parties' settlement has been approved by the proper County of Los Angeles authorities. This case presented numerous hurdles to proving liability, including the limited evidence to contradict the involved deputies' testimonies that the decedent was armed and allegedly firing upon the involved officers at the time of the shooting. Although Plaintiffs ran the risk of making no recovery in this factually difficult case, Plaintiffs' counsel successfully negotiated a global settlement of $275,000 and worked with a settlement broker to set up tax-free annuity funds with

-1-

guaranteed rates for each minor plaintiff.  The guardians ad litem for the minor plaintiffs are familiar with the difficult facts of this case and agrees that the settlement and distribution to each child is fair and reasonable. Plaintiffs' desire to avoid the risk of judgment being entered in favor of Defendants and to avoid the continued stress of litigating this case also factored into Plaintiffs' decision to accept the settlement offer.

The settlement agreement obligates Defendants to pay Plaintiffs and their attorneys of record the total gross sum of $275,000 divided between the Plaintiffs in the gross amounts as follows:

| | |
|---|---|
| N.B. and her attorneys | $65,000 |
| T.A. and his attorneys | $65,000 |
| T.B. and his attorneys | $65,000 |
| D.S. and her attorneys | $20,000 |
| Shellondra Thomas and her attorneys: | $60,000 |

These are the amounts that the Plaintiffs agreed to. (Masongsong Decl. at ¶ 5).

## II.    <u>BRIEF SUMMARY OF THE FACTS AND CLAIMS</u>

This civil rights and state tort case arises out of the fatal shooting of Terron Boone and the non-fatal shooting of Plaintiff Shellondra Thomas on June 17, 2020, by deputies working for the Los Angeles County Sheriff's Department. Prior to the shooting, on June 16, 2020, a warrant was issued for Mr. Boone's arrest for thirteen criminal counts relating to Mr. Boone kidnapping and torturing his girlfriend. The deputies involved in the shooting were part of a surveillance team that followed Mr. Boone to effect his arrest. At the time of the shooting, Ms. Thomas occupied the driver seat of her vehicle, Mr. Boone was in the area of the front passenger seat of the vehicle, and Plaintiff D.S. was sitting in the back seat. D.S. was not injured. Mr. Boone was armed at the time of the shooting, and the evidence produced during discovery indicated that at the time of the shooting, Mr. Boone fired six rounds upon the deputies with a semiautomatic handgun.

1       In this case, the involved deputies were identified by their initials—B.H.,

2 D.H., E.B., and S.M.  Each of these deputies gave interviews to homicide detectives

3 after the shooting. Plaintiffs' counsel also deposed each of the involved deputies.

4 The deputies generally stated in their interviews and testified at their depositions

5 that they had the following information prior to the shooting: On the day prior to the

6 shooting, Mr. Boone was charged by the Antelope Valley District Attorney's office

7 with several felonies, including assault with a deadly weapon, domestic violence,

8 rape, making terrorist threats, and kidnapping, and the deputies' mission on the date

9 of the shooting was to locate Mr. Boone and take him into custody pursuant to the

10 warrant for his arrest. (D.H. Depo at 26:8-23; E.B. Depo. at 28:21-29:5; S.M. Depo.

11 at 18:25-19:3). Mr. Boone had threatened to kill his girlfriend and her children and

12 held her captive for approximately seven days. The victim was able to escape Mr.

13 Boone, and she fled to a convenience store to dial 911. (E.B. Interview).

14       On June 15, 2020, the victim gave an interview to detectives following her

15 escape, and a narrative summary of her interview was produced during discovery.

16 (COLA 001429-31). The victim stated in her interview that Mr. Boone stated that if

17 anyone tried to help her, she was going to die, and everyone was going to die, which

18 she interpreted as meaning that Mr. Boone would shoot it out with police. (COLA

19 001429). The victim informed police that Mr. Boone had an "AR-15" style rifle, that

20 Mr. Boone was always armed, and that Mr. Boone was an active gang member.

21 (COLA 001430-31). The deputies received this information prior to the shooting,

22 including information that Mr. Boone could be armed. (D.H. Interview at 16:7-10;

23 B.H. Depo. at 19:19-21).

24       On June 17, 2020, the surveillance team deputies located Mr. Boone, who

25 was wearing a hooded sweatshirt on a particularly hot day. (E.B. Depo. at 49:2-13).

26 Mr. Boone was also wearing goggles and had the bottom portion of his face

27 covered. (*Id*.). Mr. Boone matched the description that the deputies were given

28 during the briefing, including his visible tattoos. (*Id*. at 49:14-18; B.H. Interview at

-3-

11:13-14). When the deputies located Mr. Boone, he was seated in the passenger seat of Ms. Thomas' vehicle. (B.H. Depo. at 10:18-11:12). Next, Ms. Thomas and D.S. got into Ms. Thomas' vehicle. The vehicle left the location, and deputies pursued the vehicle until it stopped in a parking lot.

The deputies stopped their vehicles and shouted at Mr. Boone to show his hands. Then, the passenger side door to the vehicle opened, and, according to the deputies, Mr. Boone quickly emerged from the vehicle and fired two shots. (B.H. Depo. at 24:8-15, 25:2-13; S.M. Interview at 24:5-25:5). The deputies stated that they observed muzzle flash when Mr. Boone fired his shots and also observed recoil from the gun in Mr. Boone's hand. (B.H. Depo. at 25:25-26:1; B.H. Interview at 20:23-21:5; E.B. Depo. at 62:14-63:11). A nearby Ring camera captured the sound of the gunshots. After Mr. Boone fired his two shots in the direction of the deputies, the deputies returned fire at Mr. Boone. (B.H. Depo. at 25:2-23). According to the deputies, when the deputies were firing their shots, Mr. Boone continued to point his weapon at the deputies. (B.H. Depo. at 32:15-21).

Mr. Boone was struck by several shots and died from his injuries. Plaintiffs N.B., T.A., and T.B. are the natural children and heirs of Mr. Boone. Plaintiffs N.B., T.A., and T.B. brought their claims individually and as successors in interest to Mr. Boone, seeking survival damages for the violations of Mr. Boone's civil rights and wrongful death damages for the interference with their familial relationship with their father, Mr. Boone. Specifically, these three minor plaintiffs asserted the following claims in their Second Amended Complaint: (1) Unlawful Detention and Arrest (42 U.S.C.§1983); (2) Unreasonable Search and Seizure—Excessive Force (42 U.S.C. §1983); (3) Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983); (4) Fourteenth Amendment—Substantive Due Process, Interference with Familial Relationship; (5) Municipal Liability—Unconstitutional Custom, Practice or Policy (42 U.S.C. §1983); (6) Municipal Liability—Ratification (42 U.S.C. § 1983); (7) Municipal Liability—Failure to Train (42 U.S.C. § 1983);

(8) False Arrest/ False Imprisonment; (9) Battery (Wrongful Death); (10) Negligence (Wrongful Death); (11) Violation of Cal. Civil Code § 52.1. The settlement allocation to Plaintiffs N.B., T.A., and T.B. includes not only their own damages for their loss of their father's love, comfort, association, guidance, and support, but also Mr. Boone's damages for his own pre-death pain and suffering and loss of life. *See* California Code of Civil Procedure, Section 377.30, 377.34; Senate Bill 447.

Plaintiffs bore the burden of proof in this case. To succeed on their claims for Unlawful Detention and Arrest (42 U.S.C.§1983) and False Arrest/ False Imprisonment, Plaintiffs would need to show that the deputies did not have reasonable suspicion to detain or probable cause to arrest Mr. Boone on June 17, 2020, when there was a warrant issued for his arrest. To succeed on each of the other foregoing claims, Plaintiffs would need to show that the deputies' shots were not necessary to defend human life, in other words, that there was no imminent threat of death or serious bodily injury to any person at the time of the deputies' shots. Here, as indicated above, the deputies testified that Mr. Boone was firing upon them immediately prior to the deputies' shots and that Mr. Boone continued to point his weapon at the deputies during the shots.

As a result of the deputies shooting at Mr. Boone, Plaintiff Ms. Thomas was struck by stray bullet fragments to her chest and forehead. Plaintiff Ms. Thomas brought the following claims in the Second Amended Complaint: (1) Unlawful Detention and Arrest (42 U.S.C.§1983); (2) Unreasonable Search and Seizure—Excessive Force (42 U.S.C. §1983); (3) Municipal Liability—Unconstitutional Custom, Practice or Policy (42 U.S.C. §1983); (4) Municipal Liability—Ratification (42 U.S.C. § 1983); (5) Municipal Liability—Failure to Train (42 U.S.C. § 1983); (6) False Arrest/ False Imprisonment; (7) Battery; (8) Negligence; (9) Violation of Cal. Civil Code § 52.1 (Bane Act). Plaintiff Ms. Thomas is not a successor-in-interest to Mr. Boone, and she sought damages individually for her own injuries.

-5-

Ms. Thomas' injuries were not life-threatening. As with Plaintiffs N.B., T.A., and T.B., to succeed on her claims for Excessive Force, Battery, and Violation of the Bane Act, Ms. Thomas would need to show that the deputies' shooting of Mr. Boone was excessive and unreasonable. Under the doctrine of transferred intent, a defendant 'who unlawfully aims at one . . . and hits another . . . is guilty of assault and battery on the party he hit, the injury being the direct, natural and probable consequence of the wrongful act.'" *Bailey v. County of San Joaquin*, 671 F. Supp. 2d 1167, 1175 (E.D. Cal. 2009) (internal quotations omitted).  The reverse is also true, that if the fact finder were to determine that the deputies were reasonable in shooting Mr. Boone when they observed him firing a weapon in their direction, then the deputies are not liable for Ms. Thomas' injuries.

Ms. Thomas' daughter, Plaintiff D.S., was not physically injured. D.S. asserted the following claims for relief: (1) Unlawful Detention and Arrest (42 U.S.C. §1983); (2) Unreasonable Search and Seizure—Excessive Force (42 U.S.C. §1983); (3) Municipal Liability—Unconstitutional Custom, Practice or Policy (42 U.S.C. §1983); (4) Municipal Liability—Ratification (42 U.S.C. § 1983); (5) Municipal Liability—Failure to Train (42 U.S.C. § 1983); (6) False Arrest/ False Imprisonment; (7) Negligence; (8) Negligent Infliction of Emotional Distress; (9) Violation of Cal. Civil Code § 52.1. D.S. claimed that she suffered severe emotional and mental distress when she was in the backseat of the vehicle when Mr. Boone was shot and when she observed her mother, Ms. Thomas, sustaining injuries caused by the bullet fragments. To succeed on her claims for Negligence, NIED, and Violation of the Bane Act, D.S. would need to prove that the deputies' shots at Mr. Boone were not necessary to defend human life (CACI 441; CACI 1620). To prevail on her claims for Unlawful Detention and Arrest and False Imprisonment/False Arrest, D.S. would need to prove that she was held by law enforcement for an unreasonable amount of time in the vehicle prior to the shooting or at the police department when she gave a statement following the shooting. As stated above, D.S.

-6-

1  is not a successor-in-interest to Mr. Boone and is not entitled to the survival

2  damages that were allocated to the other three minor plaintiffs in this case.

3      Based on the foregoing, Plaintiffs believed that it would be difficult to survive a

4  motion for summary judgment or to prevail at trial, and the Plaintiffs agreed to the

5  settlement to avoid the risk of recovering nothing.

6  **III.    <u>JUDGMENTS AND SETTLEMENTS IN SIMILAR CASES</u>**

7      In similar cases, courts have considered the decedent's conduct during the

8  shooting incident in the totality of the circumstances and awarded judgment against

9  the plaintiffs.  For example, in *Starks v. County of Los Angeles*, Case No.

10  19STCV38462, the Superior Court of California entered summary judgment against

11  plaintiffs and in favor of the defendants, finding the deputies' conduct reasonable

12  and leaving plaintiffs with no recovery. When the *Starks* case was later re-filed the

13  Central District asserting federal claims (*Starks v. County of Los Angeles, et al.,*

14  Case No. 2:21-cv-05209 HDV (GJSx), the district court judge granted qualified

15  immunity to the defendant officers on summary judgment. Similar to the instant

16  case involving Mr. Boone, in *Starks*, there was evidence that the deputies returned

17  fire on subjects who were fleeing in a vehicle and shooting at the deputies. Plaintiff

18  Ms. Starks brought the case as a successor in interest to her son, who was a

19  bystander struck by a stray bullet during the police shoot out. The courts deciding

20  this case applied the doctrine of transferred intent and determined that Plaintiff Ms.

21  Starks' claims failed because the shooting against the violent suspects was

22  reasonable.

23      In *R.E. v. City of Long Beach, et al*., Case No. 2:21-cv-06072-SB (KSx), a

24  judge sitting for the Central District of California entered summary judgment

25  against the minor plaintiff and in favor of the defendants, leaving the minor plaintiff

26  with no recovery. In that case, the decedent refused numerous commands by officers

27  to drop a knife. When the decedent approached the officers with the knife, a fatal

28  officer-involved-shooting occurred. The *R.E.* court also granted qualified immunity

-7-

to the defendant officers. Similarly, in the fatal police shooting case *Fernando Del Castillo, et al. v. City of Tempe, et al.*, USDC – District of Arizona Case No. CV-14-01945-PHX-DLR, a judge sitting for the District of Arizona granted qualified immunity and summary judgment in favor of the defendants, reasoning that the decedent posed an immediate threat when he advanced toward an officer with an edged weapon.

Even if the Plaintiffs in the instant case were to survive summary judgment, they would still run the risk of judgment being entered against them at trial, where Defendants will seek to introduce prejudicial evidence pertaining to Mr. Boone's felony charges arising from him kidnapping his girlfriend. For example, in the fatal police shooting case *Angela Hernandez v. City of Huntington Beach*, Case No. 17-01257 PA (KESx), the district court judge granted qualified immunity to the defendant officers on summary judgment and then declined to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. The state law claims were tried in the Superior Court of California, Case No. 30-2020-01137506-CU-CR-CJC, and the jury reached a verdict in favor the defendants. In that case, the officers alleged that the decedent lunged toward civilians with a sharp stick, which was far less threatening than a gun.

In *Speer v. County of San Bernardino, et al.*, Case No. 5:20-cv-00044-JGB-SP, a jury in the Central District of California reached a verdict in favor of the defendants in 2021. As in the instant case, where Defendants allege that Mr. Boone was armed and was firing at officers, there was evidence in *Speer* that Plaintiff Mr. Speer was armed with a loaded shotgun at the time of the shooting. The facts of *Speer* were a much closer call, where Mr. Speer survived and testified that he never pointed the gun at the deputies, and it was undisputed that Mr. Speer never fired any shots during the incident. Along these lines, in the 2017 fatal police shooting case *Barron v. State of California, et al.*, Case No. 8:17-cv-1275 JVS (KESx), a jury in the Central District of California reached a verdict in favor of the defendants, even

-8-

though the decedent was unarmed. The evidence in *Barron* showed that the decedent threatened officers and took a shooting stance, and the defendant officer testified that the decedent's actions led him to reasonably believe that the decedent had a gun and would shoot him. Plaintiffs anticipate that the Defendants in the instant case will rely on similar arguments and precedent raised in the foregoing cases in seeking qualified immunity and judgment in their favor.

Factually similar cases have also resulted in low settlement awards. For example, *A.H. et al., v. County of San Bernardino, et al.*, Case No. 5:23-cv-01028-JGB-SHK, a case arising from a fatal officer-involved-shooting that occurred when officers initiated a traffic stop, settled for a total of $250,000 in 2024.  In *A.H.*, the evidence showed that the decedent threatened to shoot the officer pursuing him nine times. In *A.H.*, the decedent had two minor children, and a judge sitting for the Central District approved the distribution of the minor's settlement in the net amount of $35,338.23 for each minor. Similarly, *Soria v. County of San Bernardino, at al,* Case No. 5:22-cv-01958-JGB-KK, a case where there was evidence that showed that decedent was armed with a gun and experiencing a mental health crisis at the time he was shot, settled for $250,000 in 2024. The case *J.G. v. City of Arvin*, Case No. 1:20-cv-00941-JLT-BAK settled for a total of $225,000 in 2022, and the presiding district court judge approved the net settlement amount of $25,410.06 to each of the four minors. In that case, officers observed the decedent armed with a sharp silver object, and they were aware at that time that the decedent had previously been arrested for stabbing a person with an ice pick. According to the officers, the decedent disobeyed numerous commands to drop the object and lunged and then sprinted toward the officers with the object in his hand.  The decedent's children, girlfriend, and other family members were present in the home at the time of the incident.

*A.B., et al. v. City of Santa Ana, et al.*, Case No. SA CV 18-1553-DOC-ADS, a case arising from a fatal officer-involved-shooting that occurred when officers

responded to a domestic disturbance call, settled for a total of $250,000. In *A.B.*, certain evidence showed that the decedent refused commands to drop a weapon, made verbal threats in the vicinity of several family members, and advanced toward officers with the weapon. In *A.B.*, the decedent had only one minor child, and a judge sitting for the Central District approved the distribution of the minor's settlement in the net amount of $50,476.38. Along these lines, *Loida Cavazos v. County of Fresno, et al.,* Case No. 1:23-00859-JLT-BAM, a case that arose from the fatal officer shooting of a man who was physically fighting his family and charged at officers with a large stone, despite being tased, settled for $275,000 earlier this year. *Yuriar, at al., v. County of Alameda, et al.*, Case No. 23-cv-06438-KAW, a case where officers fatally shot a man who was punching a police officer and threatening to kill the officer, settled for $110,000 in early 2025.

Also by way of example, records available online indicate the fatal police shooting case *Christopher Pettersen, et al. v. County of Los Angeles, et al.*, Case No. CV 14-04699, settled for $150,000. The evidence in that case showed that the decedent charged toward the involved deputies yelling "kill me, kill me," while wielding a weapon and refusing orders to drop the weapon.  The fatal police shooting case *Anthony Alvarado v. City of San Gabriel*, Case No. 2:21-cv-09742-JAK-AS, settled for $250,000. In *Alvarado*, the defense argued that the decedent posed an immediate threat justifying deadly force when he refused orders to drop a gun. The fatal police shooting case *Cano v. City of Los Angeles*, Case No. CV15-00333 JAK (Ex), settled for $50,000 where the decedent was unarmed but took a shooting stance and pantomimed the use of a gun. In the fatal police shooting case *Acosta v. County of San Francisco*, Case No. C924321SC, the plaintiffs' Fourth Amendment excessive force claim was tried in front of a jury, which awarded $259,359 to the plaintiffs. The jury in the fatal police excessive force case *Garcia v. County of Stanislaus*, Case No. 07-cv-01376-LJO-SMS, returned a $45,000 verdict in favor of the decedent's daughter and a $22,500 verdict in favor of the decedent's

-10-

1  son. In that case, the defendants argued that the decedent charged at one of the

2  officers and claimed that their efforts to use the taser were ineffective.

3  **IV.    <u>DISCUSSION</u>**

4        District courts have a special duty, derived from Federal Rule of Civil

5  Procedure 17(c), to safeguard the interests of litigants who are minors. Rule 17(c)

6  provides, in relevant part, that a district court must appoint a guardian *ad litem*—or

7  issue another appropriate order—to protect a minor or incompetent person who is

8  unrepresented in an action." Fed. R. Civ. P. 17(c).  In the context of proposed

9  settlements in suits involving minor plaintiffs, this special duty requires a district

10  court to conduct its own inquiry to determine whether the settlement serves the best

11  interests of the minor." *Dacanay v. Mendoza,* 573 F.2d 1075, 1080 (9th Cir. 1978);

12  *see also Salmeron v. United States,* 724 F.2d 1357, 1363 (9th Cir. 1983) (holding

13  that "a court must independently investigate and evaluate any compromise or

14  settlement of a minors' claims to assure itself that the minors' interests are

15  protected, even if the settlement has been recommended or negotiated by the

16  minors' parent or guardian ad litem.").

17        Although the district court has a special duty to safeguard the interests
18  of minor plaintiffs, that duty requires only that the district court
19  determine whether the net amount distributed to each minor plaintiff in
    the proposed settlement is fair and reasonable, without regard to the
20  proportion of the total settlement value designated for adult co-
21  Plaintiffs and contracted by them with Plaintiffs' counsel. If the net
    recovery of each minor plaintiff under the proposed settlement is fair
22  and reasonable, the district court should approve the settlement as
    proposed.
23
    *Robidoux v. Rosengren*, 638 F.3d 1177, 1179 (9th Cir. 2011).
24

25        California Code of Civil Procedure Section 372 and California Rules of

26  Court, Rule 3.1384 refer to the requirement of court approval and incorporate other

27  rules requiring disclosure of various pertinent facts.  California Rule of Court 3.1384

28  provides that "[a] petition for court approval of a compromise or covenant not to sue

-11-

under Code of Civil Procedure Section 372 must comply with rules 7.950, 7.951, and 7.952." Pursuant to the above California rules, Plaintiffs and their attorneys make the following disclosures:

**Disclosures pursuant to California Rule of Court 7.950:**

1. Petitioners are: (1) Shellondra Thomas, guardian *ad litem* for minor plaintiff D.S.; (2) Elonda Holman, guardian *ad litem* for minor plaintiff N.B.; and (3) Sharice Armstead, guardian *ad litem* for minor plaintiffs T.A. and T.B.

2. Minor plaintiffs N.B., T.A., and T.B. are the minor children of the decedent in this case, Terron Boon, and bring their claims as successors in interest to Mr. Boone. N.B. was born on September 10, 2010. T.A. was born on September 15, 2008. T.B. was born on January 4, 2012. Minor plaintiff D.S., who brings her claims individually, was born on March 2, 2013.

3. The nature of the Plaintiffs' claims in this lawsuit is set forth in the operative complaint filed in this action. Pursuant to the settlement agreement, the minors' claims will be compromised without a trial on the merits. (Masongsong Decl. at ¶ 6).

4. Plaintiffs N.B.'s, T.A.'s, and T.B.'s damages in this case arise from (1) the injuries suffered by their father, Terron Boone (the decedent), for which Plaintiffs N.B., T.A., and T.B. can recover survival damages as a successor in interest (survival damages); and (2) Plaintiffs N.B.'s, T.A.'s, and T.B.'s individual losses of the decedent's comfort, care, companionship, training, support, and guidance (wrongful death damages). Plaintiff D.S.'s damages in this case arise from her being in the back seat of the vehicle occupied by the decedent at the time that the decedent was shot. (Masongsong Decl. at ¶ 7).

5. The total amount of the settlement that Defendant County of Los Angeles agrees to pay is $275,000. Plaintiffs' attorneys are requesting attorneys' fees of 40% of the $275,000 in gross settlement proceeds. (Masongsong Decl. at ¶ 8).

Plaintiffs' attorneys also seek reimbursement for each minor plaintiff's pro

rata share of Plaintiffs' total advanced litigation costs.  Plaintiffs and their attorneys propose to allocate these costs on a pro rata basis reflecting the total recovery to each plaintiff. The total advanced litigation costs are $11,304.09.  Each minor plaintiff's pro rata share of the litigation costs is as follows:

N.B.: $2,671.61

T.A.: $2,671.61

T.B.: $2,671.61

D.S.: $824.09

Additionally, Plaintiffs' attorneys seek reimbursement for any liens asserted against the settlement, including a $2,244.41 Medi-Cal lien asserted against D.S.'s share of the settlement, and additional liens asserted against adult Plaintiff Shellondra Thomas's portion of the settlement. (Masongsong Decl. at ¶ 9).

These are the amounts that Plaintiffs' attorneys would be due under the existing contingency fee retainer agreements in this case.  Plaintiffs signed retainer agreements with the Law Offices of Dale K. Galipo and the Law Offices Goldberg & Gage that provide for a 40% contingency fee, which is a total of $110,000, divided as follows: (1) $26,000 from N.B.; (3) $26,000 from T.B.; (3) $26,000 from T.A.; (4) $8,000 from D.S.; (5) $24,000 from adult plaintiff Shellondra Thomas. (Masongsong Decl. at ¶ 8).

The 40% contingency attorney fee award in this case is justified by attorney Dale K. Galipo's skill and experience in the civil rights field, the difficulties and complexities of this case, and the risk assumed by Plaintiffs' counsel in this difficult case.  Mr. Galipo is one of the most successful and experienced civil rights attorneys in the country.  Mr. Galipo has been elected as a "Super Lawyer" every year since the year 2013.  In 2019, Mr. Galipo was selected to the Inner Circle of Advocates, considered to represent the top one hundred civil Plaintiffs' attorneys in the United States.  Also in 2019, Mr. Galipo was elected as a Fellow of the American College of Trial Lawyers, which is recognized as the preeminent organization of trial

-13-

lawyers in North America.  In 2020, Mr. Galipo received the "Trial Lawyer of the Year" award from the Consumer Attorneys Association of Los Angeles ("CAALA").  Also in 2020, Mr. Galipo received the "2020 Consumer Attorney of the Year" award from the Consumer Attorneys of California ("CAOC").

Some of Mr. Galipo's recent notable verdicts include the following: $13,500,000 verdict in the restraint death case *Zelaya v. City of Los Angeles*, tried in federal court before the Honorable Otis Wright, II in October 2023; $23,800,000 verdict in the police shooting case *Murillo v. City of Los Angeles*, tried in federal court before the Honorable Fernando M. Olguin in August 2023; $10,000,000 verdict in the case *Najera v. County of Riverside*, tried in federal court in April 2023; $17,002,000 verdict in the case *French v. City of Los Angeles*, tried in October 2021 before the Honorable Jesus G. Bernal; $13,200,000 verdict in the police in-custody death case *Valenzuela v. City of Anaheim*, tried in November 2019 before the Honorable Cormac J. Carney.

Mr. Galipo has recently been awarded statutory attorney fee rates over $1,000 an hour and up to $1,400 an hour by multiple federal courts.  In the case *L.D. v. City of Los Angeles*, tried in federal court in January 2020 in front of the Honorable Philip S. Gutierrez, Mr. Galipo achieved a verdict of $4.5 million, and Judge Gutierrez awarded Mr. Galipo an hourly rate of $1,100 in ruling on the attorney fee motion brought post-trial pursuant to 42 U.S.C. § 1988.  In the case *Donastorg v. City of Ontario*, tried in federal court in June 2021 before the Honorable Jesus G. Bernal, Mr. Galipo was also awarded $1,100 per hour.  In *Craig v. County of Orange*, which Mr. Galipo tried in April of 2019, the Honorable Cormac J. Carney awarded Mr. Galipo an hourly rate of $1,000 for work performed in the district court case and $1,200 per hour for work in defending defendants' appeals to the Ninth Circuit and the Supreme Court.  Also in 2019, Judge Carney awarded Mr. Galipo $1,200 per hour for his work in defending the defendants' appeals of the verdict in the case *Valenzuela v. City of Anaheim*.  In *French v. City of Los Angeles*, Judge

-14-

Bernal awarded Mr. Galipo $1,100 per hour for his work in that case at the district court level. In the same case, after the plaintiffs prevailed against the City's appeal, Judge Bernal awarded Mr. Galipo $1,400 per hour for attorney fees on appeal, in an order dated February 21, 2024. Mr. Galipo's hourly rates as awarded by these federal judges support Plaintiffs' attorneys' request for the full 40% contingency attorney fee in this case.

Additionally, this case involved a substantial amount of risk. If the Law Offices of Dale K. Galipo and the Law Offices of Goldberg & Gage were not awarded a fully compensatory fee in cases such as this one, then these attorneys would not be able to take such difficult cases. In turn, minor plaintiffs such as N.B., D.S., T.B., and T.A. would not be able to attract competent counsel who could achieve similar results. Accordingly, Plaintiffs' attorneys request reimbursement of the full amount of their attorneys' fees and costs. (Masongsong Decl. at ¶ 10).

7. As stated above, the gross amount of the settlement is $275,000. After deducting requested attorneys' fees and deducting and the pro-rata share of costs and lien asserted against D.S.'s share of the settlement, the total net settlement proceeds to the Minor Plaintiffs are as follows:

N.B.: $36,328.39

T.A.: $36,328.39

T.B.: $36,328.39

D.S.: $8,931.50

(Masongsong Decl. at ¶ 11).

8. It is requested that $36,328.39 be used to fund a structured settlement annuity for N.B. Attached as "Exhibit A" to the Declaration of Renee V. Masongsong is the proposed structured settlement annuity for N.B., which is incorporated herein in its entirety by reference. N.B.'s guardian *ad litem,* Elonda Holman, agrees to this proposal and believes that it is in the best interests of N.B. (Masongsong Decl. at ¶ 12).

-15-

It is further requested that $36,328.39 be used to fund a structured settlement annuity for T.B.  Attached as "Exhibit A" to the Declaration of Renee V. Masongsong is the proposed structured settlement annuity for T.B., which is incorporated herein in its entirety by reference. T.B.'s guardian *ad litem,* Sharice Armstead, agrees to this proposal and believes that it is in the best interests of T.B. (Masongsong Decl. at ¶ 12).

It is further requested that $36,328.39 be used to fund a structured settlement annuity for T.A.  Attached as "Exhibit A" to the Declaration of Renee V. Masongsong is the proposed structured settlement annuity for T.A., which is incorporated herein in its entirety by reference. T.A.'s guardian *ad litem,* Sharice Armstead, agrees to this proposal and believes that it is in the best interests of T.A. (Masongsong Decl. at ¶ 12).

It is further requested that $8,931.50 be used to fund a structured settlement annuity for D.S.  Attached as "Exhibit A" to the Declaration of Renee V. Masongsong is the proposed structured settlement annuity for D.S., which is incorporated herein in its entirety by reference. D.S.'s guardian *ad litem,* Shellondra Thomas, agrees to this proposal and believes that it is in the best interests of D.S. The net settlement amount to D.S. is different from the net settlement amount to T.A., T.B., and N.B. because D.S. had different claims and standing.  T.A., T.B., and N.B. are the children of the decedent, and T.A., T.B., and N.B. had wrongful death and survival claims as the decedent's successors in interest. (Masongsong Decl. at ¶ 12).

9. The moving guardians *ad litem* do not have any claims against the minor plaintiffs in connection with the subject incident.  The only guardian ad litem who is a plaintiff in this case is Shellondra Thomas.

11. California Welfare and Institutions Code Section 14124.73 does not apply.

12. This motion does not seek an order for payment of money to a special

-16-

needs trust.  (Masongsong Decl. at ¶ 15).

**Disclosures pursuant to California Rule of Court 7.951:**

1. This petition was prepared by attorney Renee V. Masongsong (California State Bar Number 281819), of the Law Offices of Dale K. Galipo, located at 21800 Burbank Boulevard, Suite 310, Woodland Hills, California, which represents Plaintiffs in this action.  (Masongsong Decl. at ¶ 14).

2. Plaintiffs' attorneys did not become concerned with this matter at the instance of any party against whom the claims of any of the minor plaintiffs are asserted.  (Masongsong Decl. at ¶ 15).

3. The Law Offices of Dale K. Galipo and Law Offices of Goldberg & Gage are not employed by any other party or any insurance carrier involved in the matter. (Masongsong Decl. at ¶ 16).

4. Plaintiffs' attorneys have not to date received any compensation for their services in connection herewith from any person.  (Masongsong Decl. at ¶ 17).

5. In addition to receiving compensation from the Minor Plaintiffs' shares of the settlement as described herein, Plaintiffs' attorneys expect to receive compensation for their services in connection herewith from the gross settlement proceeds allocated to Plaintiff Shellondra Thomas as follows: Plaintiffs' attorneys will receive $24,000 in attorneys' fees from Shellondra Thomas' portion of the settlement and reimbursement from Shellondra Thomas the amount of her pro rata share of costs advanced, which is $2,465.17.  (Masongsong Decl. at ¶ 18).

6. The Law Offices of Dale K. Galipo and the Law Offices of Goldberg & Gage accepted this engagement for a contingency fee, plus reimbursement for any costs advanced. The current retainer agreement provides for a 40 percent attorney fee recovery if the matter concludes after commencement of a lawsuit. (Masongsong Decl. at ¶ 8).

**Petitioners' Endorsements:**

Each respective petitioner identified above has made a careful and diligent

-17-

inquiry and investigation to ascertain the facts relating to the incident giving rise to their minor's claims, the parties responsible for the incident, and the nature, extent and seriousness of the minors' claims.  Petitioners further understand that if the compromise proposed in this petition is approved by the Court and is consummated, the Minor Plaintiffs will be forever barred from seeking any further recovery of compensation even though the minors' injuries and loss might in the future appear to be more serious than they are now thought to be.  Petitioners are informed and believe that the Minor Plaintiff(s) for whom they have been designated as the guardian ad litem has made some sufficient recovery from the effects of their injuries and losses so as to justify the resolution of this matter in accord with the terms of the settlement agreement. Petitioners recommend the compromise settlement and the proposed distribution to their respective minors as being fair, reasonable, and in the best interest of the minor, and requests that the Court approve this compromise settlement and make such other and further orders as may be just and reasonable.

Petitioner Elonda Holman requests that the Court enter the proposal attached to the Declaration of Renee V. Masongsong as "Exhibit A" for N.B.   Specifically, Petitioner Elonda Holman requests that the Court enter the Proposed Order filed concurrently herewith.  Petitioner Elonda Holman's verification is attached hereto.

Petitioner Sharice Armstead also requests that the Court enter the proposal attached to the Declaration of Renee V. Masongsong as "Exhibit B" for T.B., and enter the proposal attached as "Exhibit A" for T.A.  Specifically, Petitioner Sharice Armstead requests that the Court enter the Proposed Order filed concurrently herewith.  Petitioner Sharice Armstead's verification is attached hereto.

Petitioner Shellondra Thomas also requests that the Court enter the proposal attached to the Declaration of Renee V. Masongsong as "Exhibit A" for D.S. Specifically, Petitioner Shellondra Thomas requests that the Court enter the Proposed Order filed concurrently herewith.  Petitioner Shellondra Thomas'

verification is attached hereto.

## V.    **CONCLUSION**

For the reasons above, the Court should enter the proposed order submitted concurrently herewith.

DATED:   April 18, 2025            LAW OFFICES OF DALE K. GALIPO

By: _____ *s/ Renee V. Masongsong* _____
Dale K. Galipo
Renee V. Masongsong
*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION BY MINOR'S GUARDIAN**

I declare under penalty of perjury pursuant to the laws of the United States

that the foregoing is true and correct.

Executed on this 20 _____ day of February 2025, at Lancaster, California.

_____
Elonda Holman, guardian ad litem for
N.B.

## VERIFICATION BY MINOR'S GUARDIAN

     I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Executed on this _____ 28 day of February 2025, at Rosamond, California.

DocuSigned by:

_S. Thomas_____
0078662811B04D9...

Shellondra Thomas, guardian ad litem
for D.S.

-1-

**VERIFICATION BY MINOR'S GUARDIAN**

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Executed on this ⎯20⎯ day of February 2025, at Jean, Nevada.

Signed by:
*Sharice Armstead*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Sharice Armstead, guardian ad litem for T.A. and T.B.

-1-