# EXHIBIT 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:21-cv-06072-SB-KS | Date: | July 5, 2022 |
|---|---|---|---|

| Title: | R.E., a minor et al. v. City of Long Beach et al. |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Jennifer Graciano | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   [In Chambers] ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. No. 42]

      This case stems from the tragic shooting of Ruben Escarrega (Escarrega) during a highly unusual encounter with California Highway Patrol (CHP) officers in May 2020.  Escarrega was in a fitful emotional state on the freeway while he held a knife to his throat and threated to harm himself.  Officers unsuccessfully pleaded with him for over half an hour to drop the knife, when all of a sudden, Escarrega started to stab himself.  The officers tried using less-than-deadly force to subdue him, but to no avail.  Escarrega instead started to approach the officers, who then used deadly force to stop him.  Escarrega got within 15 feet of the officers before he fell to the ground.

      Plaintiffs Alice Escarrega and her minor grandson, R.E., by and through his guardian ad litem Linette Hernandez, filed this suit bringing federal and state civil rights claims.  They claim that the initial use of non-lethal and subsequent use of lethal force violated the U.S. Constitution.  Defendants State of California, Sergeant Kenny Butler, Officer Christian Heilbut, Officer Daniel Howells, Officer Abraham Kim, Officer Adam Phillipson, Sergeant Jesus Sanchez, and Officer John

Valenzuela have moved for summary judgment. Joint Brief, Dkt. No. 42. For the reasons stated below, Defendants' motion is **GRANTED**.

## BACKGROUND

Shortly before midnight on May 7, 2020, CHP officers responded to a request for assistance from the Long Beach Police Department. Joint Appendix of Facts (JAF) 1, Dkt. No. 42-2.[1] A possibly suicidal pedestrian, later identified as Escarrega, was reportedly walking along the I-405 Freeway (I-405), near the I-710 Freeway (I-710), with a large knife. JAF 1, 71. Officers shut down various exits and freeway lanes while trying to locate him. JAF 2. A few officers, including Sergeant Sanchez, initially found Escarrega on the I-710 northbound ramp to the southbound I-405, near the Pacific Avenue exit. JAF 37. The officers exited their vehicles and tried to contact Escarrega, who was holding a knife to his neck, but he refused to follow the officers' instructions. JAF 38–40. As Escarrega began moving towards the portion of the southbound I-405 that was not shut down, Sergeant Sanchez fired less-lethal beanbag rounds to prevent him from entering traffic lanes. JAF 41–42. At least one round struck Escarrega, but he continued down the embankment and ran across all lanes—both north-and southbound—of the I-405. JAF 43–44.

Sergeants Butler and Sanchez and Officers Kim and Valenzuela ultimately encountered Escarrega in the northbound lanes of the I-710, north of Wardlow Road. JAF 2–3. Sergeant Butler agreed to provide lethal cover for the other three officers—Sergeant Sanchez had a less-lethal beanbag gun and Officers Kim and Valenzuela had tasers. JAF 3–4. Meanwhile, Officers Heilbut, Howells, and Phillipson positioned themselves on the southbound side of the I-710, behind the wall in the center divider and perpendicular to Escarrega. JAF 30. Officer Heilbut provided lethal cover for Officers Howells and Philipson, who had beanbag guns. JAF 31–32. Sergeant Sanchez told the officers on the southbound side of the freeway to wait for him to give the "green light" before using any force. JAF 81.

---

[1] Both Plaintiffs and Defendants submitted evidentiary objections along with their Joint Brief. Dkt. No. 42-4. To the extent that the Court relies on evidence that is subject to an objection, the objection is overruled. See *Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016). The objections are otherwise overruled as moot.

For the next 30 to 40 minutes, Sergeant Sanchez and Officer Valenzuela attempted to speak with Escarrega and use de-escalation tactics.  JAF 5, 9.  An airship, a K-9 unit, and a crisis negotiator were requested, but they never arrived.  JAF 6–8, 76.  The officers tried to talk Escarrega down and convince him to drop the knife.  Escarrega—who was under the influence of methamphetamine—did not drop the knife but told the officers that he wanted to go home, see his son, and be left alone.  JAF 29, 45, 50, 77.  He eventually appeared to become nonresponsive to the officers' negotiation efforts.  JAF 88.

The situation suddenly turned violent.[2]  Escarrega began yelling and stabbing himself with the knife in the neck and chest.  JAF 9.  Officers Phillipson and Howells broke their cover, emerged from the other side of the divider, and fired their beanbag guns at Escarrega from behind.  JAF 84–85.  Escarrega—who was about 40 to 60 feet away from the officers—moved away from Officers Phillipson and Howells and towards the officers on the northbound side of the freeway.  JAF 47, 85.  Sergeant Sanchez fired his beanbag gun and Officers Kim and Valenzuela deployed their tasers in an attempt to incapacitate Escarrega.  JAF 11–12.  Sergeant Butler and Officer Heilbut then fired a total of 19 lethal shots (13 and 6, respectively) at Escarrega, when he was about 20 to 30 feet away.[3]  JAF 13, 15, 33, 35, 89, 90.  All told, approximately 10 seconds passed between the moment Escarrega began yelling and the last fired shot.  JAF 21.

Escarrega fell to the ground, approximately 10 to 15 feet away from the officers.  JAF 19–20.  They approached him on the ground and tried to get him to let go of the knife, but he refused.  JAF 23.  The officers were eventually able to remove the knife from Escarrega's possession, at which point they began to provide medical aid.  JAF 25.  Fire department personnel arrived on scene less than

---

[2] Escarrega's encounter with CHP officers is captured on dashboard camera footage from two patrol vehicles.  Joint Appendix of Evidence (JAE), Dkt. No. 42-3, Exs. 5-1, 5-2.  But only one of the videos (Ex. 5-1) contains audio, and the footage in both videos is dark and not clear.  Thus, while the footage provides useful audio, there is no intelligible video of the incident's crucial moments (e.g., Escarrega's and the officers' movements before and during the shooting).

[3] The parties do not dispute that Escarrega was between 20 and 30 feet away when Sergeants Butler and Heilbut fired, but Defendants claim that Escarrega was more specifically within 25 feet of the officers because Sergeant Butler saw the taser probes, which only have a range of 25 feet, hit him.  JAE Ex. 10-2, Butler Dep., at 31:6–24.  To the extent this is even a dispute, it is not a material one.

CV-90 (12/02)                    **CIVIL MINUTES – GENERAL**                    Initials of Deputy Clerk JGR

three minutes after the shots were fired to administer medical treatment, but Escarrega ultimately died. JAF 26, 28. His cause of death was determined to be a suicide, although the coroner noted that gunshot wounds were also a contributing factor. JAF 28; JAE Ex. 10-9, Vallone Dep., at 22:23–25.

*   *   *

Plaintiffs filed this lawsuit in state court in May 2021, and Defendants removed two months later. Dkt. No. 1. Plaintiffs allege claims under 42 U.S.C. § 1983 for excessive force, denial of medical care, and deprivation of substantive due process; they also bring a claim under the Bane Act, Cal. Civ. Code § 52.1, and common-law claims of battery and negligence.[4] First Amended Complaint, Dkt. No. 28. Defendants now move for summary judgment on all of Plaintiffs' claims.

## **LEGAL STANDARD**

Summary judgment is appropriate where the record, read in the light most favorable to the nonmoving party, shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" based on the issue. *Id*. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50.

The burden is first on the moving party to show an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party satisfies this burden either by showing an absence of evidence to support the nonmoving party's case when the nonmoving party bears the burden of proof at trial, or by introducing enough evidence that would entitle the moving party to a directed verdict when the moving party bears the burden of proof at trial. *See id*. at 325; *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). If the

---

[4] Plaintiffs do not oppose summary judgment on their § 1983 claim for denial of medical care. Joint Brief at 32–33. Accordingly, the officers are entitled to summary judgment on Plaintiffs' denial of medical care claim.

moving party satisfies this initial requirement, the burden then shifts to the nonmoving party to designate specific facts, supported by evidence, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. If the nonmovant "fails to properly address another party's assertions of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion [or] . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## DISCUSSION

A. **Excessive Force**

Defendants move for summary judgment on Plaintiffs' § 1983 claim for violation of Escarrega's Fourth Amendment Rights. They argue that the officers' use of force was objectively reasonable and, even if it was not, they are nonetheless entitled to qualified immunity. The Court addresses each argument in turn.

    1. **Reasonableness**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. In a case involving excessive force, courts examine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). This inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Because "police officers are often forced to make split-second judgments," reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id*. at 396–97 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1975)).

Plaintiffs challenge the lethal force used by Sergeant Butler and Officer Heilbut and the use of beanbag guns by Sergeant Sanchez and Officers Phillipson and Howells.[5] Courts weigh several factors when assessing whether an officer's

---

[5] Plaintiffs expressly do not contend that Officers Kim's and Valenzuela's taser use was unreasonable. Joint Brief at 25 n.2. Accordingly, those officers are entitled to summary judgment on Plaintiffs' excessive force claim.

use of force was objectively reasonable, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempt to evade arrest by flight."  *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (en banc) (quoting *Graham*, 490 U.S. at 396).  As a general rule, "an officer's use of deadly force is reasonable if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (cleaned up).  "Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed."  *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011).  But the "most important" factor is "whether the suspect posed an immediate threat to the safety of the officers or others."  *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)).

Defendants do not appear to contend that the circumstances giving rise to this encounter constituted a particularly serious crime.  Pedestrians are prohibited from crossing or walking in traffic lanes on the freeway, which can pose a danger to both drivers and the pedestrian.  Cal. Veh. Code §§ 21956, 21960.  But it is undisputed that the officers did not have information that Escarrega had physically harmed or posed a danger to anyone other than himself, nor did he verbally threaten the officers or anyone else.  JAF 73–74.  However, while this factor may weigh against the use of lethal force as a general matter, it focuses on the situation *prior* to the use of force and does not account for the sudden change in circumstances that required the officers to take forceful action.

The second and third factors weigh heavily in favor of finding the use of force to be reasonable, because Escarrega posed an immediate threat and ignored the officers' repeated pleas to drop the knife (both before and after the use of force).  The officers only used force once Escarrega began stabbing himself.  Plaintiffs contend that the use of beanbag guns provoked Escarrega by causing him to move away from the less-lethal rounds and towards the officers positioned on the northbound side of the freeway (which then led to the use of lethal force).  Joint Brief at 25.  But the less-lethal rounds were used in an attempt to stop Escarrega from stabbing himself.  In *Glenn*, the Ninth Circuit addressed officers' use of force to prevent a suspect from harming himself, noting that "[a]lthough *Graham* does not specifically identify as a relevant factor whether the suspect poses a threat to *himself*, we assume that the officers could have used some reasonable level of force to try to prevent [him] from taking a suicidal act." 673 F.3d at 872.  But it

| CV-90 (12/02) | CIVIL MINUTES – GENERAL | Initials of Deputy Clerk JGR |

explained that using a "significant amount of force" may not serve this goal if it would "permit officers to use force capable of causing serious injury or death in an effort to prevent the possibility that an individual might attempt to harm only himself." Id. (emphasis omitted). Crucially, however, the suspect in *Glenn* posed no *immediate* threat to himself because he had taken "[n]o new action" that "precipitated the use of less-lethal force." Id. at 874. Instead, he was standing in the driveway with a knife, not making any attempt to move. Id. Indeed, "only two things about the situation had changed" when the officers decided to shoot: the beanbag gun arrived and the people standing near the suspect had moved further away, which should have decreased the need for force. Id. Here, by contrast, the parties do not dispute that Escarrega posed a very real and immediate threat to himself when force was first deployed. The officers were suddenly facing a man who was violently stabbing himself in potentially fatal areas of the body, the neck and chest. They had mere seconds to determine how to respond and reasonably decided that a form of force less lethal than what Escarrega was inflicting upon himself might stop him from killing himself.

Deadly force was only used when Escarrega began moving towards the officers and less-lethal methods failed to incapacitate him. Plaintiffs focus on the fact that Escarrega was only stabbing himself and had not verbally threatened to harm the officers. But this argument ignores the totality—and reality—of circumstances the officers faced. Escarrega was under the influence of methamphetamine, acting unpredictably, and in the midst of a fit of violence. Most importantly, he was rapidly approaching the officers, covering a distance of somewhere between 25 and 50 feet in a matter of seconds. *See Watkins v. City of San Jose*, No. 15-CV-05786-LHK, 2017 WL 1739159, at *9 (N.D. Cal. May 4, 2017) (finding that a suspect with a knife posed an immediate threat when he was quickly approaching officers, who shot him at a distance of 55 feet, because he "could have covered" the remaining distance "within 3 to 4.5 seconds"), *aff'd sub nom. Buchanan v. City of San Jose*, 782 F. App'x 589 (9th Cir. 2019). Officers deployed tasers and beanbag guns to stop both his self-harm and his approach, but to no avail. Sergeant Butler and Officer Heilbut then deployed lethal force when Escarrega was 20 to 30 feet away, but he still continued to approach, finally falling to the ground approximately 10 to 15 feet from the officers. They fired to prevent what they reasonably perceived as an immediate threat to the safety of the officers—i.e., that Escarrega would turn his disturbing use of deadly force on them. *See, e.g.*, JAE Ex. 10-4, Sanchez Dep. at 69:5–14 ("[A]the time that he began closing the distance between myself and the other officers, with him holding the knife and knowing that he had already . . . stabbed himself with [it], I thought that it was a very certain probability that he was going to stab us as well."); Butler

Dep. at 37:13–20 (stating that he only started shooting when Escarrega became a threat to himself and the other officers); JAE Ex. 10-3, Heilbut Dep. at 29:11–30:9 (noting that he stopped shooting when Escarrega was on the ground and "no longer a threat").

In short, the officers were faced with a dangerous, unstable, and violent individual who was so disturbed and out of control that he repeatedly thrust a knife into his own body, inflicting deadly wounds. The officers on scene had to make a snap decision about what Escarrega would do if he got within striking distance—circumstances that plainly created an immediate risk of deadly harm to the officers. See *George*, 736 F.3d at 838 ("If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat."). In these circumstances, the Fourth Amendment did not require the officers to assume the risk in the hope that Escarrega meant only to stab himself. See *Graham*, 490 U.S. at 396 (reasonableness is the touchstone of the Fourth Amendment). Nor is a court permitted to second guess the difficult decision presented by this potentially deadly situation. See *id*. at 396–97 (recognizing "police officers are often forced to make split-second judgments"). Under all the circumstances facing the officers in this case, the use of deadly force was reasonable.

Plaintiffs contend, however, that other factors weigh against a finding of reasonableness. First, they suggest that less-intrusive alternatives were available because the officers could have retreated instead of using deadly force, or "asses[ed] the situation before firing each shot." Joint Brief at 22. As to the first argument, "ample authority exists holding police officers have no duty to retreat." *Est. of Yanira Serrano v. Trieu*, No. C-14-4081 MMC, 2016 WL 1089225, at *6 n.18 (N.D. Cal. Mar. 21, 2016) (collecting cases), *aff'd sub nom. Est. of Serrano v. Trieu*, 713 F. App'x 631 (9th Cir. 2018). As to the second, 19 shots were fired in a matter of seconds, and Escarrega still managed to get closer to the officers while they were shooting. See Butler Dep. at 32:24–33:10 (Sergeant Butler kept firing as Escarrega was advancing, and "from where [the] casings were to where [Escarrega] fell, it was about ten feet"); Heilbut Dep. at 29:11–16 (Escarrega continued to move forward after Officer Heilbut's first shot). Under these circumstances, the number of shots fired was not unconstitutional; the officers stopped firing once Escarrega was on the ground and they no longer considered him a threat. See *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) ("[T]he officers need not stop shooting until the threat has ended.").

| CV-90 (12/02) | CIVIL MINUTES – GENERAL | Initials of Deputy Clerk JGR |

Plaintiffs also argue that Sergeant Butler and Officer Heilbut failed to warn Escarrega before using deadly force. "Before using deadly force, law enforcement must, 'where feasible,' issue a warning." *Est. of Aguirre v. County of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022) (quoting *Garner*, 471 U.S. at 11–12). In this case, the situation abruptly and rapidly devolved: less than 10 seconds passed between when Escarrega began stabbing himself and when he fell to the ground after the last shot. Under such circumstances, a warning was not feasible. *See Est. of Martinez v. City of Fed. Way*, 105 F. App'x 897, 899 (9th Cir. 2004) ("Verbal warnings are not feasible when lives are in immediate danger and every second matters.").

Finally, while Plaintiffs are correct that Escarrega was clearly emotionally disturbed, the law does not "create two tracks of excessive force analysis, one for the mentally ill and one for serious criminals." *Bryan*, 630 F.3d at 829. In this case, Escarrega's emotional state reasonably appeared to increase the officers' assessment of the threat he posed to them. He was under the influence of methamphetamine and had held a knife to his neck for 30 to 40 minutes while officers tried to deescalate the situation. He suddenly began stabbing himself in the neck and chest, and then started quickly approaching the officers while doing so. As stated, it was reasonable for the officers to perceive that Escarrega posed a deadly threat to them if he was not stopped at that point.

### 2. Qualified Immunity

Even if the Court were to find that the officers' use of force was unreasonable, they nonetheless would be entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The purpose of qualified immunity is to provide officers "'breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). The availability of qualified immunity depends on: (1) whether there has been a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). It is within the sound

discretion of the district court to determine which of the two prongs should be addressed first. *Pearson*, 555 U.S. at 236.

As the Supreme Court has recently emphasized, "courts [are] not to define clearly established law at too high a level of generality." *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. (cleaned up). In a situation that is "not . . . obvious," a plaintiff "must identify a case that put [an officer] on notice that his specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam).

Plaintiffs cite four cases to support their contention that the officers violated a clearly established right. They rely most heavily on *Glenn*, 673 F.3d 864, as clearly establishing that the fact that a suspect is suicidal cannot justify the use of deadly force. But, as previously discussed, the facts of *Glenn* are distinguishable: the suspect did not pose an imminent threat because he was not harming himself or approaching the officers. As to the use of less-lethal force, Plaintiffs argue that, in addition to *Glenn*, *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123 (9th Cir. 2017), *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), and *Bryan*, 630 F.3d 805, clearly establish that officers cannot use less-lethal force on a person who is neither aggressive nor combative. But this rule is described too generally, and each case contains a very different set of facts. In *Jones*, the officers used a taser on a suspect that had already been subdued, while they were placing him in handcuffs. 873 F.3d at 1131–32. The officer in *Deorle* observed the suspect at close range for over five minutes and decided to shoot a beanbag round if he "came within a certain range." 272 F.3d at 1281. But the suspect was approaching "at a steady gait" and had already discarded his weapon (a crossbow), "carrying only a bottle or a can in his hand." *Id*. And in *Bryan*, the suspect did not pose an immediate threat because he was approximately 15 to 25 feet away, unarmed, and not advancing towards—or even facing—the officer. 630 F.3d at 826–27. None of the cases "addresses facts like the ones at issue here." *Rivas-Villegas*, 142 S. Ct. at 8.

It is far from clearly established that the officers could not use lethal or less-lethal force to incapacitate a person who was stabbing himself and rapidly approaching the officers while doing so. Accordingly, the officers are entitled to summary judgment on Plaintiffs' excessive force claim.

### B.  Substantive Due Process

Defendants also move for summary judgment on Plaintiffs' § 1983 claim for interference with familial integrity in violation of the Fourteenth Amendment.  The Due Process Clause of the Fourteenth Amendment protects against government deprivation of life, liberty, and property of citizens without due process of law.  U.S. Const. amend. XIV, § 1.  Both parents and children of a person killed by law enforcement officers may assert this substantive due process right.  *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998).  To prevail on a such a claim, a plaintiff must show that the state actor's conduct "shocks the conscience."  *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (collecting cases).  "Where, as here, the officers did not have time to deliberate, a use of force shocks the conscience only if the officers had a 'purpose to harm' the decedent for reasons unrelated to legitimate law enforcement objectives."  *Gonzalez*, 747 F.3d at 797 (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)).

There is no evidence that any of the officers intended to harm Escarrega, nor do Plaintiffs even contend as much.  Instead, they argue that there was time for the officers to deliberate, thus triggering the lower standard of "reckless disregard" or, at the very least, leaving the standard of culpability to the jury.  Joint Brief at 34–37.  Ninth Circuit authority does not support this assertion.  *See Porter*, 546 F.3d at 1139 (finding a five-minute altercation ending in shooting left no time for deliberation).  As discussed, there was insufficient time for the officers to provide a warning, let alone deliberate.  Like the officer in *Porter*, the CHP officers "faced a fast paced, evolving situation presenting competing obligations with insufficient time for the kind of actual deliberation required for deliberate indifference."  *Id.* at 1142; *see also Ochoa v. City of Mesa*, 26 F.4th 1050, 1057 (9th Cir. 2022) (finding that "the officers had to make a snap decision about Ochoa's intentions and the threat he posed to them," and "[t]he urgency of that moment . . . forced the officers to react instantly, without deliberation").

Accordingly, the officers are entitled to summary judgment on Plaintiffs' substantive due process claim.[6]

---

[6] Even if the deliberate indifference standard did apply, Plaintiffs' substantive due process claim still fails in light of the Court's finding that the use of force was reasonable under the circumstances of this case.  *See Corales v. Bennett*, 567 F.3d

### C.   State Law Claims

#### 1.   The Bane Act

Defendants move for summary judgment on Plaintiffs' Bane Act claim. Cal. Civ. Code § 52.1. The Bane Act "requires proof of an underlying constitutional violation." *Williamson v. City of National City*, 23 F.4th 1146, 1155 (9th Cir. 2022). Because the officers did not violate Escarrega's Fourth Amendment rights, Plaintiffs cannot establish a Bane Act violation. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' Bane Act claim.

#### 2.   Battery and Negligence

Defendants also move for summary judgment on Plaintiffs' battery and negligence claims. Plaintiffs' battery claim rises and falls on the Court's reasonableness determination. *See Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009) ("A state law battery claim is a counterpart to a federal claim of excessive use of force."). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' battery claim.

As to Plaintiffs' negligence claim, "[c]laims of excessive force under California law are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims." *Hayes v. County of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013) (applying the *Graham* factors); *see also* Judicial Council of California Civil Jury Instruction (CACI) 440 (same). Negligence claims are broader than Fourth Amendment claims to the extent that an officer's preshooting conduct, such as tactical decisions leading up to the use of deadly force, may be considered in the totality of circumstances surrounding the use of deadly force. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013). The California Supreme Court explained:

> But in a case like this one, where the preshooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, the reasonableness of the officers' preshooting conduct should not be considered in isolation. Rather, it should be considered

---

554, 569 n.11 (9th Cir. 2009) (denial of underlying First Amendment claim "necessarily foreclose[d] [a] substantive due process claim" on the same grounds).

in relation to the question whether the officers' ultimate use of deadly force was reasonable.

*Id*. at 632.

The touchstone, however, is still reasonableness: "[a]s long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm . . . in order to avoid liability for negligence." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 537–38 (2009). And like Fourth Amendment claims, negligence claims judge the reasonableness of an officer's conduct "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hayes*, 57 Cal. 4th at 632 (quoting *Graham*, 490 U.S. at 396).

At the hearing, Plaintiffs' counsel argued that the officers' preshooting conduct negligently provoked the circumstance that led to the use of deadly force. Plaintiffs do not question the tactic used to deploy officers on each side of Escarrega to cut off his escape route. But Plaintiffs do question the failure to devise a plan to avoid the possibility that the use of less-lethal force by officers on one side of Escarrega could cause him to travel in the direction of the officers on the other side, creating the need to use deadly force. This is the type of second guessing, however, that the California Supreme Court has condemned when considering the reasonableness of an officer's actions. *Hayes*, 57 Cal. 4th at 632. The officers here had to respond to a sudden and dramatic change in circumstances and opted to use less-lethal force to try to stop Escarrega from killing himself. No reasonable juror could find that it was unreasonable for the officers to take such action rather than to stand down and become onlookers to an unfolding tragedy. And given the highly unusual circumstances of this case, no reasonable juror could find negligence in the type of tactics deployed without indulging in the prohibited use of 20/20 hindsight. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' negligence claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED**. A final judgment will issue separately.

| CV-90 (12/02) | CIVIL MINUTES – GENERAL | Initials of Deputy Clerk JGR |
|---|---|---|