# EXHIBIT 6

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Del Castillo, et al., | No. CV-14-01945-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Tempe, et al., | |
| Defendants. | |

Plaintiffs are Fernando Del Castillo and Bertha Guerrero, individually and as successors in interest to their deceased son, Austin Del Castillo. Defendants are the City of Tempe and Tempe Police Officer Matthew Feddeler. At issue is Defendants Motion for Summary Judgment on Plaintiffs' Remaining Claims. (Doc. 57.) The motion is fully briefed and neither party requested oral argument. For the following reasons, Defendants' motion is granted.

## BACKGROUND

This case arises out of a fatal police-involved shooting, which was caught on video. (*See* Doc. 59.) On September 12, 2013, Officer Feddeler responded to a dispatch report that a subject with a knife was chasing people up and down Mill Avenue in Tempe, Arizona. (Doc. 58, ¶¶ 50, 54-58.) When Officer Feddeler arrived at the scene, a bystander directed him to Del Castillo, who was crouched down near a Chili's restaurant. (*Id.*, ¶ 60.) Officer Feddeler approached Del Castillo with his gun drawn and ordered him

1  to the ground. (*Id.*, ¶ 72.)  Del Castillo did not comply.  Instead, he stood up with a box
2  cutter in his right hand and started to cut his left wrist. (*Id.*, ¶ 74.)  Officer  Feddeler
3  continued to order Del Castillo to the ground, and Del Castillo responded "you need to
4  get more cops here." (*Id.*, ¶ 75.)

5  Officer Feddeler advised dispatch of the situation. (*Id.*, ¶ 77.)  Soon, Officer
6  James Camiliere and Sgt. Aimee Willcoxon arrived. (*Id.*, ¶¶ 81-82.)  Officer Camiliere
7  positioned himself to Officer Feddeler's right, Sgt. Willcoxson positioned herself to
8  Officer Feddeler's left, and both ordered Del Castillo to drop his weapon. (*Id.*, ¶¶ 91, 99,
9  109.)  Del Castillo again did not comply.  Instead, he shouted profanities and paced back
10  and forth. (*Id.*, ¶¶ 110-12.)

11  Officer Camiliere drew his Taser and aimed it at Del Castillo, at which point Del
12  Castillo shouted "no, no, no," and advanced in Officer Feddeler's general direction with
13  the box cutter in hand. (*Id.*, ¶¶ 127-128; Doc. 61 at 28, ¶¶ 31-32.)  Defendants contend,
14  and the video shows, that Del Castillo ran toward Officer Feddeler with the box cutter in
15  his outstretched hand. (Doc. 58, ¶ 128.)  Plaintiffs, however, claim that Del Castillo
16  could have been attempting to escape through the space between Officer Feddeler and
17  Sgt. Willcoxon, and that he held the box cutter lower. (Doc. 61 at 28-29, ¶¶ 31, 35.)
18  Ultimately, Del Castillo advanced several feet in Officer Feddeler's direction before he
19  fired five shots, striking Del Castillo three times. (Doc. 58, ¶¶ 129-31; Doc. 61 at 28, ¶
20  32.)  The incident, from the time Officer Feddeler first ordered Del Castillo to the ground
21  until the time Officer Feddeler fired his first shot, unfolded in 47 seconds. (Doc. 58, ¶
22  133.)

23  Plaintiffs brought this action in September 2014, alleging eight claims under 42
24  U.S.C. § 1983 and Arizona state law.  Pursuant to the parties' stipulation, the Court
25  dismissed Counts I, III, and V of Plaintiffs' amended complaint. (Docs. 47-48.)  Five
26  remaining claims are at issue.  In Count II, Plaintiffs allege that Officer Feddeler deprived
27  Del Castillo of his Fourth Amendment rights by using excessive force to apprehend him.
28  (Doc. 11 at 7.)  In Count IV, Plaintiffs allege that Officer Feddeler's actions deprived

- 2 -

1 them of their Fourteenth Amendment due process rights by interfering with their familial
2 relationship with Del Castillo.  (*Id.* at 9.)  Finally, Counts VI, VII, and VIII are state law
3 claims for false arrest, battery, and negligence against all Defendants.  (*Id.* at 14-16.)
4 Defendants have moved for summary judgment on all remaining claims.  (Doc. 57.)

## LEGAL STANDARD

6 Summary judgment is appropriate if the evidence, viewed in the light most
7 favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to
8 any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.
9 P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of
10 informing the district court of the basis for its motion, and identifying those portions of
11 [the record] which it believes demonstrate the absence of a genuine issue of material
12 fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Substantive law determines
13 which facts are material and "[o]nly disputes over facts that might affect the outcome of
14 the suit under the governing law will properly preclude the entry of summary judgment."
15 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A fact issue is genuine 'if
16 the evidence is such that a reasonable jury could return a verdict for the nonmoving
17 party.'"  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)
18 (quoting *Anderson*, 477 U.S. at 248).

## DISCUSSION

20 **I.  Count II:  Excessive Force**

21 Defendants argue that Officer Feddeler is entitled to qualified immunity on
22 Plaintiffs' excessive force claim.  (Doc. 57 at 4-11.)  "[A]n officer using deadly force is
23 entitled to qualified immunity, unless the law was clearly established that the use of force
24 violated the Fourth Amendment."  *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir.
25 2010).  "An officer will be denied qualified immunity in a § 1983 action only if (1) the
26 facts alleged, taken in the light most favorable to the party asserting injury, show that the
27 officer's conduct violated a constitutional right, and (2) the right at issue was clearly
28 established at the time of the incident such that a reasonable officer would have

- 3 -

understood [his] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Defendants argue that Officer Feddeler's use of deadly force was objectively reasonable under the totality of the circumstances. "[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). When assessing the reasonableness of deadly force, the court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Although an officer may not use deadly force to apprehend a suspect who poses no immediate threat, "it is not constitutionally unreasonable to prevent escape using deadly force '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Wilkinson*, 610 F.3d at 550 (quoting *Garner*, 471 U.S. at 11.) Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Based on dispatch reports that Del Castillo had been chasing people around Mill Avenue with a knife, Officer Feddeler had probable cause to believe that Del Castillo had committed several felonies, including aggravated assault with a deadly weapon. During the police encounter, Del Castillo was armed with a box cutter and displayed erratic behaviors, such as pacing, shouting profanities, and cutting his own wrist. Moreover, Del Castillo refused to comply with repeated commands to drop his weapon and get to the ground, and instead advanced several feet in Officer Feddeler's direction. (Doc. 61 at 28, ¶¶ 31-32.) Plaintiffs quarrel over whether Del Castillo advanced directly toward Officer

1  Feddeler with the box cutter in his outstretched hand or was attempting to escape through
2  the space between Office Feddeler and Sgt. Willcoxon with the box cutter positioned
3  lower toward his waist.  Based on the video recording of the encounter, the direction and
4  speed in which Del Castillo advanced makes it infeasible to ascertain that his intent was
5  to escape.  Nor does the law does require an officer to wait until a suspect is close enough
6  to stab him before taking measures to prevent serious physical injury.  However, even if a
7  reasonable juror somehow could determine that Del Castillo was attempting to escape,
8  the factual dispute is immaterial.  Taking Plaintiffs' version of events as true, Del Castillo
9  was armed with a dangerous weapon and, at the very least, attempted to evade arrest by
10 flight.  Based on the undisputed evidence and the totality of the circumstances, it was
11 objectively reasonable for Officer Feddeler to believe that Del Castillo posed an
12 immediate threat to himself, the other officers, or to the public.

13        Plaintiffs fault Officer Feddeler for using deadly force when non-lethal
14 alternatives, such as tactically repositioning himself or deploying a Taser, were available.
15 But "[a] reasonable use of deadly force encompasses a range of conduct, and the
16 availability of a less-intrusive alternative will not render conduct unreasonable."
17 *Wilkinson*, 610 F.3d at 551.  Plaintiffs also argue that Officer Feddeler must prove that
18 each of his five shots were reasonable.  The Court disagrees.  Given the fast pace and
19 escalation of the encounter, Officer Feddeler did not have time to evaluate whether each
20 additional shot was necessary.  His use of deadly force was objectively reasonable, and
21 the Court finds that the number of rounds fired is immaterial.  *Id.* at 552-53 ("Because we
22 conclude as a matter of law that deadly force was authorized to protect a fellow officer
23 from harm, it makes no difference in this case whether [the officer] fired seven rounds or
24 eleven.").  Finally, Plaintiffs fault Officer Feddeler for not warning that he would use
25 deadly force before firing his weapon. But Officer Feddeler, as well as Officer Camiliere
26 and Sgt. Willcoxon, repeatedly ordered Del Castillo to drop his weapon and get on the
27 ground.  Del Castillo defied these commands and advanced several feet in Officer
28 Feddeler's direction while armed with a box cutter.  It was not unreasonable for Officer

Feddeler to fire his weapon without first warning Del Castillo that he would employ deadly force, especially considering that the entire incident unfolded in a under a minute.

Accordingly, Officer Feddeler is entitled to qualified immunity on Plaintiffs' excessive force claim because the use of deadly force was objectively reasonable under the totality of the circumstances. Summary judgment on Count II of the amended complaint is granted in favor of Defendants.

**II. Count IV: Interference with Familial Relationship**

Defendants contend that Plaintiffs' due process claim fails as a matter of law. (Doc. 57 at 12.) "[P]arents have a Fourteenth Amendment liberty interest in the companionship and society of their children," and "[o]fficial conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process." *Wilkinson*, 610 F.3d at 554.

> In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation [by the officer] is practical. Where actual deliberation is practical, then an officer's deliberate indifference may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives.

*Id.* (internal citations and quotations omitted).

When Officer Feddeler first encountered Del Castillo, he was crouched down near a restaurant. The situation quickly escalated. Soon, three officers arrived on the scene and ordered Del Castillo to drop his weapon and get to the ground. Del Castillo defied these commands, shouted profanities, cut his own wrist, and advanced several feet in Officer Feddeler's direction while armed with the box cutter. The incident unfolded in 47 seconds. This case does not present a situation in which actual deliberation by Officer Feddeler was practical. *See Porter v. Osborn*, 546 F.3d 1131, 1139-40 (9th Cir. 2008) (concluding that actual deliberation was not practical during a five-minute police encounter that evolved and escalated quickly). Thus, Officer Feddeler may be held liable

under § 1983 only if he acted with a purpose to harm unrelated to legitimate law enforcement objectives. "For example, a purpose to harm might be found where an officer uses force to bully a suspect or 'get even.'" *Wilkinson*, 610 F.3d at 554. Here, there is no evidence that Officer Feddeler fired his weapon for any reason other than to neutralize what he perceived to be a threat to the safety of himself, the other officers, or the public. Accordingly, the Court grants summary judgement on Count IV in favor of Defendants.

**III. State Law Claims**

Defendants argue that Plaintiffs' state law claims against Officer Feddeler must fail because Plaintiffs did not serve Officer Feddeler with a Notice of Claim as required by Arizona law. (Doc. 57 at 15-17.) Under A.R.S. § 12-821.01(A):

> Persons who have claims against . . . a public employee shall file claims with the person or persons authorized to accept service for the . . . public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues . . . Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereupon.

"The failure to timely file a notice bars the claim and is not excused by actual notice or substantial compliance." *Slaughter v. Maricopa Cty.*, 258 P.3d 141, 143 (Ariz. Ct App. 2011).

Arizona Rules of Civil Procedure 4.1(d), which governs service upon individuals, provides that service:

> shall be effected by delivering a copy of the summons and of the pleading to that individual personally or by leaving copies thereof at that individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the pleading to an agent authorized by appointment or by law to receive service of process.

Thus, "[t]o perfect . . . claims against an individual officer, [a plaintiff] has to deliver a notice of claim to the officer personally, an individual of suitable age and discretion residing with the officer or the officer's appointed agent." *Simon v. Maricopa Med. Ctr.*, 234 P.3d 623, 629 (Ariz. Ct. App. 2010).

It is undisputed that Plaintiffs did not serve Officer Feddeler with a Notice of Claim. (Doc. 58, ¶ 148.) Plaintiffs argue that their failure is excusable because they did not learn Officer Feddeler's identity until after the 180-day claim filing period. They cite no authority, however, suggesting that a failure to comply with A.R.S. § 12-821.01(A) may be excused under such circumstances. Even the discovery rule, if it were to apply to the Notice of Claim statute, does not assist Plaintiffs. Under the discovery rule, a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the claim. *Gust, Rosenfield & Henderson v. Prudential Ins. Co.*, 898 P.2d 964, 966 (Ariz. 1995). The rationale for the discovery rule "is that it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists." *Id.* at 967. Here, Plaintiffs were aware of the events surrounding the shooting and that it involved a Tempe Police officer. More importantly, though, Plaintiffs cite no evidence that they diligently tried to learn Officer Feddeler's identity. Although the Tempe Police Department withholds the names of officers involved in a shooting until an initial internal investigation is completed, this information typically becomes available within one to two weeks from the date of the shooting. (Doc. 64, ¶¶ 2-4.) The Tempe Police Department has no record of a request for the name of the officer involved in the shooting of Del Castillo. (*Id.*, ¶ 5.) Plaintiffs' lack of diligence does not excuse their failure to comply with Arizona's Notice of Claim requirement.

Because Plaintiffs' state law claims against Officer Feddeler are barred, their state law claims against the City of Tempe, which are based on a *respondeat superior* theory, necessarily fail. *See Ford v. Revlon, Inc.*, 734 P.2d 580, 584 (Ariz. 1987) ("[W]hen the master's liability is based solely on the negligence of his servant, a judgment in favor of the servant is a judgment in favor of the master."). Further, Plaintiffs' state law claims against the City of Tempe fail because the Notice of Claim served upon the City of Tempe is deficient. Arizona law requires that a Notice of Claim "contain a specific amount for which the claim can be settled and the facts supporting that amount." A.R.S. § 12-821.01(A). Plaintiffs' Notice of Claim states that their claims may be settled for an

amount in "excess of $75,000[.]" (Doc. 58, ¶ 149.) The Arizona Supreme Court, however, has held that qualifying phrases such as "no less than" do not define a specific amount as required by the statute because "qualifying language makes it impossible to ascertain the precise amount for which the [public entity] could have settled [the] claim." *Deer Valley Unified School Dist. No. 97 v. Houser*, 152 P.3d 490, 493 (Ariz. 2007). Because Plaintiffs' did not serve the City of Tempe with a Notice of Claim that identified a specific amount for which their claims could be settled, their state law claims against the City are barred.

## CONCLUSION

For the foregoing reasons, qualified immunity shields Officer Feddeler from Plaintiffs' § 1983 claims, and Plaintiffs' state law claims are barred because they failed to comply with Arizona's Notice of Claim requirement.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Plaintiffs' Remaining Claims, (Doc. 57), is **GRANTED**. The Clerk shall enter judgment in favor of Defendants, terminate all remaining motions and deadlines, and close this case.

Dated this 18th day of November, 2016.

Douglas L. Rayes
United States District Judge