# EXHIBIT 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

### CIVIL MINUTES - GENERAL

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

Present: The Honorable   ANDREW J. GUILFORD

| Lisa Bredahl | Not Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

**Proceedings:**   [IN CHAMBERS] ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

On March 9, 2017, Huntington Beach police officers shot and killed Steven Schiltz. This case, brought by Schiltz's mother, Angela Hernandez, is about whether the City of Huntington Beach and the two police officers who shot Schiltz are liable for any wrongdoing under both state and federal laws. Defendants Huntington Beach, Officer Trevor Jackson, and Officer Casey Thomas now move for summary judgment in their favor on all Hernandez's claims.

The Court GRANTS Defendants' motion for summary judgment. (Dkt. No. 37.)

### 1. BACKGROUND

The shooting happened at the Huntington Beach Sports Complex. Schiltz had apparently been there to play softball. Schiltz began acting erratically. So someone called the police, reporting that Schiltz was hitting a tree with something that looked like a baseball bat. Officers Trevor Jackson and Casey Thomas arrived, noticing that Schiltz was holding what appeared to be a "sharpened down stick." (Jackson Depo., Dkt. No. 40-1 at 6.) Jackson told Thomas to get his police dog, and Jackson approached Schiltz, asking Schiltz to come talk to him. Schiltz refused and, still holding the stick, began running around a soccer arena filled with people. Schiltz jumped over a fence into the arena, falling hard on the concrete and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

### CIVIL MINUTES - GENERAL

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

apparently injuring himself, causing him to bleed. But still, he kept running with the stick. At least some of the people on the field chased Schiltz, swinging tree branches at him, but Officer Jackson told them to back off. Officer Jackson tried to get Schiltz to stop running, identifying himself as a police officer and drawing his gun. At one point, before Schiltz reached a nearby set of bleachers, Jackson told Schiltz to stop or he would shoot. Schiltz didn't comply.

Heather Cambron and her six-year-old son were sitting on a set of bleachers near the soccer field. Schiltz ran up the bleachers, just to the left of Cambron and her son. One witness says Schiltz tried to climb over the back of the bleachers, but stopped a few rows up from Cambron and her son, turning toward Officer Jackson. Defendants argue that Schiltz made a "threatening move" toward Cambron with the stick, while Plaintiff argues that Schiltz was "sitting or kneeling" and didn't make any threatening move. The parties agree that Officer Jackson shot Schiltz three to four times. After that, Jackson says Schiltz rose up again to strike Cambron and her son, so Jackson and Thomas simultaneously each fired one more shot at Schiltz, killing him.

Hernandez maintains the following nine claims: (1) excessive force under § 1983 against Jackson and Thomas; (2) denial of medical care under § 1983 against Jackson and Thomas; (3) interference with familial relationship under § 1983 against Jackson and Thomas; (4) ratification under § 1983 against Huntington Beach; (5) failure to train under § 1983 against Huntington Beach; (6) unconstitutional custom and policy under § 1983 against Huntington Beach; (7) battery and wrongful death against Huntington Beach, Jackson, and Thomas; (8) negligence and wrongful death against Huntington Beach, Jackson, and Thomas; and violation of the California Bane Act against Huntington Beach, Jackson, and Thomas.

### 2. EVIDENTIARY OBJECTIONS

Throughout their separate statements of fact, the parties frequently object to each other's evidence. (*See* Dkt. No. 46-1.) On a motion for summary judgment, parties must cite specific evidence to assert that a fact cannot be or is genuinely disputed. Fed. R. Civ. P. 56(c)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

Federal Rule of Civil Procedure 56(c)(4) requires that an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Parties "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But when the parties file numerous objections on a summary judgment motion, it's "often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *See Doe v. Starbucks, Inc.*, No. SACV 08-00582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec 18, 2009). Here, many of Hernandez's objections are boilerplate, and she often objects on relevance and foundation grounds without explaining why she believes Defendants wouldn't be able to present the evidence in an admissible form at trial. These objections are a waste.

At bottom, the Court doesn't rely on any inappropriate evidence, and addresses specific objections in its analysis as necessary.

## 3. STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the non-moving party, shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," based on the issue. *See id.* In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.

The burden is first on the moving party to show an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party satisfies this burden either by showing an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

absence of evidence to support the nonmoving party's case when the nonmoving party bears the burden of proof at trial, or by introducing enough evidence to entitle the moving party to a directed verdict when the moving party bears the burden of proof at trial. *See Celotex*, 477 U.S. at 325; *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). If the moving party satisfies this initial requirement, the burden then shifts to the nonmoving party to designate specific facts, supported by evidence, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. If the nonmovant "fails to properly address another party's assertions of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion [or] . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## 4. ANALYSIS

The Court addresses each of Hernandez's claims in turn.

### 3.1 Excessive Force

Defendants argue that Jackson and Thomas are entitled to summary judgment on Herandnez's excessive force claim. The Fourth Amendment of the United States Constitution protects people "against unreasonable searches and seizures." To determine whether a police officer violates this protection by using excessive force, courts look to an objective reasonableness standard that "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Whether there is an "immediate threat to the safety of the officers or others" is the "most important" factor in the reasonableness analysis. *Lopez v. Gelhaus*, 871 F.3d 998, 1005-06 (9th Cir. 2017) (internal quotation marks and citations omitted), *cert. denied*, No. 17-1354, 2018 WL 1509563 (June 25, 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

Defendants provide significant evidence showing that the officers acted reasonably, in defense of the safety of others. Officer Jackson says that before Schiltz ran into the bleachers, Jackson told Schiltz to stop repeatedly, at one point warning Schiltz "if you don't stop, I'm going to shoot you." (Jackson Depo., Dkt. No. 40-1 at 27:1–6; 28:4–8; 31:14–15.) Jackson further testified he thought the stick Schiltz was carrying was "between 18 inches and two feet" and that it "looked like a sharpened-down stick" "almost like a punji stick, the kind that were used in booby traps in Viet Nam." (Jackson Depo., Dkt. No. 40-1 at 51:10–14.) Jackson and a third-party witness, Sonia Martinez Perez, both testified that Schiltz made a purposeful move toward Cambron and her son just before Jackson fired the first set of shots, with Jackson describing it as a "slashing or stabbing-type motion." (*Id.* at 62:5–8.) Jackson and Thomas testified that Schiltz sat straight up after the first round and made another move toward Cambron and her son. (Jackson Depo., Dkt. No. 40-1 at 43:15–16–18; Thomas Depo., Dkt. No. 40-2 at 45:3–24.) All this tends to show that the officers acted reasonably to protect others after Schiltz refused to obey the officers' instructions, ran from the officers, and made a purposeful move toward people nearby with a sharpened stick. *See Blanford v. Sacramento Cty.*, 406 F.3d 1110, 1116 (9th Cir. 2005) ("We conclude that . . . . the deputies had cause to believe that [the suspect] posed a serious danger . . . because he failed to heed warnings or commands and was armed with an edged weapon that he refused to put down.").

The Court can certainly imagine a scenario where the shooting wasn't justified. But avoiding summary judgment requires more than imagination and argument, and Hernandez must describe specific facts, supported by evidence, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. She's failed to do so, instead trying to create disputes of material fact where none exists. For example, Hernandez argues that Schiltz may have been kneeling or sitting during the first set of shots. Even assuming that's true, Hernandez provides no convincing evidence to dispute that Schiltz made a purposeful move toward Cambron and her son with the raised stick. The closest she comes to doing so is citing a third-party witness's testimony that says Schiltz "didn't do anything with the stick" just before being shot. (Villalb Depo., Dkt. No. 43-5 at 47:22.) But in the same breath, that same witness explained Schiltz "just had [the stick] in the same threatening manner he had it before." (*Id.* at 47:23–24.) The witness also testified that she wasn't exactly sure about what had

Case 2:21-cv-02165-FLA-PD    Document 75-8    Filed 04/24/25    Page 7 of 14    Page ID
#:673
Case 8:17-cv-01257-AG-KES    Document 52    Filed 07/30/18    Page 6 of 13    Page ID #:1008

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

happened, saying, "I don't know what—what position he started. I don't know—I can't say that he did—I don't know what exactly he did, but he didn't do anything different than turn around. So however he was when he turned around, whether he was already raised, not raised, I don't know." (*Id.* at 48:7–12.) This testimony isn't sufficient to create a dispute of material fact, particularly considering the unequivocal evidence provided by Defendants.

At the hearing on this motion, Hernandez's counsel argued that the shooting was unreasonable based on Officer Jackson's testimony that it wouldn't be appropriate to shoot Schiltz if he never made a swinging or stabbing motion with the stick. This argument slightly distorts Jackson's testimony. Jackson testified that it wouldn't be appropriate, in his mind, to shoot if Schiltz if "he had not made a threatening move towards" Cambron and her son. (Jackson Depo., Dkt. No. 43-2 at 68:25, 69:1–18.) Jackson was responding to a hypothetical about whether it would be appropriate to shoot if Schiltz "never tried to swing or stab or *make a move* at the mother or the child." (*Id.* at 68:25, 69:1 (emphasis added).) This testimony doesn't help Hernandez establish unreasonableness here, particularly considering the lack of evidence to show that Schiltz never made a purposeful move toward Cambron and her son, as discussed.

Similarly, Hernandez argues that Officer Jackson didn't *actually* know if the stick was sharpened down. But this argument carries little weight. The reasonableness of Jackson's actions must be viewed from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Blanford*, 406 F.3d at 1116 (quoting *Graham v. M.S. Connor*, 490 U.S. 386, 396 (1989)). Viewed through that lens, Hernandez doesn't provide any evidence to dispute the reasonableness of Jackson's real-time perception of the stick as a threat. Oddly enough, most of the concrete information provided about the stick comes from Jackson himself. (Jackson Depo., Dkt. No. 40-1 at 26:16–17, 31:8–10, 51:10–14.) Hernandez didn't provide any other evidence about the stick—evidence maybe suggesting that it wasn't a threat to anyone's safety. Indeed, neither side provided the Court with a picture of the stick.

Hernandez also contends that the officers' second set of shots was unjustified because Schiltz didn't get back up after the first shots, meaning he was no longer a threat. But her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

evidence on this point is very weak, a single sentence from a deposition of a woman who said, "I–I don't know . . . I don't know that he was able to get up or down, I mean he didn't go anywhere." (Villalb Depo., Dkt. No. 43-5 at 41.) This uncertain testimony isn't enough to create a dispute of material fact, particularly considering the evidence from multiple other witnesses that Schiltz didn't drop the stick and even made a second move toward Cambron and her son after being shot.

Even if there is any uncertainty about the reasonableness of the officers' conduct in this situation, they are insulated from liability here by the doctrine of qualified immunity—the judicial creation that assumes police officers read legal opinions. "Qualified immunity gives government official breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal citations and quotation marks omitted). Under the qualified immunity analysis, courts look to determine whether legal precedent written before the shooting put the officers on notice that "using deadly force in the particular circumstances would violate [the victim's] Fourth Amendment rights." *Blanford*, 406 F.3d at 1119. Hernandez points to no case that would have sufficiently put Jackson and Thomas on notice that they should not have shot Schiltz when he was carrying a sharp stick, running away from the officers, ignoring commands to drop the stick, ignoring warnings that the officers would shoot, and making a purposeful move with the stick toward people nearby.

The Court concludes that summary judgment in Thomas and Jackson's favor on Hernandez's excessive force claim is appropriate.

### 3.2 Battery and Bane Act Violations

Defendants argue that Hernandez's state law claims for battery and violations of California's Bane Act also fail. Both sides agree that these claims each, at least in part, rely on a successful showing of excessive force. (Mot., Dkt. No. 37 at 32–33; Opp'n, Dkt. No. 43 at 20; Reply, Dkt. No. 46 at 14–15.) Because the Court concludes that Hernandez cannot show that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

### CIVIL MINUTES - GENERAL

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

officers used excessive force, summary judgment on Hernandez's battery and Bane Act claims is also appropriate.

### 3.4   Negligence

Defendants argue that Hernandez's state law negligence claim also fails. Hernandez must show that the officers owed her a duty, that they breached that duty, and that their breach proximately caused the resulting injury. *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 629 (2013). In the use-of-force context, "preshooting conduct is only relevant . . . to the extent it shows, as part of the totality of the circumstances, that the shooting itself was negligent." *See Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 639 (2013). Hernandez's negligence claim is evaluated by considering the "reasonableness of an officer's conduct . . . in light of the totality of the circumstances"—a standard very similar to the Fourth Amendment analysis. *Hayes*, 57 Cal. 4th at 629 (internal citations omitted). Consequently, it's unclear whether Hernandez's negligence claim can survive considering the Court previous conclusion that the officers acted reasonably under the circumstances.

Focusing more on the officers' preshooting conduct, Hernandez argues that the scope of negligence liability in excessive force cases is broader than liability for constitutional violations. (Opp'n, Dkt. No. 43 at 20.) She argues:

> Jackson and Thomas engaged in negligent tactics prior to the shooting, including: (1) failing to give a warning that deadly force would be used; (2) failing to give adequate commands to Mr. Schiltz; (3) failing to give directives to Ms. Cambron and her son or to step in between Ms. Cambron and her son, if that were a concern; (4) failing to employ less-lethal options such as Tasers, pepper spray, or the police dog; (5) failing to plan and use the "cover-officer, contact-officer" approach when they arrived on scene; [and] (6) failing to recognize Mr. Schiltz' mental

UNITED STATES DISTRICT COURT  JS - 6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

illness and failing to deescalate the situation by employing tactics to address a mentally ill individual.

(Opp'n, Dkt. No. 43 at 21.) Hernandez cites no specific evidence supporting the notion that these measures would be reasonable under the circumstances. Further, the undisputed facts directly contradict most of these points, especially because Officer Jackson asked Schiltz to stop running and come talk to him and, before Schiltz entered the bleachers, told Schiltz to stop or he was going to shoot. (*See, e.g.*, Uncontroverted Fact Nos. 13–14, 21–22, 25, 33.)

Although she doesn't mention it anywhere in her brief, Hernandez did file with her opposition a declaration by Roger Clark, who says he is an "expert specializing in the procedures of police practices and proper police tactics, including proper procedures for the detention and arrest of individuals and the type and degree of force, if any, appropriate under different circumstances." (Clark Decl., Dkt. No. 44 at ¶ 1.) Clark's declaration is largely a recitation of Hernandez's version of the facts of this case along with conclusions about whether the officers' actions were reasonable. Specifically, Clark says "Under the facts of this case, it would have been feasible for the officers to use the O/C spray, Tasers, or the canine if necessary" and that under "the officers could have stepped in between Ms. Cabron and Mr. Schiltz, or told Ms. Cambron to move, if that was a concern, and then used less-lethal options against Mr. Schiltz if necessary." (Clark Decl., Dkt. No. 44 at ¶¶ 25–26.) Clark also opines that "Officer Jackson and Officer Thomas engaged in negligent pre-shooting tactics in this case, including failing to plan and use the 'cover officer-contact officer' tactical approach." (*Id.* at ¶ 29.)

Defendants object to Clark's declaration. (Objection, Dkt. No. 46-2.) They argue that Clark "lacks any expertise" on "the suitability of less lethal force options" and that he improperly opines on witnesses' credibility and provides improper legal conclusions. (*Id.* at 1.) The Court agrees that Hernandez hasn't sufficiently qualified Clark as an expert in these non-lethal tactics. Under Federal Rule of Evidence 702, an expert qualified "by knowledge, skill, experience, training, or education may testify in the form of an opinion" only if the expert's specialized knowledge will help the trier of fact resolve factual disputes, the testimony is based on sufficient facts, the testimony is the product of reliable principles and methods, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

### CIVIL MINUTES - GENERAL

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

the expert has reliably applied the principles and methods to the facts of this case. Beyond his bare conclusions about the feasability of the non-lethal tactics, Clark provided no application of his expertise to the facts of this case to explain why he believed those other measures could reasonably be used under the circumstances of the case. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993) (Rule 702's "'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility"). Accordingly, even if he were appropriately qualified as an expert, his opinion isn't helpful to understanding this case. At least one other court has come to similar conclusions about Clark's expert reports. *See Colbert v. Cty. of Kern*, No. 1:13-cv-01589-JLT, 2015 WL 8214204, at *2 (E.D. Cal. 2015) (prohibiting Clark from testifying about whether "using the taser in the circumstances confronting [the officer] was excessive or unreasonable or the like").

Put simply, Hernandez hasn't provided sufficient evidence to show that the officers violated any applicable duty of care, so summary judgment in Defendants' favor on the negligence claim is appropriate.

### 3.3  Denial of Medical Care

Defendants argue that Jackson and Thomas provided Schiltz appropriate medical care under the circumstances. The Ninth Circuit has held that "a police officer who promptly summons the necessary medical assistance has acted reasonably for the purposes of the Forth Amendment." *Tatum v. San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006). Defendants provide undisputed evidence that "Thomas immediately radioed to stage medics after he fired his weapon." (Mot., Dkt. No. 37 at 23; Defendants' Statement of Uncontroverted Fact No. 96, Dkt. No. 46-1.) They also argue that there "is no evidence that Thomas or Jackson could have done anything further" to help Schiltz since he "had been shot in the head." (*Id.*) Perhaps recognizing the strength of these arguments, Hernandez didn't address her medical care claim in her brief or provide any evidence to support that claim.

The Court concludes that summary judgment in Thomas and Jackson's favor on that claim is appropriate.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

### 3.4  Interference with Familial Relationship

Defendants argue that Hernandez's interference with familial relationship claim fails. Remember, Hernandez filed this case on Schiltz's behalf as his mother. Parents "have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "Official conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process" under the Fourteenth Amendment. *Id.*

Courts apply one of two tests to decide whether certain conduct sufficiently "shocks the conscience." On the one hand, where "actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." *Id.* "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.*

The Court concludes that the more deferential purpose-to-harm standard applies in this case. The parties agree that somewhere between 3 and 20 seconds elapsed from the moment Schiltz entered the bleachers to the moment he was first shot, with another 3 to 15 seconds passing before the officers shot again. (Statement of Uncontroverted Fact Nos. 62, 82, 85, Dkt. No. 46-1.) All told, that's roughly 35 seconds for the two officers to assess the situation and decide whether to shoot. Under the circumstances presented here, even making all justifiable inferences in Hernandez's favor, actual deliberation wasn't practical in that time frame—the officers made a snap judgment. *See Wilkinson*, 610 F.3d at 554.

Focusing then on the purpose-to-harm standard, Hernandez hasn't provided any evidence that either Thomas or Jackson intended to harm Schiltz separate from a legitimate law enforcement objective. The shooting itself, without more, isn't enough to show that intent. *See Wilkinson*, 610 F.3d at 554 ("[N]o intent to harm separate from a legitimate law enforcement objective is evidenced by the mere fact that [the officer] shot [the suspect.]").

In short, Hernandez's Fourteenth Amendment claim fails.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
|---|---|---|---|
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

### 3.5   Huntington Beach's Liability

Defendants argue that Hernandez's claims against Huntington Beach all fail. In certain circumstances, a government entity may be liable for injuries caused by its employees. *Monell v. Dept. of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Hernandez argues that Huntington Beach is liable here for its police officers' actions because (1) it maintained a policy, practice, or custom leading to the purpotedly unconstitutional conduct; (2) it ratified the officers' conduct; and (3) it failed to sufficiently train the officers. (Opp'n, Dkt. No. 43 at 22.)

Hernandez offers no evidence to support these theories. She hasn't identified any "deliberate policy, custom, or practice that was the 'moving force' behind" the alleged constitutional violation. *Galen v. Cty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell*, 436 U.S. at 694–95.) Similarly, she provides no evidence of "affirmative or deliberate conduct" by anyone in the police department who might have "ratified" the officers' conduct. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). Lastly, Hernandez hasn't identified how Thomas and Jackson's training was deficient or how that deficiency caused the purported constitutional deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 379 (1989) (failure to train requires connection between "deficiency in training" and "the ultimate injury"). To the contrary, Hernandez's own statement of facts tends to show that Thomas and Jackson did receive adequate training. For example, she says "Officer Jackson was trained that deadly force can only be used in an immediate defense of life situation" and that "Officer Jackson is also trained that he cannot shoot someone because he sees a stick in that person's hands." (*See* Plaintiff's Additional Fact Nos. 179–85.)

Summary judgment is appropriate on Hernandez's *Monell* claims.

### 3.6   Survival Damages and Punitive Damages

Defendants argue both that Hernandez isn't entitled to survival damages (because she purportedly failed to file an appropriate declaration) and isn't entitled to punitive damages (because there is no evidence the officers acted maliciously, oppressively, or recklessly).

|  | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | | JS - 6 |
|---|---|---|---|
| | **CIVIL MINUTES - GENERAL** | | |
| Case No. | SACV 17-01257 AG (KESx) | Date | July 30, 2018 |
| Title | ANGELA HERNANDEZ v. CITY OF HUNTINGTON BEACH ET AL. | | |

On the survival damages point, Hernandez points out that she filed the required declaration with her complaint. (Opp'n, Dkt. No. 43 at 23.) After that, Defendants didn't press this issue any further, so the Court won't either.

On the punitive damages issue, Defendants argue that Hernandez doesn't have any evidence to show that the "officers' actions were malicious, oppressive, or in reckless disregard of" Schiltz's rights. (Mot., Dkt. No. 37 at 34.) Hernandez argues that "a jury could find that the officers acted with 'reckless disregard' to Mr. Schiltz' right to be free from excessive force when they shot Mr. Schiltz with complete indifference to his safety—the officers did not even give Mr. Schiltz a warning that they were going to shoot him." (Opp'n, Dkt. No. 43 at 25.) This argument isn't convincing, mostly because it's undisputed that Jackson warned Schiltz that he would shoot if Schiltz didn't stop running with the stick. Moreover, because summary judgment is appropriate on all Plaintiffs' claims for relief, she can't pursue punitive damages anyway.

## 4. DISPOSITION

The Court GRANTS Defendants' motion for summary judgment. (Dkt. No. 46.) The Court will enter a simple judgment.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |