EXHIBIT 16

1

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)

2
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)

3
msincich@galipolaw.com
21800 Burbank Blvd., Suite 310

4
Woodland Hills, CA 91367
Tel:   (818) 347-3333

5
Fax:   (818) 347-4118

6
*Attorneys for Plaintiffs*

7

8

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

9

10
A.B., a minor, individually and as
successor-in-interest to Yahir Brito,

11
deceased, by and through his guardian *ad
litem*, Vaneli Alonso; DANIEL BRITO

12
SAAVEDRA, individually; CARMELA
LUCERO ORTEGA, individually; JOEL

13
BRITO, individually; ROSA BRITO,
individually; LLUVIA BRITO,

14
individually; YARUMI BRITO,

15
individually; IVAN BRITO, individually;
JUAN MOLINA, individually; and

16
JENNIFER AVALOS, individually,

17

18
Plaintiffs,

19
vs.

20

21
CITY OF SANTA ANA, a municipality;
TYLER LIGGETT, an individual; IVAN

22
VERA, an individual; and DOES 1
through 10, inclusive,

23

24
Defendants.

25

26

27

28

Case No.:  8:18-cv-1553

**COMPLAINT FOR DAMAGES**

1. Unreasonable Search and Seizure –
   Excessive Force – Violation of the
   Fourth Amendment (42 U.S.C.
   §1983)
2. Unreasonable Search and Seizure –
   Denial of Medical Care – Violation of
   the Fourth Amendment (42 U.S.C.
   §1983)
3. Unlawful Interference with Familial
   Relations in Violation of the
   Fourteenth Amendment Substantive
   Due Process Clause (42 U.S.C.
   §1983)
4. Municipal Liability –
   Unconstitutional Custom, Practice, or
   Policy (42 U.S.C. §1983)
5. Municipal Liability – Ratification (42
   U.S.C. §1983)
6. Municipal Liability – Failure to Train
   (42 U.S.C. §1983)
7. Battery (Wrongful Death)
8. Negligence (including Negligent
   Infliction of Emotional Distress;
   Negligent Training; Negligent Pre and
   Post-Shooting Tactics) (Wrongful
   Death)
9. Violation of Civil Rights – Bane Act
   (Cal. Civil Code § 52.1, Cal. Const.)

**DEMAND FOR JURY TRIAL**

- 1 -

## COMPLAINT FOR DAMAGES

Plaintiffs A.B., a minor, by and through his guardian *ad litem*, Vaneli Alonso, DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, LLUVIA BRITO, YARUMI BRITO, IVAN BRITO, JUAN MOLINA, and JENNIFER AVALOS for their complaint against Defendants CITY OF SANTA ANA, Officer TYLER LIGGETT, Officer IVAN VERA, and DOES 1-10 inclusive, hereby allege as follows:

## INTRODUCTION

1.    This is a civil rights lawsuit, in which Plaintiffs seek damages arising from the fatal July 21, 2017 shooting of Yahir Brito by City of Santa Ana Police Officers.  Plaintiffs seek compensatory damages, punitive damages, attorneys' fees, and costs from defendants for violating various rights guaranteed to the decedent and to Plaintiffs by the Bill of Rights, the United States Constitution, the California Constitution, and the laws of the State of California.

## PARTIES

2.    At all relevant times, decedent Yahir Brito ("DECEDENT" or "MR. BRITO") was an individual residing in City of Santa Ana, California.

3.    Plaintiff A.B., by and through his guardian *ad litem*, Vaneli Alonso, is the minor child of Mr. Brito.  At all relevant times, A.B. resided in the City of Santa Ana, California.  A.B. sues in his individual capacity for wrongful death damages and in a representative capacity as successor in interest to Mr. Brito.  In his individual capacity, A.B. seeks wrongful death damages under federal and state law for violations of his rights.  In his representative capacity, A.B. seeks survival damages under federal and state law for violations of his father's rights.

4.    Plaintiff DANIEL BRITO SAAVEDRA is the natural father of Mr. Brito. At all relevant times, DANIEL BRITO SAAVEDRA resided in the City of Santa Ana, California.  DANIEL BRITO SAAVEDRA sues in his individual capacity for personal

damages, and wrongful death damages.  In his individual capacity, DANIEL BRITO SAAVEDRA seeks wrongful death damages under federal and state law for violations of his rights.  DANIEL BRITO SAAVEDRA also seeks damages on his own behalf arising out of the Defendant's negligence and use of unreasonable deadly force against his son, which DANIEL BRITO SAAVEDRA observed and which caused his son's death.

5.    Plaintiff CARMELA LUCERO ORTEGA is the natural mother of Mr. Brito.  At all relevant times, CARMELA LUCERO ORTEGA resided in the City of Santa Ana, California.  CARMELA LUCERO ORTEGA sues in her individual capacity for personal damages, and wrongful death damages.  In her individual capacity, CARMELA LUCERO ORTEGA seeks wrongful death damages under federal and state law for violations of her rights.  CARMELA LUCERO ORTEGA also seeks damages on her own behalf arising out of the Defendants' negligence and use of unreasonable deadly force against her son, which CARMELA LUCERO ORTEGA observed and which caused her son's death.

6.    Plaintiff JOEL BRITO is the brother of Mr. Brito.  At all relevant times, JOEL BRITO resided in the City of Santa Ana, California.  JOEL BRITO sues in his individual capacity for personal damages, and wrongful death damages.  In his individual capacity, JOEL BRITO seeks wrongful death damages under federal and state law for violations of his rights.  JOEL BRITO also seeks damages on his own behalf arising out of the Defendants' negligence and use of unreasonable deadly force against his brother, which JOEL BRITO observed and which caused his brother's death.

7.    Plaintiff ROSA BRITO is the sister of Mr. Brito.  At all relevant times, ROSA BRITO resided in the City of Santa Ana, California.  ROSA BRITO sues in her individual capacity for personal damages, and wrongful death damages.  In her individual capacity, ROSA BRITO seeks wrongful death damages under federal and

state law for violations of her rights.  ROSA BRITO also seeks damages on her own behalf arising out of the Defendants' negligence and use of unreasonable deadly force against her brother, which ROSA BRITO observed and which caused her brother's death.

8.      Plaintiff LLUVIA BRITO is the sister of Mr. Brito.  At all relevant times, LLUVIA BRITO resided in the City of Santa Ana, California.  LLUVIA BRITO sues in her individual capacity for personal damages, and wrongful death damages.  In her individual capacity, LLUVIA BRITO seeks wrongful death damages under federal and state law for violations of her rights.  LLUVIA BRITO also seeks damages on her own behalf arising out of the Defendants' negligence and use of unreasonable deadly force against her brother, which LLUVIA BRITO observed and which caused her brother's death.

9.      Plaintiff YARUMI BRITO is the sister of Mr. Brito.  At all relevant times, YARUMI BRITO resided in the City of Santa Ana, California.  YARUMI BRITO sues in her individual capacity for personal damages, and wrongful death damages.  In her individual capacity, YARUMI BRITO seeks wrongful death damages under federal and state law for violations of her rights.  YARUMI BRITO also seeks damages on his own behalf arising out of the Defendants' negligence and use of unreasonable deadly force against her brother, which YARUMI BRITO observed and which caused her brother's death.

10.      Plaintiff IVAN BRITO is the bother of Mr. Brito.  At all relevant times, IVAN BRITO resided in the City of Santa Ana, California.  IVAN BRITO sues in his individual capacity for personal damages, and wrongful death damages.  In his individual capacity, IVAN BRITO seeks wrongful death damages under federal and state law for violations of her rights.  IVAN BRITO also seeks damages on his own behalf arising out of the Defendants' negligence and use of unreasonable deadly force

against his brother, which IVAN BRITO observed and which caused his brother's death.

11.    Plaintiff JUAN MOLINA is the nephew of Mr. Brito.  At all relevant times, JUAN MOLINA resided with Mr. Brito in the City of Santa Ana, California.  JUAN MOLINA sues in his individual capacity for personal damages, and wrongful death damages.  In his individual capacity, JUAN MOLINA seeks wrongful death damages under federal and state law for violations of his rights.  JUAN MOLINA also seeks damages on his own behalf arising out of the Defendants' negligence and use of unreasonable deadly force against his uncle, which JUAN MOLINA observed and which caused his uncle's death.

12.    Plaintiff JENNIFER AVALOS is the sister-in-law of Mr. Brito.  At all relevant times, JENNIFER AVALOS resided with Mr. Brito in the City of Santa Ana, California.  JENNIFER AVALOS sues in her individual capacity for personal damages, and wrongful death damages.  In her individual capacity, JENNIFER AVALOS seeks wrongful death damages under federal and state law for violations of her rights.  JENNIFER AVALOS also seeks damages on his own behalf arising out of the Defendants' negligence and use of unreasonable deadly force against her brother-in-law, which JENNIFER AVALOS observed and which caused her brother-in-law's death.

13.    At all relevant times, Defendant CITY OF SANTA ANA ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California.  At all relevant times, CITY was the employer of DOES 1-10.  The individual officer defendants and DOES 1-10 are sued in their individual capacities for damages only.  As set forth below, Plaintiffs allege that the CITY is directly liable for compensatory damages under federal law pursuant to *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) and its progeny.  Plaintiffs allege that the CITY is vicariously liable for compensatory damages under Plaintiffs' state law claims, given

Plaintiffs' allegation that the officers who committed the acts and omissions complained of herein were acting in the course and scope of their employment at the time that the acts and omissions occurred.  Plaintiffs make no claim for punitive damages against the CITY.

14.    At all relevant times, Defendant TYLER LIGGETT was a duly appointed CITY Police Officer and/or an employee or agent of CITY, subject to oversight and supervision by CITY's elected and non-elected officials.  At all relevant times, TYLER LIGGETT acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY OF SANTA ANA, the CITY OF SANTA ANA POLICE DEPARTMENT, and under the color of the statutes and regulations of the State of California.  At all relevant times, TYLER LIGGETT acted within the course and scope of his employment as a CITY of Santa Ana police officer.  Plaintiffs are informed and thereon believe that TYLER LIGGETT is and was at all relevant times a resident of this judicial district.

15.    At all relevant times, Defendant IVAN VERA was a duly appointed CITY Police Officer and/or an employee or agent of CITY, subject to oversight and supervision by CITY's elected and non-elected officials.  At all relevant times, IVAN VERA acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY OF SANTA ANA, the CITY OF SANTA ANA POLICE DEPARTMENT, and under the color of the statutes and regulations of the State of California.  At all relevant times, IVAN VERA acted within the course and scope of his employment as a CITY of Santa Ana police officer.  Plaintiffs are informed and thereon believe that IVAN VERA is and was at all relevant times a resident of this judicial district.

16.    At all relevant times, Defendants DOES 1-10 were duly appointed CITY Police Officers and/or employees or agents of CITY, subject to oversight and supervision by CITY's elected and non-elected officials and/or were managerial,

supervisory or policy-making officials of the CITY of SANTA ANA Police Department.  At all relevant times, DOES 1-10 acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY OF SANTA ANA, the CITY OF SANTA ANA POLICE DEPARTMENT, and under the color of the statutes and regulations of the State of California.

17.    The true names of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs at this time, who therefore sue these Defendants by such fictitious names.  Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained.  Each of the fictitious named Defendants is responsible in some manner for the conduct and liabilities alleged herein.

18.    In committing the acts and omissions hereinafter described, Defendants DOES 1-10 were acting on the implied and actual permission and consent of CITY.  In committing the acts and omissions hereinafter described, Defendants DOES 1-10 were acting in the course and scope of their employment as CITY OF SANTA ANA Police Officers.

19.    At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every Defendant.

20.    Pursuant to Cal. Govt. Code § 815.2(a), CITY is vicariously liable for the nonfeasance and malfeasance of Defendants LIGGETT, VERA, and DOES 1-10 as alleged by Plaintiffs' state law claims.  ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). Defendants LIGGETT, VERA, and DOES 1-10 are liable for their nonfeasance and

malfeasance pursuant to Cal. Civ. Code § 820(a).  CITY is also liable pursuant to Cal. Govt. Code § 815.6.

21.     On January 16, 2018, Plaintiffs filed a timely claims for damages with CITY pursuant to applicable sections of the California Government Code (sections 910 - 913.2).

22.     Plaintiffs' claims was never formally rejected by CITY.

## JURISDICTION AND VENUE

23.     This civil action is brought for the redress of alleged deprivations of rights under the laws of the State of California and of constitutional rights protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1334, and 1367.

24.     Venue is proper in this Court under 28 U.S.C. §1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the City of Santa Ana, County of Orange, California.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

25.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 24 of this Complaint with the same force and effect as if fully set forth herein.

26.     The incident upon which this action is based occurred in the early morning hours on July 21, 2017, at 2429 South Olive Street, in Santa Ana, California.

27.     At the time of this incident, Decedent, Yahir Brito ("Mr. Brito") was a 24 year-old Hispanic male who was a father, brother and son.

28.     At or around 3:30 a.m., Mr. Brito's sister call 911 to request assistance for her brother, Mr. Brito, because of his unusual behavior.

29.     JOEL BRITO, ROSA BRITO, and DANIEL BRITO SAAVEDRA were waiting outside of their family residence when CITY police officers arrived.  Two

CITY police units stopped on the street and Defendants LIGGETT, VERA exited their police vehicles.

30.    Mr. Brito exited the house and walked towards the front patio and stopped in the grassy area of the yard.

31.    LLUVIA BRITO, YARUMI BRITO, IVAN BRITO, JUAN MOLINA, and JENNIFER AVALOS were standing outside the front door of the residence watching the incident.  CARMELA LUCERO ORTEGA was watching from within the house.

32.    LIGGETT and VERA were standing on the outside of the fence surrounding the residence.  LIGGETT drew and pointed his gun at Mr. Brito.  VERA drew and pointed his TASER at Mr. Brito.  LIGGETT and VERA were equipped with and used tactical lights to illuminate the situation.

33.    JOEL BRITO jumped in between of Mr. Brito and the officers, and pled with the officers, "Don't shoot, don't shoot."

34.    VERA tased Mr. Brito, and LIGGETT shot and killed Mr. Brito. LIGGETT and VERA issued no commands and gave no warnings before VERA tased Mr. Brito, and LIGGETT shot and killed Mr. Brito, despite it being feasible to do so. LIGGETT and VERA made no efforts to de-escalate the situation at any time prior to their use of force.

35.    Mr. Brito was shot with at least three .40 caliber hollow point bullets by the CITY officers, which ultimately led to his death.

36.    Upon information and belief, at all times prior to the deployment of the TASER and the multiple gunshots fired at Mr. Brito: Mr. Brito had not committed any crime; Defendants LIGGETT and VERA had never seen Mr. Brito before and had no information about him; Defendants LIGGETT and VERA had no information that any crime had been committed; Defendants LIGGETT and VERA had no information that anyone was injured; Mr. Brito never verbally threatened Defendants LIGGETT and

VERA; Defendants LIGGETT and VERA had no information that Mr. Brito ever verbally threatened anyone else; Defendants LIGGETT and VERA never heard Mr. Brito say anything; Mr. Brito never attempted to harm either Defendants LIGGETT and VERA or anyone else while in the front yard; Mr. Brito's arms were down by his sides when the Defendants used force against him; Mr. Brito never lunged at anyone prior to the Defendants using force against him; Mr. Brito never charged at anyone prior to the Defendants using force against him; Mr. Brito never raised an object over his head or made any motions toward anyone with a weapon; Mr. Brito never took any threatening movements toward anyone; Mr. Brito's facial expressions and demeanor were not threatening; and Mr. Brito was stopped in the grass over 15 feet away from the Defendant officers.

37.   Upon information and belief, at all times prior to the deployment of the TASER and the multiple gunshots fired at Mr. Brito: Defendants LIGGETT and VERA were on the other side of the property fence; Defendants LIGGETT and VERA were not at risk of imminent death or serious bodily injury; no other person was at risk of imminent death of serious bodily injury; Defendants LIGGETT and VERA had time to issue commands to Mr. Brito; Defendants LIGGETT and VERA knew or should have known that they needed to issue commands in Spanish in order for Mr. Brito to understand them; Defendants LIGGETT and VERA had time to allow Mr. Brito to comply with commands if they were given; Defendants LIGGETT and VERA were armed with less-lethal force options; it was feasible for Defendants LIGGETT and VERA to utilize those less-lethal force options; and Defendants LIGGETT and VERA failed to exhaust all reasonable less-lethal force options.

38.   Upon information and belief, at all times prior to the deployment of the TASER and the multiple gunshots fired at Mr. Brito: Defendants LIGGETT and VERA knew that Plaintiffs DANIEL BRITO SAAVEDRA, CARMELA LUCERO

ORTEGA, JOEL BRITO, ROSA BRITO, LLUVIA BRITO, YARUMI BRITO, IVAN BRITO, JUAN MOLINA, and JENNIFER AVALOS were watching the incident.

39. Mr. Brito fell to the ground when he was tased and shot multiple times. Despite his wounds, Defendants LIGGETT and VERA tased Mr. Brito again, rolled him over onto his stomach and handcuffed his wrists behind his back. Defendants LIGGETT and VERA unreasonably failed to provide and delayed medical attention for Mr. Brito. Mr. Brito eventually died after being transported from the scene to a hospital. Plaintiffs are informed and thereon believe that Mr. Brito suffered great physical and emotional pain while he lay unattended to in the dirt until he died.

40. Plaintiffs A.B., DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, LLUVIA BRITO, YARUMI BRITO, IVAN BRITO, JUAN MOLINA, and JENNIFER AVALOS were not informed of Mr. Brito's death until over an hour later, after being interrogated about the incident.

41. DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, LLUVIA BRITO, YARUMI BRITO, IVAN BRITO, JUAN MOLINA, and JENNIFER AVALOS were all present and witnessed the unreasonable and excessive use of deadly force against their son, brother, and loved family member, by Defendants LIGGETT and VERA. JOEL BRITO, ROSA BRITO, CARMELA LUCERO ORTEGA and DANIEL BRITO SAAVEDRA also observed their son and brother on the ground, bleeding, expressing pain, and they watched and were aware that no medical care was being provided to Mr. Brito.

42. As a direct and proximate result of Defendants LIGGETT and VERA'S actions, omissions and misjudgment, Mr. Brito suffered severe and fatal injuries, physical and emotional pain up until the time of his death.

43. As a direct and proximate result of Defendants LIGGETT and VERA'S actions, omissions and misjudgment, which were perceived by Plaintiffs DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA

BRITO, LLUVIA BRITO, YARUMI BRITO, IVAN BRITO, JUAN MOLINA, and JENNIFER AVALOS, Plaintiffs were caused to suffer serious emotional distress including but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.  This emotional distress was not mild or brief, it was substantial and long lasting, such that no reasonable person in a civilized society should be expected to bear witness to it.

44.    As a direct and proximate result of Defendants LIGGETT and VERA'S actions, omissions and misjudgment, Plaintiffs in their individual capacities suffered the loss of their son, brother, and loved family member, including the loss of his financial support, gifts and benefits, funeral and burial expenses, household services and his love, companionship, comfort, care, assistance, protection, affection, society, moral support, training and guidance.

45.    Plaintiffs are informed and thereon believe and allege that Defendants agreed and conspired to justify and cover up the misconduct alleged herein by, among other things, preparing and filing false reports regarding the shooting incident that led to the death of Decedent and the injuries to Plaintiffs.  Plaintiffs are informed and thereon believe that Defendants LIGGETT and VERA made false statements that Mr. Brito posed a threat at the time of the shooting and that information was provided to them concerning Mr. Brito that they never, in fact, received.  Plaintiffs are also informed and thereon believe that Defendants LIGGETT and VERA omitted material information from their reports and/or statements concerning the circumstances known to them when they encountered Plaintiffs and Mr. Brito.

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

### FIRST CLAIM FOR RELIEF

**Fourth Amendment Unreasonable Seizure**

**Excessive Force (42 U.S.C. § 1983)**

(By Plaintiff A.B. against Defendants LIGGETT, VERA, and DOES 1-10)

46.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 45 of this Complaint with the same force and effect as if fully set forth herein.

47.     The Fourth Amendment to the United States Constitution guarantees all persons the right to be free from excessive force by peace officers.  42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

48.     On July 21, 2017, Defendants LIGGETT, VERA, and DOES 1-10 seized Mr. Brito when VERA tased Mr. Brito, and LIGGETT fired multiple gunshots at Mr. Brito, striking him in multiple places and eventually, killing him.  Within minutes of their arrival, Defendants LIGGETT, VERA, and DOES 1-10 tased, shot, and killed Mr. Brito.  Defendants LIGGETT, VERA, and DOES 1-10 issued no commands or warnings before they tased and shot Mr. Brito.  Defendants LIGGETT, VERA, and DOES 1-10 made no efforts to de-escalate the situation upon their arrival.

49.     Mr. Brito had not committed any crime; Defendants LIGGETT, VERA, and DOES 1-10 had never seen Mr. Brito before and had no information about him; Defendants LIGGETT, VERA, and DOES 1-10 had no information that any crime had been committed; Defendants LIGGETT, VERA, and DOES 1-10 had no information that anyone was injured; Mr. Brito never verbally threatened Defendants LIGGETT, VERA, and DOES 1-10; Defendants LIGGETT, VERA, and DOES 1-10 had no information that Mr. Brito ever verbally threatened anyone else; Defendants LIGGETT, VERA, and DOES 1-10 never heard Mr. Brito say anything; Mr. Brito never attempted to harm either Defendants LIGGETT, VERA, and DOES 1-10 or anyone else while in the front yard; Mr. Brito's arms were down by his sides when the Defendants used force against him; Mr. Brito never lunged at anyone prior to the

Defendants using force against him; Mr. Brito never charged at anyone prior to the Defendants using force against him; Mr. Brito never raised an object over his head or made any motions toward anyone with a weapon; Mr. Brito never took any threatening movements toward anyone; Mr. Brito's facial expressions and demeanor were not threatening; and Mr. Brito was stopped in the grass over 15 feet away from the Defendant officers.

50.    At all times prior to the deployment of the TASER and the multiple gunshots fired by Mr. Brito: Defendants LIGGETT, VERA, and DOES 1-10 were on the other side of the property fence; Defendants LIGGETT, VERA, and DOES 1-10 were not at risk of imminent death or serious bodily injury; no other person was at risk of imminent death of serious bodily injury; Defendants LIGGETT, VERA, and DOES 1-10 had time to issue commands to Mr. Brito; Defendants LIGGETT, VERA, and DOES 1-10 knew or should have known that they needed to issue commands in Spanish in order for Mr. Brito to understand them; Defendants LIGGETT, VERA, and DOES 1-10 had time to allow Mr. Brito to comply with commands if they were given; Defendants LIGGETT, VERA, and DOES 1-10 were armed with less-lethal force options; it was feasible for Defendants LIGGETT, VERA, and DOES 1-10 to utilize those less-lethal force options; and Defendants LIGGETT, VERA, and DOES 1-10 failed to exhaust all reasonable less-lethal force options.

51.    The use of force including deadly force by Defendants LIGGETT, VERA, and DOES 1-10 on July 21, 2017 violated Mr. Brito's right to be free from excessive force by peace officers, which is guaranteed to them by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment when they shot and killed him.

52.    Defendants LIGGETT, VERA, and DOES 1-10 were integral participants and failed to intervene with respect to the use of deadly force against Mr. Brito, despite the opportunity to do so.

53.     The conduct of Defendants LIGGETT, VERA, and DOES 1-10 was malicious, oppressive and in reckless disregard for the rights and safety of Mr. Brito (and of nearby bystanders) and warrants the imposition of exemplary and punitive damages as to Defendants LIGGETT, VERA, and DOES 1-10.

54.     This claim is made by Mr. Brito's successors-in-interest on his behalf for survival damages.  As a direct result of the excessive force used by Defendants LIGGETT, VERA, and DOES 1-10 against Mr. Brito, he experienced severe pain and suffering prior to his death and he lost his life for which he is entitled to recover damages.

55.     Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment Unreasonable Seizure

### Denial of Medical Care (42 U.S.C. § 1983)

(By Plaintiff A.B. against Defendants LIGGETT, VERA, and DOES 1-10)

56.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 55 of this Complaint with the same force and effect as if fully set forth herein.

57.     Pursuant to the Fourth Amendment to the United States Constitution, all law enforcement officers have a duty to provide medical care to persons who are injured while being apprehended and taken into custody.  This includes the duty to either administer medical care or ensure that medical care is promptly provided.  This also encompasses the requirement that peace officers may not delay an arrestee access to medical care without reason. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 233-234 (1983); *Arum v. Miller,* 331 F.Supp.2d 99, 111 (E.D.N.Y. 2004); *Freece v. Young*, 756 F. Supp. 699, 701 (W.D.N.Y. 1991).

58.     Statute 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

59.     Mr. Brito fell to the ground when he was tased and shot multiple times. Despite his wounds, Defendants LIGGETT, VERA, and DOES 1-10 rolled him over onto his stomach and handcuffed his wrists behind his back.  Defendants LIGGETT, VERA, and DOES 1-10 failed to provide and unreasonably delayed medical care to Mr. Brito.  Mr. Brito eventually died from the injuries Defendants LIGGETT, VERA, and DOES 1-10 caused.  Plaintiffs are informed and thereon believe that Mr. Brito suffered great physical and emotional pain while he lay unattended to on the ground and until he died.  Plaintiffs are further informed and thereon believe that the delay and or denial of medical care to Mr. Brito by Defendants LIGGETT, VERA, and DOES 1-10 contributed to Mr. Brito's pain and suffering and contributed to the worsening of his injuries, including his cause of death.

60.     Defendants LIGGETT, VERA. and DOES 1-10 were integral participants and failed to intervene with respect to the delay and denial of medical care to Mr. Brito, despite the opportunity to do so.

61.     The conduct of Defendants LIGGETT, VERA, and DOES 1-10 was malicious, oppressive and in reckless disregard for the rights and safety of Mr. Brito (and of nearby bystanders) and warrants the imposition of exemplary and punitive damages as to Defendants LIGGETT, VERA, and DOES 1-10.

62.     This claim is made by Mr. Brito's successors-in-interest on his behalf for survival damages.  As a direct result of the denial and delay of medical care to Mr. Brito, he experienced severe pain and suffering prior to his death and he lost his life for which he is entitled to recover damages.

63.     Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

/ / /

/ / /

/ / /

## **THIRD CLAIM FOR RELIEF**

### **Substantive Due Process (42 U.S.C. § 1983)**

(By all Plaintiffs in their individual capacities against Defendants LIGGETT, VERA, and DOES 1-10)

64.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 63 of this Complaint with the same force and effect as if fully set forth herein.

65.     The Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees *all* persons the right to be free from unlawful state interference with their familial relations.  42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (noting that substantive due process violations are actionable under § 1983).

66.     The United States Constitution protects all persons from interference with relationships such as "'those that attend the creation and sustenance of a family' and similar 'highly personal relationships.'"  *IDK, Inc. v. Clark County*, 836 F.2d 1185, 1193 (9th Cir. 1988), citing *Roberts v. United States Jaycees*, 468 U.S. 609, 618-19 (1988).  Specifically, the right to be free from unlawful state interference with the familial relationship enjoyed between parents and children is a protected liberty interest rooted in the due process clause of the Fourteenth Amendment.  *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991), citing *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986); *Kelson v. City of Springfield*, 767 F.2d 651, 653–55 (9th Cir. 1985); *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir.), cert. denied, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987).

67.     When Defendants LIGGETT, VERA, and DOES 1-10 arrived in response to a call for help, they deployed a TASER and fired multiple gunshots at Mr. Brito. Defendants LIGGETT, VERA, and DOES 1-10 issued no commands and gave Mr.

Brito no warning before they used force against him and took his life.  Mr. Brito committed no crime, did not threaten anyone, he did not attempt to harm anyone, his arms were down by his sides, was not moving, never lunged at anyone, never charged at anyone, never raised an object over his head or made any stabbing motions toward anyone, and never took any threatening steps toward anyone.  Defendants LIGGETT, VERA, and DOES 1-10 had no information that anyone was injured.  The use of force by Defendants LIGGETT, VERA, and DOES 1-10 without any warning under these circumstances was unreasonable, excessive under the circumstances, exhibited a deliberate indifference to and reckless disregard for to Mr. Brito and Plaintiffs' rights, and displayed a purpose to harm Mr. Brito unrelated to a legitimate law enforcement objective.  In so doing, the conduct of Defendants LIGGETT, VERA, and DOES 1-10 constitutes a violation of Plaintiffs' Fourteenth Amendment Substantive Due Process right to be free from unlawful state interference with their familial relationship with their father, son, brother, and loved family member.

68.    Defendants LIGGETT, VERA, and DOES 1-10 were each integral participants and/or failed to intervene with respect to the other officers' unlawful conduct, despite the opportunity to do so.

69.    The conduct of Defendants LIGGETT, VERA, and DOES 1-10 was malicious, oppressive and in reckless disregard for the rights and safety of Mr. Brito and Plaintiffs and warrants the imposition of exemplary and punitive damages as to the individual Defendants.

70.    As a direct result of the death of Mr. Brito, Plaintiffs have suffered the loss of Mr. Brito's love, care, comfort, society, companionship, assistance, protection, affection, moral support, financial support, and loss of services of DECEDENT.  All Plaintiffs seek wrongful death damages under this claim.

71.    Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability for Unconstitutional Custom or Policy

### (42 U.S.C. §1983)

(By all Plaintiffs against Defendant CITY of SANTA ANA)

72.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 71 of this Complaint with the same force and effect as if fully set forth herein.

73.    A municipality is liable for the constitutional deprivations of an individual where its officials or employees, acting under color of law, deprived a person of their particular rights under the constitution and where either: the officials or employees acted pursuant to an adopted policy, custom, or practice; the acts of a final policy maker deprived a person of their constitutional rights by knowing about and approving of an employees' acts or omissions; or the constitutional deprivations were a result of the municipality's failure to train its employees to handle the usual and recurring situations with which they must deal. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

74.    On and for some time prior to and after July 21, 2017 (and continuing to the present date), Defendant CITY deprived Plaintiffs, DECEDENT and other members of the public of their rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution by knowingly maintaining, enforcing and applying an official custom, policy, and practice of:

   a.    Employing and retaining CITY Police Officers, including Defendants LIGGETT, VERA, and DOES 1-10, who Defendant CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY Police Department policies concerning the use of deadly force and responding to calls for medical care;

b.      Inadequately supervising, training, controlling, assigning, and disciplining CITY Police Officers, including Defendants LIGGETT, VERA, and DOES 1-10, concerning the use of deadly force and responding to calls for medical care;

c.      Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by Defendants LIGGETT, VERA, and DOES 1-10, and other CITY police officers;

d.      Ratifying the misconduct of and unlawful uses of excessive force by CITY Officers, including Defendants LIGGETT, VERA, and DOES 1-10 and other CITY police officers (including but not limited to the misconduct and excessive force used by Defendants against Mr. Brito on July 21, 2017);

e.      Failing to discipline Defendants LIGGETT, VERA, and DOES 1-10 and other CITY Officers for conduct contrary to law and departmental policy (including, but not limited to the misconduct and excessive force used by Defendants against Mr. Brito on July 21, 2017 and the false statements and material omissions in the reports of Defendants LIGGETT, VERA, and DOES 1-10);

f.      Failing to re-train Defendants LIGGETT, VERA, and DOES 1-10 and other CITY Officers concerning the use of force and responding to calls for medical care despite the fact that complaints of excessive force and false statements have been filed against CITY Officers with the CITY, in the Superior Courts and in the District Courts;

g.      Failing to properly investigate claims of excessive force and false statements or reports by CITY Police Officers;

h.      Conspiring to give a false account of the incident to attempt to justify the use of excessive force;

i.      Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simple "code of silence," pursuant to which CITY police officers do not report other officers' errors, misconduct or crimes.  Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

j.      Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people; and

k.      By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects.  The policies, customs, and practices of CITY, were done with a deliberate indifference to individuals' safety and rights.

75.    Failing to adequately train, discipline, retrain, and investigate concerning allegations and incidents of excessive force by CITY Officers, in combination with CITY's ratification of said complaints and incidents, has given rise to a culture of impunity within the CITY of Santa Ana Police Department.  The CITY's actions and inactions have caused CITY Officers to disregard proper police procedures and the law concerning the use of force in the exercise of their authority as peace officers and during their day-to-day interactions with civilians.

76.    The CITY'S actions and inactions as described above were the moving force behind the use of excessive force against Mr. Brito by Defendants LIGGETT, VERA, and DOES 1-10 on July 21, 2017.

77.     By reason of the aforementioned policies and practices of Defendant CITY, Mr. Brito was severely injured and subjected to pain and suffering and lost his life for which he, by Plaintiffs as his successors in interest, is entitled to recover survival damages.

78.     Plaintiffs also seek wrongful death damages under this claim.

79.     Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

### FIFTH CLAIM FOR RELIEF

**Municipal Liability for Ratification**

**(42 U.S.C. §1983)**

(By all Plaintiffs against Defendant CITY of SANTA ANA)

80.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 79 of this Complaint with the same force and effect as if fully set forth herein.

81.     Defendants LIGGETT, VERA, and DOES 1-10 acted under color of law.

82.     The acts of Defendants LIGGETT, VERA, and DOES 1-10 deprived Mr. Brito and Plaintiffs of their particular rights under the United States Constitution.

83.     Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

84.     Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants LIGGETT, VERA, and DOES 1-10 ratified the individual Defendants' acts and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of the individual Defendants' acts.

85.     Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendants LIGGETT, VERA, and DOES 1-10 were "within policy."

86.     By reason of the aforementioned acts and omissions, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Mr. Brito, and will continue to be so deprived for the remainder of their natural lives.  The aforementioned acts and omissions also caused Mr. Brito's pain and suffering, loss of enjoyment of life, and death.

87.     Accordingly, Defendant CITY are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

88.     Plaintiffs bring this claim both individually and as successors-in-interest to Mr. Brito.  Plaintiffs seek survival damages, including for the nature and extent of Mr. Brito's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim.  Plaintiffs also seek attorney's fees.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability for Failure to Train

### (42 U.S.C. §1983)

(By all Plaintiffs against Defendant CITY of SANTA ANA)

89.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 88 of this Complaint with the same force and effect as if fully set forth herein.

90.     Defendants LIGGETT, VERA, and DOES 1-10 acted under color of law.

91.     The acts of Defendants LIGGETT, VERA, and DOES 1-10 deprived Mr. Brito and Plaintiffs of their particular rights under the United States Constitution.

92.     On information and belief, CITY failed to properly and adequately train LIGGETT, VERA, and DOES 1-10, including but not limited to, with regard to the use of physical force, less than lethal force, and lethal force; and with regard to the treatment of persons who are suspected of having some type of mental illness.

93.     The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal,

including the use of less than lethal and lethal force, and the treatment of persons who are suspected of having some type of mental illness.

94.    Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

95.    The failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiffs' rights by Defendants LIGGETT, VERA, and DOES 1-10; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injury.

96.    By reason of the aforementioned acts and omissions, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Mr. Brito, and will continue to be so deprived for the remainder of their natural lives.  The aforementioned acts and omissions also caused Mr. Brito's pain and suffering, loss of enjoyment of life, and death.

97.    Accordingly, Defendant CITY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

98.    Plaintiffs bring this claim both individually and as successors-in-interest to Mr. Brito.  Plaintiffs seek survival damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim.  Plaintiffs also seek attorney's fees.

## SEVENTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code §820 and California Common Law)

### (Wrongful Death)

(By Plaintiff A.B. against all Defendants)

99.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 98 of this Complaint with the same force and effect as if fully set forth herein.

100.    Defendants LIGGETT, VERA, and DOES 1-10, while working as CITY Police Officers and acting within the course and scope of their employment, intentionally shot Mr. Brito.  The shooting was a use of unreasonable force against Mr. Brito to which he did not consent.  As a result of the actions of Defendants LIGGETT, VERA, and DOES 1-10, Mr. Brito suffered severe pain and suffering and ultimately died from his injuries.

101.    As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, financial support, affection, training and guidance, and will continue to be so deprived for the remainder of their natural lives.  CITY is vicariously liable for the wrongful acts of the individual defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

102.    The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and DECEDENT, entitling plaintiffs, individually, to an award of exemplary and punitive damages.

103.    Plaintiff A.B. brings this claim both individually and as a successor-in-interest to Mr. Brito, and seeks both survival damages, including any economic losses of Mr. Brito, and wrongful death damages under this claim.

///
///
///

COMPLAINT FOR DAMAGES

## EIGHTH CLAIM FOR RELIEF

### Negligence (Cal. Govt. Code §820 and California Common Law)

### (Wrongful Death, Negligent Training, Negligent Tactics, and Negligent Infliction of Emotional Distress)

(By All Plaintiffs against all Defendants)

104.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 103 of this Complaint with the same force and effect as if fully set forth herein.

105.   The actions and inactions of Defendants LIGGETT, VERA, and DOES 1-10 were negligent and reckless, including, but not limited to:

    a.    the failure to properly and adequately assess the need to use force and deadly force against DECEDENT;

    b.    the negligent pre-shooting tactics and handling of the situation with DECEDENT;

    c.    the negligent manner in which information was misstated and omitted from police reports following the incident;

    d.    the failure to properly train and supervise employees, both professional and non-professional, including Defendants LIGGETT, VERA, and DOES 1-10;

    e.    the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT;

    f.    the negligent use of force against DECEDENT; and

    g.    the negligent manner in which Defendants LIGGETT, VERA, and DOES 1-10 delayed and or denied Mr. Brito access to medical care after their use of force against him.

106.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Brito was caused to suffer severe pain and suffering and ultimately died.  Also, as a direct and proximate result of Defendants' conduct as alleged above causing Mr. Brito's death, Plaintiffs have also been deprived of the life-long love, companionship, comfort, society, care, and financial support of Mr. Brito, and will continue to be so deprived for the remainder of their natural lives.

107.   Plaintiffs DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, LLUVIA BRITO, YARUMI BRITO, IVAN BRITO, JUAN MOLINA, and JENNIFER AVALOS were present on the scene and observed the tasing and shooting of their loved family member by Defendants LIGGETT, VERA, and DOES 1-10.  Plaintiffs were aware that the Defendant officers' use of force was the cause of Mr. Brito's harm, injury, loss, and death.  DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, LLUVIA BRITO, YARUMI BRITO, IVAN BRITO, JUAN MOLINA, and JENNIFER AVALOS also observed and or perceived Mr. Brito on the ground, bleeding, expressing pain, and they watched and were aware that no medical care was being provided to Mr. Brito.

108.   As a direct and proximate result of actions, omissions and misjudgment of Defendants LIGGETT, VERA, and DOES 1-10, which were perceived by Plaintiffs, Plaintiffs were caused and continue to suffer serious emotional distress including but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

109.   An ordinary reasonable person would not be able to cope with the emotional distress associated with watching police officers shoot and kill a family member in his own yard, without justification, after they were summoned for help.

110.   CITY is vicariously liable for the wrongful acts of Defendants LIGGETT, VERA, and DOES 1-10 inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

111.   Plaintiff A.B. brings this claim on his own behalf and seeks wrongful death and survival damages under state law.  Plaintiffs DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, LLUVIA BRITO, YARUMI BRITO, IVAN BRITO, JUAN MOLINA, and JENNIFER AVALOS also seek damages for negligent infliction of emotional distress under state law.

## NINTH CLAIM FOR RELIEF

### Violation of Cal. Civ. Code § 52.1 and California Common Law)

(Survival Claim by Plaintiff A.B. against all Defendants)

112.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 111 of this Complaint with the same force and effect as if fully set forth herein.

113.   The Bane Act, the California Constitution and California common law prohibit the use of excessive force by law enforcement.  California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims.  *See Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141, 144 (1995).  "[A] successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1."  *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive force—is [] within the protection of the Bane Act").

114.   Defendants LIGGETT, VERA, and DOES 1-10 violated Mr. Brito's Fourth Amendment rights to be free from unreasonable seizures when they used excessive and unreasonable force against him, killing him.

115.   Defendants LIGGETT, VERA, and DOES 1-10 violated Mr. Brito's Constitutional right to be free from excessive and unreasonable force by police officers.  Defendants LIGGETT, VERA, and DOES 1-10 intended to violate Mr. Brito's rights and/or acted with reckless disregard with regard to Mr. Brito's Constitutional rights.

116.   Mr. Brito was caused to suffer severe pain and suffering and ultimately died for which he, by Plaintiffs as his successors in interest, is entitled to recover survival damages.

117.   The conduct of Defendants LIGGETT, VERA, and DOES 1-10 was a substantial factor in causing the harm, losses, injuries, and damages of Mr. Brito.

118.   CITY is vicariously liable for the wrongful acts of Defendants LIGGETT, VERA, and DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

119.   The conduct of Defendants LIGGETT, VERA, and DOES 1-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Brito, entitling him to an award of exemplary and punitive damages.

120.   Plaintiff brings this claim both individually and as a successor-in-interest to Mr. Brito, and seeks survival damages under this claim, as well as costs and attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants CITY OF SANTA ANA and Defendants LIGGETT, VERA, and DOES 1-10, inclusive, as follows:

A.    For compensatory damages, including both survival damages and wrongful death damages under federal and state law in an amount to be proven at trial;

B.    For funeral and burial expenses and loss of financial support;

C.    Loss of life and loss of enjoyment of life;

D.    Conscious pain and suffering;

E.    For negligent infliction of emotional distress damages;

F.    For punitive damages against the individual defendants LIGGETT, VERA, and DOES 1-10 in an amount to be proven at trial;

G.    For interest;

H.    For reasonable costs of this suit and attorney's fees under state and federal law;

I.    For such further relief at law or equity as the Court or jury may deem just and appropriate.

Dated: August 30, 2018                    **LAW OFFICES OF DALE K. GALIPO**


                                          By:        */s/ Dale K. Galipo*
_____           _____
                                          Dale K. Galipo
                                          Marcel F. Sincich
                                          *Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES

1

## <u>DEMAND FOR JURY TRIAL</u>

2

3          Plaintiffs hereby demand a trial by jury.

4

Dated:  August 30, 2018                    **LAW OFFICES OF DALE K. GALIPO**

5

6

7                                        By:        */s/ Dale K. Galipo*
                                                _____
8                                        Dale K. Galipo
                                         Marcel F. Sincich
9                                        *Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES