EXHIBIT 17

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
Eric Valenzuela, Esq. (Bar No. 284500)
dalekgalipo@yahoo.com
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:   (818) 347-3333

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.B., a minor, by and through his guardian *ad litem*, Yaneli Alonso, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SANTA ANA, et al., <br><br> Defendants. | Case No. 8:18−cv−01553−DOC−ADS <br><br> [*Honorable David O. Carter*] <br><br> **UNOPPOSED PETITION FOR COMPROMISE OF THE CLAIMS OF A.B., A MINOR, BY AND THROUGH HIS GUARDIAN AD LITEM, YANELI ALONSO; MEMORANDUM OF POINTS AND AUTHORITIES: DECLARATION OF DALE K. GALIPO** <br><br> [Proposed Order; and Declaration of Dale K. Galipo *submitted concurrently herewith*] |

## PETITION FOR APPROVAL OF MINOR'S COMPROMISE

Counsel for Plaintiff A.B., a minor, by and through her Guardian Ad Litem, Yaneli Alonso, files this Petition to Compromise the Claim of the minor arising from the lawsuit for civil rights violations and wrongful death against the Defendants.  This Petition seeks authority of the Court to compromise the minor's claim, the use of the proceeds to reimburse counsel for costs expended and for

reasonable attorney's fees.  The following is a description of the breakdown submitted to the Court for approval:

| | |
|---|---|
| TOTAL SETTLEMENT: | $250,000.00 (which includes the claims of the five minor Plaintiffs A.B., J.A., L.B., I.B., and J.M. and the six adult Plaintiffs Daniel Brito Saavedra, Carmela Lucero Ortega, Joel Brito, Rosa Brito, Yarumi Brito, and Jennifer Avalos) |
| MINOR A.B.'s PORTION: | $90,000.00 (36% of total recovery) |
| MINOR J.A.'s PORTION: | $10,000.00 (4% of total recovery) |
| MINOR L.B.'s PORTION: | $10,000.00 (4% of total recovery) |
| MINOR I.B.'s PORTION: | $10,000.00 (4% of total recovery) |
| MINOR J.M.'s PORTION: | $10,000.00 (4% of total recovery) |
| DANIEL BRITO SAAVEDRA's PORTION | $10,000 (4% of total recovery) |
| CARMELA LUCERO ORTEGA'S PORTION | $50,000 (20% of total recovery) |
| JOEL BRITO'S PORTION | $30,000 (12% of total recovery |
| ROSA BRITO'S PORTION | $10,000 (4% of total recovery) |
| YARUMI BRITO'S PORTION | $10,000 (4% of total recovery) |
| JENNIFER AVELOS' PORTION | $10,000 (4% of total recovery) |
| TOTAL COSTS: | $9,787.84 |
| COSTS CHARGED TO MINOR A.B.: | $3,523.62 (36% of total costs) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COSTS CHARGED
TO MINOR J.A.:                    $391.51 (4% of total costs)

COSTS CHARGED
TO MINOR L.B.:                    $391.51 (4% of total costs)

COSTS CHARGED
TO MINOR I.B.:                    $391.51 (4% of total costs)

COSTS CHARGED
TO MINOR J.M..:                   $391.51 (4% of total costs)

COSTS CHARGED
TO DANIEL BRITO SAAVEDRA:  $391.51 (4% of total costs)

COSTS CHARGED
TO CARMELA LUCERO ORTEGA: $1,957.57 (20% of total costs)

COSTS CHARGED
TO JOEL BRITO:                    $1,174.54 (12% of total costs)

COSTS CHARGED
TO ROSA BRITO:                    $391.51 (4% of total costs)

COSTS CHARGED
TO YARUMI BRITO:                  $391.51 (4% of total costs)

COSTS CHARGED
TO JENNIFER AVELOS:               $391.51 (4% of total costs)

TOTAL ATTORNEY FEES
CHARGED TO MINOR A.B.:            $36,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO MINOR J.A.:            $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO MINOR L.B.:            $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO MINOR I.B.:         $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO MINOR J.M.:         $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
DANIEL BRITO SAAVEDRA:         $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
CARMELA LUCERO ORTEGA:         $20,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
JOEL BRITO:                    $12,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
ROSA BRITO:                    $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
YARUMI BRITO:                  $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
JENNIFER AVELOS:               $4,000.00 (40% of recovery)

TOTAL RECOVERY FOR
MINOR A.B.:                    $50,476.38

TOTAL RECOVERY FOR
MINOR J.A.:                    $5,608.49

TOTAL RECOVERY FOR
MINOR L.B.:                    $5,608.49

TOTAL RECOVERY FOR
MINOR I.B.:                    $5,608.49

| | |
|---|---|
| TOTAL RECOVERY FOR MINOR J.M.: | $5,608.49 |
| TOTAL RECOVERY FOR DANIEL BRITO SAAVEDRA: | $5,608.49 |
| TOTAL RECOVERY FOR CARMELA LUCERO ORTEGA: | $28,042.43 |
| TOTAL RECOVERY FOR JOEL BRITO: | $16,825.46 |
| TOTAL RECOVERY FOR ROSA BRITO: | $5,608.49 |
| TOTAL RECOVERY FOR YARUMI BRITO: | $5,608.49 |
| TOTAL RECOVERY FOR JENNIFER AVELOS: | $5,608.49 |

Plaintiffs signed a retainer providing for attorney fees of 40% of any settlement after filing a lawsuit, so Plaintiffs' counsel's total fee for representing the minor is $36,000 (or 40% of $90,000).

In order to prosecute the Plaintiffs' action, Plaintiffs' counsel advanced $9,787.84 in costs. Based on the aforementioned, Plaintiffs' counsel respectfully requests that the Court approve the above-described distribution of the settlement proceeds. Defense counsel has no objection to the proposed distribution and the Petitioner is in agreement with the proposed distribution as well.

Respectfully submitted,

DATED: September 22, 2020        LAW OFFICES OF DALE K. GALIPO

                                        By_____/s/ Dale K. Galipo_____
                                            Dale K. Galipo
                                            Eric Valenzuela
                                            Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Yaneli Alonso, guardian *ad litem* for minor plaintiff A.B., hereby petitions this Court for approval of the minor's compromise in this matter, and requests that the Court approve the proposed distribution of the minor's funds.

The instant claims of minor plaintiff A.B. arose out of the fatal shooting of his father, decedent Yahir Brito, on July 20, 2017, by City of Santa Ana police officer Tyler Liggett.  The parties recently reached a settlement agreement which obligates Defendants to pay to the Plaintiffs and their attorney of record the total sum of $250,000.

Local Rule 17-1.3 provides that "[i]nsofar as practicable, hearings on petitions to settle, compromise or dismiss a claim in an action involving a minor or incompetent person shall conform to California Code of Civil Procedure Section 372 and California Rule of Court 3.1384."  These code sections refer to the requirement of court approval and incorporate other rules requiring disclosure of various pertinent facts.  California Rule of Court 3.1384 provides that "[a] petition for court approval of a compromise or covenant not to sue under Code of Civil Procedure section 372 must comply with rules 7.950, 7.951, and 7.952."  Movant hereby provides and discloses the required information in this memorandum and the attached Declaration of Dale K. Galipo.

**II.    DISCLOSURE OF INFORMATION PURSUANT TO CALIFORNIA RULE OF COURT 7.950**

(1)    Petitioner is Yaneli Alonso.

(2)    The claimants are Plaintiffs A.B., a minor, J.A., a minor, L.B., a minor, I.B., a minor, J.M., a minor, DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, YARUMI BRITO and JENNIFER AVALOS.  Petitioner is the court-appointed guardian *ad litem* for the minor Plaintiff A.B.

1  (3)    The age and gender of the minor claimant is as follows:

2         Minor Plaintiff A.B. is a 3-year-old male born on May 4, 2017, to Yaneli

3  Alonso and decedent Yahir Brito.

4  Galipo Declaration at ¶ 5.

5  (4)    The nature of Plaintiffs' claims in this lawsuit are as follows:

6         Plaintiffs allege that on July 21, 2017, Decedent was at his home in the City

7  of Santa Ana, California, when the Defendant officer deprived Decedent, A.B.

8  (Decedent's son), J.A. (Decedent's step-son), L.B. (Decedent's little sister), I.B.

9  (Decedent's little brother, J.M. (Decedent's nephew), DANIEL BRITO

10 SAAVEDRA (Decedent's son), CARMELA LUCERO ORTEGA (Decedent's

11 mom), JOEL BRITO (Decedent's son), ROSA BRITO (Decedent's sister),

12 YARUMI BRITO (Decedent's sister) and JENNIFER AVALOS (Decedent's sister-

13 in-law) of their state and/or constitutional rights when Officer Liggett, of the City of

14 Santa Ana Police Department, fatally shot Decedent.  A.B., J.A., L.B., I.B., J.M.,

15 DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO,

16 ROSA BRITO, YARUMI BRITO and JENNIFER AVALOS brought various

17 wrongful death claims and negligent infliction of emotional distress claims in their

18 individual capacity under state law and/or federal law and A.B. brought survival

19 claims as a lawful successor in interest to the Decedent under state and federal law

20 pursuant to C.C.P. § 377 *et seq.*

21        Pursuant to the settlement agreement, the minor's claims will be

22 compromised without a trial on the merits.

23 (5)    Minor claimant A.B. has suffered injuries as a result of the loss of his father.

24 The minor Plaintiff is deprived of and will continue to suffer a deprivation of his

25 familial relationship with his father.  Galipo Decl. at ¶ 6.

26 (6)    Medical treatment is not relevant.

27 (7)    Medical billing is not relevant.

28

1   (8)    The total amount of the settlement that Defendants agree to pay is $250,000.

2   Plaintiffs' counsel, the Law Offices of Dale K. Galipo, is requesting attorney's fees

3   of 40 percent of the $90,000 portion of the settlement for the minor Plaintiff.  The

4   Plaintiffs signed a retainer providing for attorney fees of 40% of the total recovery,

5   so counsel's total fee for representing the minor is $36,000 (or 40% of $90,000).

6   Galipo Decl. at ¶ 8.

7        The Law Offices of Dale K. Galipo also seeks reimbursement for Plaintiffs'

8   total advanced litigation costs.  *Id*.  The total litigation costs are $9,787.84.  Galipo

9   Decl. at ¶ 4.  Because the minor Plaintiff is receiving 36% of the total settlement or

10  $90,000, the minor Plaintiff is being charged 36% of the total costs or $3,523.62.

11  Galipo Decl. at ¶ 8.

12       Plaintiffs J.A., L.B., I.B., J.M., DANIEL BRITO SAAVEDRA, CARMELA

13  LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, YARUMI BRITO and

14  JENNIFER AVALOS are being charged with the remaining 64% of the total costs

15  or $6,264.22.  Galipo Decl. at ¶ 19.

16       Attorneys at the Law Offices of Dale K. Galipo have expended extensive

17  hours litigating this case and this case involved a substantial amount of risk.  This

18  case involved an exceptional amount of risk for Plaintiffs' counsel due to the

19  allegation that Decedent had physically assaulted his girlfriend including punches to

20  her face and head, then assaulted his brother Joel, including headbutting him and

21  giving him a bloody nose, then punched his sister Rosa in the face, then got into a

22  fight with his father Daniel, including assaulting him with a large wooden bedpost,

23  Decedent was heard verbally threatening to kill his dad, then ultimately retrieved a

24  knife to stab his father, and at some point Decedent's younger sister yelled out that

25  Decedent had a knife and was coming to kill their father in the presence of two

26  police officers, including Officer Liggett.  See Court's MSJ Order [Doc. # 74] at 1-

27  3, 6-7.  Further, there was evidence that Decedent was extremely intoxicated and

28

1   high on meth at the time of the incident.  In fact, to further support how risky of a

2   case this was for Plaintiffs' counsel, the Court granted MSJ as to all of Plaintiffs'

3   claims and dismissed/terminated the case due to the overwhelming negative facts

4   and evidence.  See MSJ Order [Doc. # 74-76].  Due to the MSJ Order this case

5   would have resulted in Plaintiffs' counsel losing approximately $10,000 in costs, not

6   to mention to significant amount of time and work spent on the case.  After the

7   Court granted summary judgment as to all of Plaintiffs' claims, Plaintiffs' counsel

8   filed an appeal with the Ninth Circuit, and ultimately the parties were able to reach a

9   settlement.  This difficult and complex case was vigorously defended by the City of

10  Santa Ana and the named officer.  Both of the involved officers claimed that they

11  believed Decedent was about to kill Decedent's father with the knife that he had in

12  his hands and that they were also in fear for their lives and the lives of the remaining

13  family members who were nearby at the time of the shooting.  Further, Defendants'

14  police practices expert opined that the officer's use of deadly force was reasonable,

15  not excessive, was in self-defense or defense of others and that the shooting officer

16  acted consistent with police training and POST standards.  Further, Mr. Galipo and

17  his office conducted significant discovery in this case and had to oppose a very

18  difficult summary judgment motion that was ultimately granted by the Court as to

19  every claim.  There were over 150 pages of police reports that were generated

20  relating to this case, there were approximately 11 hours of audio recordings,

21  including dispatch and audio recorded interviews, there was written discovery that

22  was propounded and responded to by both sides and there were 10 depositions that

23  were taken.  Moreover, Mr. Galipo was instrumental in settling the case, especially

24  after the Court granted summary judgment against the Plaintiffs as to all of their

25  claims.  If the Law Offices of Dale K. Galipo were not awarded a fully

26  compensatory fee in such difficult cases, it would not be able to take them.  *Id*.  In

27  turn, minor plaintiffs such as A.B. would not be able to attract competent counsel

28

1    who could achieve similar results when faced with such negative evidence.

2    Attorney Dale K. Galipo was last approved an hourly rate was $1100 per hour

3    (2020). *Id*.

4    (9)    The gross amount of the total proposed settlement is $250,000. A.B.'s gross

5    amount of the settlement is $90,000. After deducting the requested attorneys' fees

6    of $36,000 and deducting requested costs of $3,523.62, the total net settlement

7    proceeds to minor plaintiff is $50,476.38. Petitioner agrees to this sum. *Id*.

8    (10)    It is requested that the $50,476.38 (the net settlement amount to minor

9    Plaintiff) be used to fund a structured settlement annuity for the minor Plaintiff. The

10    annuity will be disbursed to him, tax-free at three year intervals between the age of

11    18 and 33. Attached as "**Exhibit A**" to the Declaration of Dale Galipo filed

12    concurrently herewith, is the structured settlement annuity funded in the amount of

13    $50,476.38– that provides the amount, interval, and date of each payout to the minor

14    from the age of 18 to 33. This proposal is agreed to by Petitioner, Yaneli Alonso,

15    the court-appointed guardian ad litem for the minor Plaintiff.

16        The structured settlement annuity provides A.B., age 3, guaranteed tax free

17    disbursements totaling $78,500. *See* Exhibit A to Galipo Decl.; Galipo Decl. at

18    ¶ 10. Petitioner Yaneli Alonso's preferred proposal for A.B. set forth in Exhibit "A"

19    allows for a one-time payment of $5,000 to Yaneli Alonso, parent and natural

20    guardian of minor A.B. Galipo Decl. ¶ 10. This one-time payment will specifically

21    and exclusively go towards costs for A.B.'s necessities of life including food,

22    clothing, and shelter. See Yaneli Alonso Declaration at ¶ 2.

23    (11)    Under the settlement agreement, only Plaintiffs J.A., L.B., I.B., J.M.,

24    DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO,

25    ROSA BRITO, YARUMI BRITO and JENNIFER AVALOS would also receive

26    disbursements in the total amount of $89,735.81. Galipo Dec. at ¶ 13.

27

28

1  (12)    Petitioner, the moving guardian ad litem, has no claims against Defendants in
2  connection with the subject incident.  Galipo Decl. at ¶ 14.

3  (13)    Petitioner, the moving guardian ad litem, does not have any claims against the
4  minor Plaintiff in connection with the subject incident.  *Id*.

5  (14)    California Welfare and Institutions Code Section 14124.73 does not apply.
6  *Id*.

7  (15)    This motion does not seek an order for payment of money to a special needs
8  trust.  *Id*.

9
   **III.    DISCLOSURE OF ATTORNEY'S INTEREST PURSUANT TO
10         CALIFORNIA RULE OF COURT 7.951**

11  (1)    This petition was prepared by attorney Dale K. Galipo (California Bar
12  Number 144074), of the Law Offices of Dale K. Galipo, located at 21800 Burbank
13  Boulevard, Suite 310, Woodland Hills, California, representing Plaintiffs A.B., a
14  minor, J.A., a minor, L.B., a minor, I.B., a minor, J.M., a minor, DANIEL BRITO
15  SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO,
16  YARUMI BRITO and JENNIFER AVALOS. Galipo Decl. at ¶ 18.

17  (2)    The Law Offices of Dale K. Galipo did not become concerned with this
18  matter at the instance of any party against whom the claim of said minor is asserted.
19  *Id*.

20  (3)    The Law Offices of Dale K. Galipo represents Plaintiffs A.B., a minor, J.A., a
21  minor, L.B., a minor, I.B., a minor, J.M., a minor, DANIEL BRITO SAAVEDRA,
22  CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, YARUMI BRITO
23  and JENNIFER AVALOS, but is not employed by any other party or any insurance
24  carrier involved in the matter.  *Id*.

25  (4)    The Law Offices of Dale K. Galipo has not received any compensation for its
26  services in connection herewith from any person.  *Id*.

27

28

1  (5)    The only other source The Law Offices of Dale K. Galipo will receive

2  additional compensation for their services in connection herewith is from Plaintiffs

3  J.A., a minor, L.B., a minor, I.B., a minor, J.M., a minor, DANIEL BRITO

4  SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO,

5  YARUMI BRITO and JENNIFER AVALOS in the total amount of $70,264.12 or

6  $64,000 in attorney's fees and $6,264.12 in costs.  Galipo Decl. at ¶ 19.

7  (6)    The Law Offices of Dale K. Galipo accepted this engagement for a

8  contingency fee, plus reimbursement for any costs advanced.  Galipo Decl. at ¶ 20.

9  The retainer agreement provides for a 40 percent attorney fee recovery.  *Id.*

10
11  **IV.    PETITIONER BELIEVES THE SETTLEMENT IS IN THE BEST
         INTERESTS OF THE MINOR PLAINTIFF**

12         Petitioner has made a careful and diligent inquiry and investigation to

13  ascertain the facts relating to the incident giving rise to the minor's claims, the

14  parties responsible for the incident, and the nature, extent and seriousness of the

15  minor's claims.  Petitioner further understands that if the compromise proposed in

16  this petition is approved by the Court and is consummated, the minor will be forever

17  barred from seeking any further recovery of compensation even though the minor's

18  injuries and loss might in the future appear to be more serious than they are now

19  thought to be.

20         Petitioner is informed and believes that the minor has made some sufficient

21  recovery from the effects of her injuries and losses so as to justify the resolution of

22  this matter in accord with the terms of the settlement agreement.  Petitioner

23  recommends the compromise settlement and the proposed distribution to the minor

24  to the Court as being fair, reasonable, and in the best interest of the minor, and

25  requests that the Court approve this compromise settlement and make such other and

26  further order as may be just and reasonable.

27  ///

28

1    ///

2    ///

3    ///

4    ///

5    Respectfully submitted,

6    DATED:  September 22, 2020        LAW OFFICES OF DALE K. GALIPO

7

8                                    By_____/s/ Dale K. Galipo_____

9                                       Dale K. Galipo
                                        Eric Valenzuela
10                                      Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION OF YANELI ALONSO**

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Executed on September 22, 2020, at Los Angeles, California.

_Yaneli Alonso_
Yaneli Alonso

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (Bar No. 284500)
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:    (818) 347-3333
Facsimile:    (818) 347-4118

**LAW OFFICE OF SHARON J. BRUNNER**
Sharon J. Brunner, Esq. (SBN 229931)
Email: sharonjbrunner@yahoo.com
14393 Park Avenue, Suite 100
Victorville, CA 92392
Tel: (760) 243-9997; Fax: (760) 843-8155

Attorneys for Plaintiffs N.Y., Mariana Tafoya
And Weslie Yarber

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.B., a minor, by and through his guardian *ad litem*, Yaneli Alonso, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SANTA ANA, et al.,<br><br>Defendants. | Case No. 8:18−cv−01553−DOC−ADS<br><br>[*Honorable David O. Carter*]<br><br>**DECLARATION OF YANELI ALONSO GUARDIAN AD LITEM OF A.B., A MINOR**<br><br>[Petition For Compromise Of The Claims Of A.B., A Minor, By And Through His Guardian Ad Litem, YANELI ALONSO; Memorandum Of Points And Authorities; Proposed Order; and Declaration of Dale K. Galipo *submitted concurrently herewith*] |

## DECLARATION OF YANELI ALONSO

I, Yaneli Alonso, hereby declare as follows:

     1.    I am the natural mother of A.B. and I am also his guardian *ad litem* in the above-referenced case. I have personal knowledge of the matters stated herein and would and could testify competently thereto if called upon to do so. I make this declaration in support of the Unopposed Petition for Compromise of the Claims of A.B., a Minor, by and through his Guardian Ad Litem, Yaneli Alonso.

     2.    I am requesting a one-time payment of $5,000 to assist with and to be used specifically and exclusively to go towards costs for A.B.'s necessities of life including his food, clothing, and shelter.

     I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 22nd day of September 2020 in Los Angeles, California

_____
Yaneli Alonso

1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo, Esq. (Bar No. 144074)
2  Eric Valenzuela, Esq. (Bar No. 284500)
   dalekgalipo@yahoo.com
3  evalenzuela@galipolaw.com
   21800 Burbank Boulevard, Suite 310
4  Woodland Hills, California  91367
   Telephone:   (818) 347-3333
5
6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  A.B., a minor, by and through his    ) Case No. 8:18−cv−01553−DOC−ADS
    guardian *ad litem*, Yaneli Alonso, et al., )
12                                         ) **DECLARATION OF DALE K.**
                                           ) **GALIPO IN SUPPORT OF**
13             Plaintiffs,                 ) **UNOPPOSED PETITION FOR**
                                           ) **COMPROMISE OF THE CLAIMS**
14             vs.                         ) **OF A.B. A MINOR, BY AND**
                                           ) **THROUGH HER GUARDIAN AD**
15  CITY OF SANTA ANA, et al.,             ) **LITEM, YANELI ALONSO**
                                           )
16             Defendants.                 ) [Petition for Compromise of the Claims
                                           ) of A.B.; Memorandum of Points and
17                                         ) Authorities; and [Proposed] *Order filed*
                                           ) *concurrently herewith*]
18                                         )
19  ═══════════════════════════════════

20              __DECLARATION OF DALE K. GALIPO__

21        I, Dale K. Galipo, hereby declare as follows:

22  1.    I am an attorney licensed to practice law in this United States District Court.

23  I am the attorney of record for the Plaintiffs in this action, Case No.

24  8:18−cv−01553−DOC−ADS.  I have personal knowledge of the matters stated

25  herein and would and could testify competently thereto if called.  I make this

26  declaration in support of Plaintiff's Petition for Compromise of the Claims of A.B.,

27  a Minor, by and through his Guardian Ad Litem, Yaneli Alonso.

28                              -1-         Case No. 8:18−cv−01553−DOC−ADS

DECLARATION OF DALE K. GALIPO IN SUPPORT OF PETITION FOR ORDER APPROVING MINOR'S COMPROMISE

2.      The instant claims of minor Plaintiff A.B. arose out of the fatal shooting of his father, decedent Yahir Brito, July 20, 2017, by City of Santa Ana police officer Tyler Liggett. The parties recently reached a settlement agreement which obligates Defendants to pay to the Plaintiffs and their attorney of record the total sum of $250,000.

3.      The following is a description of the breakdown submitted to the Court for approval:

| | |
|---|---|
| TOTAL SETTLEMENT: | $250,000.00 (which includes the claims of the five minor Plaintiffs A.B., J.A., L.B., I.B., and J.M. and the six adult Plaintiffs Daniel Brito Saavedra, Carmela Lucero Ortega, Joel Brito, Rosa Brito, Yarumi Brito, and Jennifer Avalos) |
| MINOR A.B.'s PORTION: | $90,000.00 (36% of total recovery) |
| MINOR J.A.'s PORTION: | $10,000.00 (4% of total recovery) |
| MINOR L.B.'s PORTION: | $10,000.00 (4% of total recovery) |
| MINOR I.B.'s PORTION: | $10,000.00 (4% of total recovery) |
| MINOR J.M.'s PORTION: | $10,000.00 (4% of total recovery) |
| DANIEL BRITO SAAVEDRA's PORTION | $10,000 (4% of total recovery) |
| CARMELA LUCERO ORTEGA'S PORTION | $50,000 (20% of total recovery) |
| JOEL BRITO'S PORTION | $30,000 (12% of total recovery |
| ROSA BRITO'S PORTION | $10,000 (4% of total recovery) |
| YARUMI BRITO'S PORTION | $10,000 (4% of total recovery) |

| | | |
|---|---|---|
| JENNIFER AVELOS' PORTION | $10,000 (4% of total recovery) | |
| TOTAL COSTS: | $9,787.84 | |
| COSTS CHARGED TO MINOR A.B.: | $3,523.62 (36% of total costs) | |
| COSTS CHARGED TO MINOR J.A.: | $391.51 (4% of total costs) | |
| COSTS CHARGED TO MINOR L.B.: | $391.51 (4% of total costs) | |
| COSTS CHARGED TO MINOR I.B.: | $391.51 (4% of total costs) | |
| COSTS CHARGED TO MINOR J.M..: | $391.51 (4% of total costs) | |
| COSTS CHARGED TO DANIEL BRITO SAAVEDRA: | $391.51 (4% of total costs) | |
| COSTS CHARGED TO CARMELA LUCERO ORTEGA: | $1,957.57 (20% of total costs) | |
| COSTS CHARGED TO JOEL BRITO: | $1,174.54 (12% of total costs) | |
| COSTS CHARGED TO ROSA BRITO: | $391.51 (4% of total costs) | |
| COSTS CHARGED TO YARUMI BRITO: | $391.51 (4% of total costs) | |
| COSTS CHARGED TO JENNIFER AVELOS: | $391.51 (4% of total costs) | |
| TOTAL ATTORNEY FEES CHARGED TO MINOR A.B.: | $36,000.00 (40% of recovery) | |

TOTAL ATTORNEY FEES
CHARGED TO MINOR J.A.:           $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO MINOR L.B.:           $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO MINOR I.B.:           $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO MINOR J.M.:           $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
DANIEL BRITO SAAVEDRA:           $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
CARMELA LUCERO ORTEGA:           $20,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
JOEL BRITO:                      $12,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
ROSA BRITO:                      $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
YARUMI BRITO:                    $4,000.00 (40% of recovery)

TOTAL ATTORNEY FEES
CHARGED TO
JENNIFER AVELOS:                 $4,000.00 (40% of recovery)

TOTAL RECOVERY FOR
MINOR A.B.:                      $50,476.38

| | |
|---|---|
| TOTAL RECOVERY FOR MINOR J.A.: | $5,608.49 |
| TOTAL RECOVERY FOR MINOR L.B.: | $5,608.49 |
| TOTAL RECOVERY FOR MINOR I.B.: | $5,608.49 |
| TOTAL RECOVERY FOR MINOR J.M.: | $5,608.49 |
| TOTAL RECOVERY FOR DANIEL BRITO SAAVEDRA: | $5,608.49 |
| TOTAL RECOVERY FOR CARMELA LUCERO ORTEGA: | $28,042.43 |
| TOTAL RECOVERY FOR JOEL BRITO: | $16,825.46 |
| TOTAL RECOVERY FOR ROSA BRITO: | $5,608.49 |
| TOTAL RECOVERY FOR YARUMI BRITO: | $5,608.49 |
| TOTAL RECOVERY FOR JENNIFER AVELOS: | $5,608.49 |

4. Plaintiffs signed a retainer providing for attorney fees of 40% of any settlement after filing a lawsuit, so Plaintiffs' counsel's total fee for representing the minor is $36,000 (or 40% of $90,000).

In order to prosecute the Plaintiffs' action, Plaintiffs' counsel advanced $9,787.84, in necessary costs.

5. Minor Plaintiff A.B. is a 3-year-old male born on May 4, 2017, to Yaneli Alonso and decedent Yahir Brito.

6.    Minor claimant A.B. has suffered injuries as a result of the loss of his father. The minor Plaintiff is deprived of and will continue to suffer a deprivation of his familial relationship with his father.

7.    Medical treatment is not relevant.

8.    The total amount of the settlement that Defendants agree to pay is $250,000. Plaintiffs' counsel, the Law Offices of Dale K. Galipo, is requesting attorney's fees of 40 percent of the $90,000 portion of the settlement for the minor Plaintiff.  The Plaintiffs signed a retainer providing for attorney fees of 40% of the total recovery, so counsel's total fee for representing the minor is $36,000 (or 40% of $90,000).

The Law Offices of Dale K. Galipo also seeks reimbursement for Plaintiffs' total advanced litigation costs.  The total litigation costs are $9,787.84. Because the minor Plaintiff is receiving 36% of the total settlement or $90,000, the minor Plaintiff is being charged 36% of the total costs or $3,523.62.

Attorneys at the Law Offices of Dale K. Galipo have expended extensive hours litigating this case and this case involved a substantial amount of risk.  This case involved an exceptional amount of risk for Plaintiffs' counsel due to the allegation that Decedent had physically assaulted his girlfriend including punches to her face and head, then assaulted his brother Joel, including headbutting him and giving him a bloody nose, then punched his sister Rosa in the face, then got into a fight with his father Daniel, including assaulting him with a large wooden bedpost, Decedent was heard verbally threatening to kill his dad, then ultimately retrieved a knife to stab his father, and at some point Decedent's younger sister yelled out that Decedent had a knife and was coming to kill their father in the presence of two police officers, including Officer Liggett.  See Court's MSJ Order [Doc. # 74] at 1-3, 6-7.  Further, there was evidence that Decedent was extremely intoxicated and high on meth at the time of the incident.  In fact, to further support how risky of a case this was for Plaintiffs' counsel, the Court granted MSJ as to all of Plaintiffs'

claims and dismissed/terminated the case due to the overwhelming negative facts and evidence.  See MSJ Order [Doc. # 74-76].  Due to the MSJ Order this case would have resulted in Plaintiffs' counsel losing approximately $10,000 in costs, not to mention to significant amount of time and work spent on the case.  After the Court granted summary judgment as to all of Plaintiffs' claims, Plaintiffs' counsel filed an appeal with the Ninth Circuit, and ultimately the parties were able to reach a settlement.  This difficult and complex case was vigorously defended by the City of Santa Ana and the named officer.  Both of the involved officers claimed that they believed Decedent was about to kill Decedent's father with the knife that he had in his hands and that they were also in fear for their lives and the lives of the remaining family members who were nearby at the time of the shooting.  Further, Defendants' police practices expert opined that the officer's use of deadly force was reasonable, not excessive, was in self-defense or defense of others and that the shooting officer acted consistent with police training and POST standards.  Further, Mr. Galipo and his office conducted significant discovery in this case and had to oppose a very difficult summary judgment motion that was ultimately granted by the Court as to every claim.  There were over 150 pages of police reports that were generated relating to this case, there were approximately 11 hours of audio recordings, including dispatch and audio recorded interviews, there was written discovery that was propounded and responded to by both sides and there were 10 depositions that were taken.  Moreover, Mr. Galipo was instrumental in settling the case, especially after the Court granted summary judgment against the Plaintiffs as to all of their claims.  If the Law Offices of Dale K. Galipo were not awarded a fully compensatory fee in such difficult cases, it would not be able to take them.  In turn, minor plaintiffs such as A.B. would not be able to attract competent counsel who could achieve similar results when faced with such negative evidence.  Attorney Dale K. Galipo was last approved an hourly rate was $1100 per hour (2020).

9.      The gross amount of the total proposed settlement is $250,000.  A.B.'s gross amount of the settlement is $90,000.  After deducting the requested attorneys' fees of $36,000 and deducting requested costs of $3,523.62, the total net settlement proceeds to minor plaintiff is $50,476.38.  Petitioner agrees to this sum.

10.      It is requested that the $50,476.38 (the net settlement amount to minor Plaintiff) be used to fund a structured settlement annuity for the minor Plaintiff.  The annuity will be disbursed to him, tax-free at three year intervals between the age of 18 and 33.  Attached as "**Exhibit A**" to the Declaration of Dale Galipo filed concurrently herewith, is the structured settlement annuity funded in the amount of $50,476.38– that provides the amount, interval, and date of each payout to the minor from the age of 18 to 33.  This proposal is agreed to by Petitioner, Yaneli Alonso, the court-appointed guardian ad litem for the minor Plaintiff.

The structured settlement annuity provides A.B., age 3, guaranteed tax free disbursements totaling $78,500.  *See* Exhibit "**A**" attached hereto.  Petitioner Yaneli Alonso's preferred proposal for A.B. set forth in Exhibit "**A**" allows for a one-time payment of $5,000 to Yaneli Alonso, parent and natural guardian of minor A.B.  Ms. Alonso has assured me (and signed a supporting declaration thereto) that this one-time payment will specifically and exclusively go towards costs for A.B.'s necessities of life including food, clothing, and shelter.

11.      The structured settlement annuities will be administered, paid, and guaranteed by MetLife Assignment Company Inc. ("MetLife").  Attached hereto as **"Exhibit B"** is a true and correct copy of MetLife's ratings sheet.  MetLife and its core entities are rated A+ Superior by A.M. Best, AA- Very Strong by S&P, and Aa3 High quality by Moody's.

12.      Attached hereto as **"Exhibit C"** are specimen of MetLife's Corporate Guaranty and Contract Guarantee were this Court to approve this Petition.

13.     Under the settlement agreement, only Plaintiffs J.A., L.B., I.B., J.M., DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, YARUMI BRITO and JENNIFER AVALOS would also receive disbursements in the total amount of $89,735.81.

14.     Petitioner, the moving guardian ad litem, has no claims against Defendants in connection with the subject incident.

15.     Petitioner, the moving guardian ad litem, does not have any claims against the minor Plaintiff in connection with the subject incident.

16.     California Welfare and Institutions Code Section 14124.73 does not apply.

17.     This motion does not seek an order for payment of money to a special needs trust.

18.     I prepared this petition for approval of the minor's compromise. The Law Offices of Dale K. Galipo did not become concerned with this matter at the instance of any party against whom the claim of said minor is asserted.  The Law Offices of Dale K. Galipo represents all Plaintiffs in Case No. 8:18−cv−01553−DOC−ADS, including the minor Plaintiff in this matter but is not employed by any other party or any insurance carrier involved in the matter.  The Law Offices of Dale K. Galipo has not received any compensation for its services in connection herewith from any person.

19.     The only other source The Law Offices of Dale K. Galipo will receive additional compensation for their services in connection herewith is from Plaintiffs J.A., a minor, L.B., a minor, I.B., a minor, J.M., a minor, DANIEL BRITO SAAVEDRA, CARMELA LUCERO ORTEGA, JOEL BRITO, ROSA BRITO, YARUMI BRITO and JENNIFER AVALOS in the total amount of $70,264.12 or $64,000 in attorney's fees and $6,264.12 in costs.

DECLARATION OF DALE K. GALIPO IN SUPPORT OF PETITION FOR ORDER APPROVING MINOR'S COMPROMISE

20.    The Law Offices of Dale K. Galipo accepted this engagement for a contingency fee, plus reimbursement for any costs advanced.  The retainer agreement provides for a 40 percent attorney fee recovery.

I certify under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 16th day of September, 2020, at Woodland Hills, California 91367.

_____/s/ Dale K. Galipo_____
Dale K. Galipo

## ATTACHMENT TO PETITION AND ORDER APPROVING
## FOR MINORS COMPROMISE

From the total gross settlement, the City of Santa Ana (hereinafter referred to as "Defendant") has agreed to issue a separate settlement check in the amount of $50,476.38 to fund and purchase the structured annuity for the minor Plaintiff A.B., by and through his Guardian ad Litem Yaneli Alonso.

The annuity check will be made payable to MetLife Assignment Company Inc. (hereinafter referred to as "Assignee") which will provide the following periodic payments in Section A to be made by Metropolitan Tower Life Insurance Company, (hereinafter referred to as "Annuity Carrier") rated A+ Class XV by A.M. Best Company.

The details of the periodic payments will be set forth in section (A), hereinbelow.  All sums and periodic payments set forth in the section entitled Payments constitute damages on account of personal physical injuries or physical illness, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

A)     Payments:

### Periodic payments payable to A.B. :

$12,250.00 Lump Sum Payment on 05/04/2035
$12,250.00 Lump Sum Payment on 05/04/2038
$12,250.00 Lump Sum Payment on 05/04/2041
$12,250.00 Lump Sum Payment on 05/04/2044
$12,250.00 Lump Sum Payment on 05/04/2047
$12,250.00 Lump Sum Payment on 05/04/2050

### Periodic payments payable to:
### Yaneli Alonso (as parent and guardian):

$5,000.00 Lump Sum Payment on 12/15/2020

The Plaintiff agrees that he has not received or relied upon any advice or representation as to the tax effect of this Agreement.  In accordance therewith, the Plaintiff agrees to hold harmless the Defendant from any losses to Plaintiff incurred, including any loss by reason of a determination by the Internal Revenue Service or other tax authority that said settlement monies do not constitute, in whole or part, damages on account of personal injury or sickness.

The Defendant will execute a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue code of 1986, as amended, to Assignee, of the Defendant's liability to make the periodic payments described in paragraph (A) herein.  Such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release

and discharge the Defendant from such obligations hereunder as are assigned to Assignee.

The Defendant shall have the right to fund its liability to make periodic payments by purchasing a "qualified funding asset", within the meaning of Section 130(d) of the Code, in the form of an annuity policy from the Annuity Carrier.

The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check or via wire transfer, in the amount specified above.

The Plaintiff hereto expressly understands and agrees that upon the qualified assignment being made by the Defendant to Assignee as authorized by this agreement, all of the duties and responsibilities to make the periodic payments otherwise imposed upon the Defendant by this agreement shall instead be binding upon Assignee, and the Defendant shall be released from all obligations to make said periodic payments, and Assignee shall at all times remain directly and solely responsible for and shall receive credit for all such payments made to Plaintiff.  It is further understood and agreed that, upon such a qualified assignment, Assignee assume all of the duties and responsibilities of the Defendant to make the periodic payments.

Payments hereunder cannot be accelerated, deferred, increased or decreased by the Plaintiff and/or Assignee and no part of the payment(s) called for herein or any assets of the Defendant and/or Assignee is to be subject to execution of any legal process for any obligation in any manner.  Furthermore, the Plaintiff shall not have the power to sell or mortgage or encumber the same, or any part thereof, anticipate the same, or any part thereof, by assignment or otherwise.

The Assignee shall be the owner of the annuity policy or policies, and shall have all rights of ownership.  The Assignee will have the Annuity Carrier mail payments directly to the Plaintiff.  The Plaintiff shall be responsible for maintaining the currency of the proper mailing address and mortality information to Assignee.

 MetLife | Retirement & Income Solutions

**Financial Quality**

# Metropolitan Tower Life Insurance Company (Met Tower Life)

A wholly owned subsidiary of MetLife, Inc.[1]

Data as of December 31, 2019

## Size and strength of Met Tower Life

Met Tower Life can assume responsibility for annuity contracts of all sizes.

On a statutory accounting basis, Met Tower Life has approximately $26.3 billion in total admitted assets (including separate accounts and approximately $3.1 billion pledged as collateral for any loan or guaranty or which were otherwise not available to pay losses and claims or were not held to protect its policyholders or creditors) and approximately $24.8 billion in liabilities (as of December 31, 2019).

| Met Tower Life's size (As of December 31, 2019) | ($ millions) | | ($ millions) |
|---|---|---|---|
| General account total cash & invested assets | $18,807 | Liabilities | $24,812 |
| Total general account assets | $19,568 | Capital & surplus | $1,503 |
| Separate account assets | $6,747 | **Total liabilities, capital and surplus (excluding AVR)** | **$26,315** |
| **Net admitted assets** | **$26,315** | Asset valuation reserve (AVR) | $182 |
| | | **Total Capital\*** | **$1,685** |

\*Total capital is comprised of "capital & surplus" and "asset valuation reserve (AVR)."

**Note:** Categories may not equal total due to rounding.

## Rating agency assessments

Metropolitan Tower Life Insurance Company's financial strength and claims-paying ability is currently rated "Superior", "Very strong" or "High quality" by the following major rating agencies.[2]

| Agency | Financial strength rating |
|---|---|
| A.M. Best | A+ (Superior) |
| Fitch | AA− (Very strong) |
| Moody's | Aa3 (High quality) |
| Standard & Poor's | AA− (Very strong) |

## Capital to protect benefit payments

Met Tower Life's total statutory capital and surplus (including asset valuation reserves) is approximately $1.7 billion (as of December 31, 2019).

## Met Tower Life businesses

Met Tower Life has a diversified mix of business.

The majority of Met Tower Life's legacy business is individual life insurance, which has been in force for many years. This legacy life insurance business acts as a natural hedge for our annuity business. Additionally, Met Tower Life's in-force business is predominantly not composed of products typically associated with earnings volatility, such as long term care insurance. Today, in addition to group annuities for pension risk transfer, Met Tower Life issues for MetLife's Retirement & Income Solutions business institutional income annuities, structured settlement annuities, stable value guaranteed investment contracts, and corporate- and bank-owned life insurance. Prospectively, it will issue funding agreements.[3]

| Business mix (as of December 31, 2019) | Liability amount ($ millions) | Percentage |
|---|---|---|
| Life | $10,393 | 68% |
| Deposit type contracts | $2,820 | 19% |
| Individual annuities | $1,800 | 12% |
| Other* | $191 | 1% |
| Group annuities | $9 | 0% |
| **Total policy holder liabilities** | **$15,214** | **100%** |

*Includes accidental death riders on life insurance policies, disability, accident & health, and other miscellaneous reserves.

**Note:** Categories may not equal total due to rounding.

## General account investment portfolio

$18,807 million, as of December 31, 2019



● Bonds: 66.9%
● Mortgage loans: 15.5%
● Policy loans: 9.4%
● Cash & short-term investments: 1.8%
● Real estate: 1.3%
● Stocks: 0.4%
● All other assets: 4.8%*

* Includes derivatives, receivables for securities, and other invested assets.
**Note:** Categories may not total 100% due to rounding.

| General account invested assets as of December 31, 2019 | ($ millions) |
|---|---|
| Bonds | $12,579 |
| Mortgage loans | $2,920 |
| Policy loans | $1,763 |
| Cash & short-term investments | $338 |
| Real estate | $238 |
| Stocks | $70 |
| All other assets* | $899 |
| **Total invested assets** | **$18,807** |

* Includes derivatives, receivables for securities, and other invested assets.
**Note:** Categories may not equal total due to rounding.

As of December 31, 2019, 94.99% of Met Tower Life's bond portfolio was investment grade.

## Bond quality

$12,579 million, as of December 31, 2019



● Investment grade (NAIC class 1–2): 94.99%
● Medium grade (NAIC class 3): 3.77%
● High yield (NAIC class 4–6): 1.24%

**Note:** Categories may not total 100% due to rounding.

## About Metropolitan Tower Life Insurance Company

MetLife's Retirement & Income Solutions division, the company's institutional retirement business, issues products through Metropolitan Life Insurance Company and Metropolitan Tower Life Insurance Company, two wholly owned subsidiaries of MetLife, Inc. Retirement & Income Solutions issues products for transferred pension liabilities, stable value, institutional income annuities, benefits funding and structured settlements.

On April 27, 2018, Metropolitan Tower Life Insurance Company (Met Tower Life) was re-domesticated to Nebraska, and General American Life Insurance Company, another MetLife, Inc., subsidiary, was merged with and into Met Tower Life. Met Tower Life is licensed in all 50 states. MetLife believes that being able to write new contracts out of Met Tower Life will allow it to offer its customers more competitive pricing and enable maximum flexibility from a regulatory standpoint, while ensuring that participant benefits are protected by another financially strong MetLife insurance operating company.

**Safe Harbor Statement**

This document may contain or refer to forward-looking statements. Forward-looking statements give expectations or forecasts of the future using terms such as "anticipate," "estimate," "expect," "project," "intend," "plan," "believe," "will," and other terms tied to future periods. Results could differ materially from those expressed or implied in the forward-looking statements. Forward-looking statements are based on assumptions and expectations. They involve risks and uncertainties, including the "Risk Factors" MetLife, Inc. describes in its U.S. Securities and Exchange Commission filings. The company has no obligation to correct or update any forward-looking statement. Parts of this document may include additional information on forward-looking statements.

The document may also contain measures that are not calculated based on accounting principles generally accepted in the United States of America, or GAAP. Parts of this document, the Investor Relations portion of MetLife's website (www.metlife.com), or other parts of that website include information on non-GAAP financial information.

[1]MetLife, Inc., is also the holding company parent of Metropolitan Life Insurance Company (MLIC) and other MetLife affiliates.

[2]Current as of March 16, 2019. Ratings apply to Met Tower Life's financial strength and claims-paying ability and not the performance of any of its products. For current ratings and a more complete analysis of the financial strength of Met Tower Life, please go to https://www.metlife.com/about-us/corporate-profile/ratings/.

[3]Guarantees are subject to the financial strength and claims-paying ability of Metropolitan Tower Life Insurance Company.

This brochure is not intended to be, and should not be construed as, legal and/or tax advice. You should consult with your independent legal and tax advisors in connection with your consideration of purchasing an annuity to transfer plan liabilities.

Navigating life together

**metlife.com**



**Metropolitan Tower Life Insurance Company** | 5601 South 59th St | Lincoln, NE 68516
1711 934256C    L0320002399[exp0521][All States][DC]    © 2020 MetLife Services and Solutions, LLC

3



Metropolitan Tower Life Insurance
Company
New York, NY

## EVIDENCE OF GUARANTEE

Pursuant to authority granted by its Board of Directors, Metropolitan Tower Life Insurance Company ("MetLife") has agreed to guarantee any payment or other obligation required to be made or performed by MetLife Assignment Company, Inc., a wholly owned subsidiary of MetLife, on or after May 15, 2017 in connection with the purchase of annuities from MetLife.

Andrew T. Aoyama
Senior Vice President
Metropolitan Tower Life Insurance Company

# Metropolitan Tower Life Insurance Company

A Stock Company
[1209 Orange Street
Wilmington, DE 19801]

**NOTICE**

To obtain information about the Contract or if you, the Owner, need assistance or need help in resolving a complaint, you may call [**(800)-638-2704**]

Metropolitan Tower Life Insurance Company (referred to as "We, Us and Our") will make payments as described in this Contract in the Payments Schedule section on the Contract Specifications.

This Contract is issued in return for the payment of the Single Premium.

*FREE LOOK PROVISION – RIGHT TO CANCEL*
**This Contract may be returned for any reason within [10] days after the Owner receives it by mailing or otherwise surrendering the Contract to either Us or the agent who sold it together with a written request for cancellation.  Return of this Contract by mail is effective on being postmarked, properly addressed and postage prepaid.  If the Owner returns it within the [10] day period, the Contract will be cancelled.  We will promptly refund the Single Premium, less any prior payments made by us.**

Signed for the Company.

[
Tyla  L. Reynolds
Vice President and Secretary

Robin Lenna
President

]

**[Notice**
**This Contract has been delivered to the possession of John Doe for the sole purpose of perfecting a lien and security interest of such person in this Contract. John Doe is not the Owner of, and has no ownership rights in this Contract and cannot anticipate, sell, assign, pledge, encumber, or otherwise use this Contract as any form of collateral. Please contact us for further information.]**

*INDIVIDUAL SINGLE PREMIUM SETTLEMENT ANNUITY CONTRACT*

*NON-PARTICIPATING*

*THIS CONTRACT DOES NOT PROVIDE ANY CASH SURRENDER VALUES*

*READ THE CONTRACT CAREFULLY*

1

Form 8.I.1000

# TABLE OF CONTENTS

Contract Specifications                                                          [Page 3

Definitions                                                                      Page 4

General Provisions                                                              Page 5-7


      Cash Value                                                        Page 5
      Ownership
      Payments
      Change of Payee or Beneficiary
      Contestability

      Misstatement                                                      Page 6]
      Nonassignability; Claims of Creditors
      Proof of Living/Death
      Non-Participating
      Entire Contract

Form 8.I.1000

CONTRACT SPECIFICATIONS

OWNER:               **[**ABC Assignment Company]

MEASURING LIFE:      **[**John Jones]      **SEX:** [M]      **DATE OF BIRTH: [**07/13/1957]

[JOINT  MEASURING    **[**Mary Jones]      **SEX:** [F]      **DATE OF BIRTH: [**06/22/1960]]
LIFE:]

CONTRACT    [12345]                                    ISSUE DATE:
NUMBER:                                                 [06/01/2017]


**PAYMENTS SCHEDULE:**

[

1) [$XXX.XX] for life, payable monthly. Payments starting on [XX/XX/20XX]. Payments will cease upon the death of the Measuring Life.


2) [$XXX.XX] for Life, payable monthly, guaranteed for [XX] years. Payments starting on [XX/XX/20XX] with last guaranteed payment on [XX/XX/20XX]. We will pay the payments for as long as the Measuring Life lives. Payments will cease upon the later of the death of the Measuring Life and the last guaranteed payment date. If the Measuring Life dies before the last guaranteed payment date, the remaining guaranteed payments will continue to the Beneficiary until that date.]

Form 8.I.1000

## DEFINITIONS

1. "We, Us, Our" means Metropolitan Tower Life Insurance Company.

2. "Contract" means this Contract excluding any additional benefit for which a separate premium is charged.

3. "Our Office" means the Home Office, [1209 Orange Street, Wilmington, DE 19801] (Mailing address: [P.O. Box 14403, Lexington, KY 40512-4403]) or any other office which We may name for the purpose of administering this Contract.

4. "Measuring Life" is the person whose life is used to calculate the payments shown under the Payments Schedule on the Contract Specifications Page. The Measuring Life is shown on the Contract Specifications page.

5. "Joint Measuring Life" is the person whose life is used in combination with the life of the Measuring Life to calculate payments, if a Joint Measuring Life payment option is selected and shown under the Payments Schedule on the Contract Specifications Page. The Joint Measuring Life, if any, is shown on the Contract Specifications page.

6. "Payee" is the person(s), or entity(ies), to whom payments shown under the Payments Schedule on the Contract Specifications Page will be made. The Payee is named by the Owner in the application or in a later designation.

7. "Beneficiary" is the person shown on the application, or by later designation, to receive the remaining guaranteed payments upon the death of the Measuring Life and Joint Measuring Life, if any, as described under the Payments Schedule on the Contract Specifications Page.

Form 8.I.1000

## GENERAL PROVISIONS

<u>Cash Value</u>
This Contract does not have cash or surrender values.

<u>Ownership</u>
The contract owner ("Owner") is the person or entity shown on the application and the Contract Specifications page.

The Owner may exercise all rights provided in this Contract prior to the death of the Measuring Life and, if any, the Joint Measuring Life; provided however that the Owner may not change the Measuring Life and/or the Joint Measuring Life, after the Issue Date.

<u>Payments</u>
We will pay the Owner, or such person(s) as the Owner may designate as the Payee, the payments specified under the Payments Schedule on the Contract Specifications page. The Owner may not change the payment type or frequency after the Issue Date.

<u>Beneficiary</u>
Upon the last death of the Measuring Life, and, if any, the Joint Measuring Life, We will pay the Beneficiary the remaining guaranteed payments, if any, specified in the Payments Schedule on the Contract Specifications Page. If two or more Beneficiaries are designated and alive when payment is due, payment will be made in equal shares to them unless stated otherwise. The Beneficiary may not assign any payment to be paid to the Beneficiary under this Contract.

If any Beneficiary dies before the Measuring life, and if any, the Joint Measuring Life, that Beneficiary's interest will pass to any other Beneficiary or contingent beneficiary, if any, as named in the application. If guaranteed payments are being made to the last surviving Beneficiary, and such Beneficiary dies before all guaranteed payments have been made, such payments will be paid to that Beneficiary's estate (or as stated in the application or by later designation).  If no Beneficiary is named or alive upon the last death of the Measuring Life, and, if any, the Joint Measuring Life, We will make any remaining guaranteed payments to estate of Measuring Life, or the Joint Measuring Life, if any.

<u>Change of Payee or Beneficiary</u>
The Owner may change the Payee or Beneficiary designation during the lifetime of the last to survive of the Measuring Life and, if any, the Joint Measuring Life only by filing with Us at Our Office written notice in a form satisfactory to Us. A change of designation will take effect as of the date the written notice is signed, but We will not be liable for any payments made or action taken before We have received a copy of the written notice at Our Office.

<u>Contestability</u>
After the Contract has been in effect for two years from its Issue Date, We will not use material misstatements made in the application to contest this Contract.

5

Form 8.I.1000

Misstatement

If the Measuring Life's or, if any, Joint Measuring Life's date of birth or sex has been misstated, any  future payments will be adjusted to the amount which the premium paid would have purchased at the correct age and sex.  Age refers to the Measuring Life's age nearest birthday on the Issue Date. Any prior overpayments made or underpayments due will be recovered or paid out by Us either 1) by adjusting future payments to deduct any overpayment or to add any underpayment or 2) as mutually agreed to by Us and the Owner.

Nonassignability; Claims of Creditors

This Contract is not assignable.  It cannot be transferred, assigned or pledged as collateral for a loan, and the payments provided under it are not assignable, cannot be changed, accelerated, or paid before the payment due date, and will be exempt from the claims of creditors to the maximum extent permitted by law. Further, no payments under this contract are payable in a single-sum value (i.e., payments are not commutable.)

Proof of Living/Death

Proof of Living:  If the Payments Schedule on the Contract Specifications page provides for payments for so long as the Measuring Life, and if any, the Joint Measuring Life, shall live, We may require as a condition to making such payment, proof that the Measuring Life or the Joint Measuring Life is living on any payment date.  Additionally, we may require proof that the Payee or Beneficiary, as the case may be, is living on the date which any payment is to be made.  Such request will only be made pursuant to normal auditing procedures or if We have reason to believe that the Measuring Life, Joint Measuring Life, Payee or Beneficiary is dead and/or is not receiving the payments to which he or she is entitled.  If proof is requested, then We will not make any further payments until satisfactory proof is received.

Proof of Death: If the Payments Schedule on the Contract Specifications page provides for payments of any remaining guaranteed payments by reason of the death of the Measuring Life and/or Joint Measuring Life, We may require proof of death of the Measuring Life and, if any, Joint Measuring Life before We will make such payment. Our obligation to the respective Joint Measuring Life, or Beneficiary, if any, or other successor in interest will only arise upon Our receipt of proof of death of the deceased Payee.

Any requested Proof of Living or Proof of Death must be submitted to Our Office.

Non-Participating

This Contract is non-participating.  It does not share in our surplus earnings, so the Owner will not receive any dividends under it.

Entire Contract

This Contract is issued in consideration of the application and the payment of the Single Premium as shown in the application.

The entire Contract consists of this Contract, all attached pages and the application.  All statements in the application will be considered to be made to the best knowledge and belief of the applicant and not as promises of truth.  We will not use any statement to contest this Contract unless it is contained in the written application.

6

Form 8.I.1000

No sales representative or other person, except an authorized officer of Our company, may make or change any contract or make any binding promises about any contract on behalf of our company.  Any amendment, modification or waiver of any provision of this Contract will be in writing and may be made effective on behalf of Our company only by an authorized officer of Our company.

7

Form 8.I.1000