1

2   LAW OFFICES OF DALE K. GALIPO
    Dale K. Galipo, Esq. (SBN 144074)
3   E-mail:  dalekgalipo@yahoo.com
    Renee V. Masongsong, Esq. (SBN 281819)
4   Email: rvalentine@galipolaw.com
    21800 Burbank Blvd., Suite 310
5   Woodland Hills, CA  91367
    Tel: (818) 347-3333
6   Fax: (818) 347-4111

7   LAW OFFICES OF GOLDBERG & GAGE

8   Bradley C. Gage, Esq. (Bar No. 117808)

    bgage@goldbergandgage.com
9
    23002 Victory Blvd, Woodland Hills, CA 91367
10  Tel:    (818) 340-9252

11  Fax:   (818) 340-9088

12  *Attorneys for Plaintiffs*

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16  N.B., a minor, by and through guardian      Case No.: 2:21-cv-02165-FLA-PD
    *ad litem* Elonda Holman, individually
17  and as successor in interest to Terron
    Boone, deceased; T.A. and T.B., minors,     **DECLARATION OF RENEE V.**
18  by and through guardian *ad litem* Sharice  **MASONGSONG IN SUPPORT OF**
    Armstead, individually and as successors    **PLAINTIFFS' AMENDED**
19  in interest to Terron Boone, deceased;      **UNOPPOSED *EX PARTE***
    D.S., a minor, by and through guardian      **APPLICATION FOR APPROVAL**
20  *ad litem* Shellondra Thomas,               **OF COMPROMISE OF THE**
    individually; and SHELLONDRA                **CLAIMS OF THE MINOR**
21  THOMAS, individually,                       **PLAINTIFFS**

22                Plaintiffs,

23
            vs.
24
    COUNTY OF LOS ANGELES, et al.,
25
26                Defendants.

27

28

                              -1-

## DECLARATION OF RENEE V. MASONGSONG

1.      I am an attorney licensed to practice law in the United States District Court for the Central District of California.  I am one of the attorneys of record for the Plaintiffs in this action.  I have personal knowledge of the matters stated herein and would and could testify competently thereto if called.  I make this declaration in support of Plaintiffs' Amended *Ex Parte* Application for Approval of the Compromise of the Claims of Minor Plaintiffs in this case (N.B., a minor, by and through guardian *ad litem* Elonda Holman, individually and as successor in interest to Terron Boone, deceased; T.A. and T.B., minors, by and through guardian *ad litem* Sharice Armstead, individually and as successors in interest to Terron Boone, deceased; D.S., a minor, by and through guardian *ad litem* Shellondra Thomas, individually) (hereinafter, "the Minor Plaintiffs").

2.      Plaintiffs are filing the instant Amended Application because the interest rates for the annuities selected by the minor's guardians have expired since the time that Plaintiffs filed their Renewed Petition (Dkt. No. 73) and Supplemental Declaration (Dkt. No. 75).

3.      Defendants are represented by Jill Williams; Carpenter, Rothans & Dumont; 500 South Grand Avenue, 19th Floor; Los Angeles, California 90071; 213-228-0400; jwilliams@crdlaw.com.

4.      I contacted Defendants' counsel on February 27, 2025, and provided Defendants' counsel with a copy of the *ex parte* application and minor's compromise petition. Prior to filing the Renewed Petition (Dkt. No. 73), I contacted Defendants' counsel on April 9, 2025, and April 18, 2025. Prior to filing the instant Amended Application, Plaintiffs' counsel contacted Defendants' counsel on July 8, 2025. As Defendants' counsel reiterated on July 8, 2025, Defendants' counsel does not oppose the filing of this application for approval of the minors' compromise on an *ex parte* basis, and Defendants and their counsel take no position as to the distribution of the settlement funds. Defendants' counsel represented that

1  Defendants will not be filing an opposition or response to this Amended
2  Application.

3      5.      This Amended Application seeks approval of the compromise of the
4  Minor Plaintiffs' claims on an *ex parte* basis because the interest rates for the
5  annuities are likely to expire if this petition is heard as a regularly noticed motion,
6  particularly when factoring in the time that Defendants and their counsel need to
7  request the checks and fund the annuities (approximately 45 days).  Specifically, the
8  new interest rates that Plaintiffs have locked in through their settlement broker will
9  expire on **October 1, 2025**. If the minors' annuities are not <u>funded</u> prior to October
10  1, 2025, then Plaintiffs will need to lock in new rates and file a further amended
11  petition.

12     6.      The settlement agreement obligates Defendants to pay Plaintiffs and
13  their attorneys of record the total gross sum of $275,000 divided between the
14  Plaintiffs in the gross amounts as follows:

15         N.B. and her attorneys                    $65,000
16         T.A. and his attorneys                    $65,000
17         T.B. and his attorneys                    $65,000
18         D.S. and her attorneys                    $20,000
19         Shellondra Thomas and her attorneys:      $60,000
20     These are the amounts that the Plaintiffs agreed to.

21     7.      In this case, the deputies testified that Mr. Boone was firing upon them
22  immediately prior to the deputies' shots and that Mr. Boone continued to point his
23  weapon at the deputies during the shots. Based on the facts of this case, Plaintiffs
24  believed that it would be difficult to survive a motion for summary judgment or to
25  prevail at trial, and the Plaintiffs agreed to the settlement to avoid the risk of
26  recovering nothing.

27     8.      In similar cases, courts have considered the decedent's conduct during
28  the shooting incident in the totality of the circumstances and awarded judgment

against the plaintiffs. The following are some examples. My office handled the police shooting case *Starks v. County of Los Angeles*. In the above-referenced case involving the shooting of Terron Boone, Defendants alleged that Mr. Boone produced a gun and fired shots at deputies, prompting the deputies to return fire. When the deputies fired upon Mr. Boone, Shellondra Thomas was struck by bullet fragments. The facts of the *Starks* case are similar to the facts of the above-referenced case. In *Starks*, there was evidence that the defendant deputies returned fire on subjects who were fleeing in a vehicle and shooting at the deputies. Plaintiff Ms. Starks brought the case as a successor in interest to her son, who was a bystander struck by a stray bullet during the police shootout giving rise to the case.

9.      *Starks* was first filed in the Superior Court of California, County of Los Angeles, and was assigned Case No. 19STCV38462. In that case, the Superior Court of California entered summary judgment against Plaintiff Ms. Starks and in favor of the defendants, finding the deputies' conduct reasonable and leaving the plaintiff with no recovery. The Superior Court determined that Plaintiff Ms. Starks' claims failed because the defendant deputies' use of force—firing their weapons in response to the suspects shooting at them with assault rifles—was objectively reasonable as to both the fleeing suspects and as to the decedent. *See* "Exhibit 1" to Supplemental Declaration of Renee V. Masongsong in Support of Plaintiffs' Application for Approval of the Claims of the Minor Plaintiffs (Dkt. No. 75, "Supplemental Decl.") at Dkt. No. 75-1), which is a true and correct copy of the Superior Court's February 11, 2021, order entering summary judgment against Plaintiff Ms. Starks.

10.      When the *Starks* case was later re-filed in the Central District of California asserting federal claims (*Starks v. County of Los Angeles, et al.*, Case No. 2:21-cv-05209 HDV GJSx), the district court judge granted qualified immunity to the defendant officers on summary judgment. The district court stated in its order granting summary judgment, "[t]he Ninth Circuit has held that "an innocent

1  bystander struck by a stray bullet from the officer's weapon would not have" a

2  Fourth Amendment claim. *United States v. Lockett*, 919 F.2d 585, 590 n.4 (9th Cir.

3  1990) (citing Brower, 489 U.S.); *see also Rodriguez v. City of Fresno*, 819 F. Supp.

4  2d 937, 946 (E.D. Cal. 2011) ("[A]n individual who is accidentally shot by police

5  who are attempting to apprehend someone else cannot maintain a Fourth

6  Amendment claim." (citation omitted))." *See* "Exhibit 2" to Supplemental Decl. at

7  Dkt. No. 75-2, which is a true and correct copy of the district court's September 13,

8  2024, order granting summary judgment in favor of the defendants in the *Starks*

9  matter. *See* "Exhibit 3" to Supplemental Decl. at Dkt. No. 75-3, which is a true and

10  correct copy of the district court's September 13, 2024, order entering judgment in

11  favor of the *Starks* defendants and dismissing the action with prejudice.

12      11.      My office handled the case *R.E. v. City of Long Beach, et al*., Case No.

13  2:21-cv-06072-SB-KS. In that case, the decedent refused numerous commands by

14  officers to drop a knife. When the decedent approached the officers with the knife, a

15  fatal officer-involved-shooting occurred. Similarly, in the instant case, decedent

16  Terron Boone allegedly brandished a weapon immediately prior to the officer-

17  involved shooting. In the *R.E.* matter, a judge sitting for the Central District of

18  California entered summary judgment against the minor plaintiff and in favor of the

19  defendants, leaving the minor plaintiff with no recovery. The *R.E.* court also granted

20  qualified immunity to the defendant officers. *See* "Exhibit 4" to Supplemental Decl.

21  at Dkt. No. 75-4, which is a true and correct copy of the district court's July 5, 2022,

22  order granting summary judgment in favor of the defendants in that case. *See*

23  "Exhibit 5" to Supplemental Decl. at Dkt. No. 75-5, which is a true and correct copy

24  of the district court's final judgment dismissing the *R.E.* plaintiffs' claims with

25  prejudice.

26      12.      My office handled the fatal police shooting case *Fernando Del Castillo,*

27  *et al. v. City of Tempe, et al.*, Case No. CV-14-01945-PHX-DLR. In that case, a

28  judge sitting for the District of Arizona granted qualified immunity and summary

judgment in favor of the defendants, reasoning that the decedent posed an immediate threat of death or serious bodily injury when he advanced toward a deputy with an edged weapon. Similarly, in the instant case, Mr. Boone allegedly fired shots at the deputies and then continued to point his gun at deputies. Attached hereto as "Exhibit 6" is a true and correct copy of the district court's order granting summary judgment in favor of the *Del Castillo* defendants. *See* "Exhibit 7" to Supplemental Decl. at Dkt. No. 75-7, which is a true and correct copy of the district court's November 18, 2016, order entering judgment against the plaintiffs in the *Del Castillo* case.

13.     My office handled the fatal police shooting case *Angela Hernandez v. City of Huntington Beach*, Case No. 17-01257 PA (KESx). In that case, the decedent moved toward civilians with a stick, and then an officer-involved shooting occurred. The *Hernandez* defendants moved for summary judgment, and the district court judge granted qualified immunity to the defendant officers as to the federal claims and declined to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. *See* "Exhibit 8" to Supplemental Decl. at Dkt. No. 75-8, which is a true and correct copy of the district court's July 30, 2018, order granting summary judgment in favor of the defendants. Plaintiff refiled her state law claims in the Superior Court of California, County of Orange (Case No. 30-2020-01137506-CU-CR-CJC). The case came to trial, and the jury reached a verdict in favor the defendants, leaving the plaintiff with no recovery. *See* "Exhibit 9" to Supplemental Decl. at Dkt. No. 75-9, which is the March 23, 2022, judgment on the verdict in the *Hernandez* matter.

14.     My office tried the case *Speer v. County of San Bernardino, et al.*, Case No. 5:20-cv-00044-JGB-SP, in the Central District of California. As in the instant case, where Defendants allege that Mr. Boone was armed and was firing at officers, there was evidence in *Speer* that Plaintiff Mr. Speer was armed with a loaded shotgun at the time of the shooting. The facts of *Speer* were a much closer call,

1  where Mr. Speer survived and testified that he never pointed the gun at the deputies,
2  and it was undisputed that Mr. Speer never fired any shots during the incident. The
3  jury considered the evidence and ultimately reached a verdict in favor of the
4  defendants. *See* "Exhibit 10" to Supplemental Decl. at Dkt. No. 75-10, which is a
5  true and correct copy of the October 20, 2021, Judgment After Trial by Jury stating
6  that the plaintiff Mr. Speer shall take nothing.

7      15.    My office handled the 2017 fatal police shooting case *Barron v. State
8  of California, et al.*, Case No. 8:17-cv-1275 JVS (KESx). In that case, a jury in the
9  Central District of California reached a verdict in favor of the defendants, even
10  though the decedent was unarmed. The defendant officer in *Barron* testified that the
11  decedent's actions led him to reasonably believe that the decedent had a gun and
12  would shoot him. The facts of the instant case are even more difficult, where the
13  evidence indicates that Mr. Boone not only had a gun but fired shots at deputies. *See*
14  "Exhibit 11" to Supplemental Decl. at Dkt. No. 75-11, which is a true and correct
15  copy of the January 2, 2019, Judgment Upon Jury Verdict entered against the
16  plaintiff in the *Barron* case.

17      16.    My office handled the case *A.H. et al., v. County of San Bernardino, et
18  al.*, Case no. 5:23-cv-01028-JGB-SHK, which arose from a fatal officer-involved-
19  shooting that occurred after the decedent ran from a traffic stop at night. In *A.H.*, the
20  evidence showed that the decedent threatened to shoot the officer pursuing him nine
21  times before an officer-involved-shooting occurred. Hindsight evidence showed that
22  the decedent in *A.H.* was unarmed at the time of the shooting. The facts of the
23  instant case are even more difficult, where the evidence indicates that Mr. Boone
24  was not only armed at the time of the shooting, but allegedly fired shots at deputies.
25  In 2024, the *A.H.* case settled for a total of $250,000, divided between four
26  plaintiffs. In *A.H.*, the decedent had two minor children, and a judge sitting for the
27  Central District approved the distribution of the minor's settlement in the net
28  amount of $35,338.23 for each minor, including approving a 40 percent contingency

-7-

1  attorney fee. *See* "Exhibit 12" to Supplemental Decl. at Dkt. No. 75-12, which is a
2  true and correct copy of the district court's order approving the compromise of the
3  claims of minor plaintiffs A.H. and H.H.

4       17.    My office handled the fatal police shooting case *Soria v. County of San*
5  *Bernardino*, Case No. 5:22-cv-01958-JGB-KK. In that case, the evidence showed
6  that the decedent made verbal threats and pointed a gun at a neighbor. The decedent
7  in *Soria* was armed with a gun and entering a vehicle to leave the area when he was
8  shot by a San Bernardino County deputy. Based on the foregoing evidence, the
9  Soria plaintiffs accepted a settlement of $250,000, divided between two adult
10 plaintiffs. *See* "Exhibit 13" to Supplemental Decl. at Dkt. No. 75-13, which is a
11 redacted copy of the relevant portion of the 2024 settlement agreement in the *Soria*
12 case.

13      18.    My office handled the fatal police shooting case *J.G. v. City of Arvin*,
14 Case No. 1:20-cv-00941-JLT-BAK in the Eastern District of California. That case
15 settled for a total of $225,000 in 2022, and the presiding district court judge
16 approved the net settlement amount of $25,410.06 to each of the four minors. In the
17 *J.G.* case, the decedent was armed with an ice pick when officers arrived on scene,
18 and they were aware at that time that the decedent had previously been arrested for
19 stabbing a person with an ice pick. According to the officers, the decedent
20 barricaded his girlfriend in a bathroom, disobeyed numerous commands to drop the
21 object and then lunged toward the officers with the object in his hand. The
22 decedent's children and girlfriend were present in the home at the time of the
23 incident. *See* "Exhibit 14" to Supplemental Decl. at Dkt. No. 75-14, which is a true
24 and correct copy of the district court's Findings and Recommendations
25 Recommending Granting *Ex Parte* Application for Compromise of Minors' Claims,
26 including approving a 40 percent contingency attorney fee. *See* "Exhibit 15" to
27 Supplemental Decl. at Dkt. No. 75-15, which is a true and correct copy of the

28

district court's February 8, 2023, Order Adopting Findings and Recommendations and Granting Ex Parte Application for Compromise of Minors' Claims.

19.    My office handled the case *A.B., et al. v. City of Santa Ana, et al.*, Case No. SA CV 18-1553-DOC-ADS, which arose from a fatal officer-involved-shooting that occurred when officers responded to a domestic disturbance call. In *A.B.*, certain evidence showed that the decedent refused commands to drop a weapon, made verbal threats in the vicinity of several family members, and advanced toward officers with the weapon. Based on the foregoing evidence, the plaintiffs agreed to accept a global settlement of $250,000, which was divided between eleven plaintiffs. Five of the eleven plaintiffs were minors. Four of the minor plaintiffs in that case—L.B. (the decedent's sister), J.A. (the decedent's stepson), I.B. (the decedent's brother), and J.M. (the decedent's nephew)—asserted only claims for Negligent Infliction of Emotional Distress ("NIED") and did not have standing to bring wrongful death or survival claims. Minor Plaintiff A.B., who was the decedent's son and successor-in-interest, asserted survival claims on the decedent's behalf, wrongful death claims for the loss of his father, and a claim for NIED. *See* "Exhibit 16" to Supplemental Decl. at Dkt. No. 75-16, which is a true and correct copy of the Complaint in the *A.B.* case showing the claims brought by each plaintiff.

20.    In *A.B.*, as in the instant case involving Mr. Boone, the minor plaintiffs did not share the global settlement equally. Rather, 36 percent of the total recovery ($90,000 gross) was allocated to A.B. as the decedent's minor child and successor-in-interest, and four percent of the total recovery ($10,000 gross) was allocated to each of the four minor plaintiffs who only asserted NIED claims. *See* "Exhibit 17" to Supplemental Decl. at Dkt. No. 75-17, which is a true and correct copy of the petition for compromise of the claims of minor plaintiff A.B. showing the gross recovery allocated to each plaintiff on page 2 of "Exhibit 17." *See* "Exhibit 18" to Supplemental Decl. at Dkt. No. 75-18, which is a true and correct copy of the petition for compromise of the claims of minor plaintiff L.B. *See* "Exhibit 19" to

1  Supplemental Decl. at Dkt. No. 75-19, which is the district court's five orders

2  approving the compromise of the claims of the five minor plaintiffs, A.B., L.B.,

3  J.A., J.M, and I.B. As reflected in "Exhibit 19," the district court approved the

4  distribution of A.B.'s settlement in the net amount of $50,476.38 and approved the

5  distribution of the settlement to L.B., J.A., J.M, and I.B. in the net amount of

6  $5,608.49 to each of L.B., J.A., J.M, and I.B.

7      21.     The distribution and division of the settlement in *A.B.* supports the

8  approval of the proposed distribution and division of the settlement in the instant

9  case involving Mr. Boone. In *A.B.*, minor plaintiff A.B. received a larger recovery

10 compared to the other four minor plaintiffs because A.B., as the decedent's son, was

11 entitled to survival damages for the violation of his father's rights, wrongful death

12 damages for the loss of his relationship with his father, and compensatory damages

13 for his severe emotional distress on his NIED claim. By contrast, L.B., J.A., J.M,

14 and I.B. only had NIED claims and were not entitled to any survival or wrongful

15 death damages. The same is true in the instant case, where Mr. Boone's three minor

16 children—N.B., T.A. and T.B.—were entitled to survival damages for the violation

17 of their father's rights and wrongful death damages for the loss of their relationship

18 with their father, whereas minor plaintiff D.S. only had a NIED claim. For that

19 reason, in the instant case, the Plaintiffs agreed that minor plaintiffs N.B., T.A. and

20 T.B. would make a net recovery of $36,328.39 and agreed that minor plaintiff D.S.

21 would make a net recovery of $8,931.50.

22     22.     My office handled the case *Loida Cavazos v. County of Fresno, et al.,*

23 Case No. 1:23-00859-JLT-BAM, a case that arose from the fatal officer shooting of

24 a man who was physically fighting his family and charged at officers with a large

25 stone, despite being tased, which settled for $275,000 in March 2025. *See* "Exhibit

26 20" to Supplemental Decl. at Dkt. No. 75-20, which is a true and correct copy of the

27 relevant portions of the settlement agreement in that case, redacted.

28

23.    My office handled the case *Yuriar, at al., v. County of Alameda, et al.*, Case No. 23-cv-06438-KAW, a case where officers fatally shot a man who was punching a police officer and threatening to kill the officer. That case settled for $110,000 in early 2025. *See* "Exhibit 21" to Supplemental Decl. at Dkt. No. 75-21, which is a true and correct copy of the relevant portions of the settlement agreement in that case, redacted.

24.    My office handled the fatal police shooting case *Anthony Alvarado v. City of San Gabriel*, Case No. 2:21-cv-09742-JAK-AS. That case settled for $250,000 in October 2022, and the settlement was divided between three plaintiffs. In *Alvarado*, the defense argued that the decedent posed an immediate threat justifying deadly force when he refused orders to drop a gun. The facts of the instant case involving Mr. Boone were even more difficult because not only did he have a gun, but the defendants alleged that Mr. Boone fired shots at deputies. *See* "Exhibit 22" to Supplemental Decl. at Dkt. No. 75-22, which is a true and correct copy of the relevant portions of the settlement agreement in that case, redacted.

25.    My office handled the fatal police shooting case *Cano v. City of Los Angeles*, Case No. CV15-00333 JAK (Ex). That case settled for $50,000 where the decedent was unarmed but took a shooting stance and pantomimed the use of a gun. The officers alleged that they perceived the decedent to be shooting at him, and hindsight evidence showed that the object the decedent had was a cell phone. *See* "Exhibit 23" to Supplemental Decl. at Dkt. No. 75-23, which is a true and correct copy of the relevant portions of the settlement agreement in that case, redacted.

26.    The nature of the Plaintiffs' claims in this lawsuit are set forth in the operative complaint filed in this action. Plaintiffs have agreed to settle their claims without a trial on the merits.

27.    Plaintiffs N.B.'s, T.A.'s, and T.B.'s damages in this case arise from (1) the injuries suffered by their father, Terron Boone (the decedent), for which Plaintiffs N.B., T.A., and T.B. can recover survival damages as a successor in

interest (survival damages); and (2) Plaintiffs N.B.'s, T.A.'s, and T.B.'s individual losses of the decedent's comfort, care, companionship, training, support, and guidance (wrongful death damages).  Plaintiff D.S.'s damages in this case arise from her being in the back seat of the vehicle occupied by the decedent at the time that the decedent was shot.

28.     Plaintiffs' attorneys are requesting attorneys' fees of 40% of the $275,000 in gross settlement proceeds.  Plaintiffs signed retainer agreements with the Law Offices of Dale K. Galipo and the Law Offices of Goldberg & Gage that provide for a 40% contingency fee, which is a total of $110,000, divided as follows: (1) $26,000 from N.B.; (3) $26,000 from T.B.; (3) $26,000 from T.A.; (4) $8,000 from D.S.; (5) $24,000 from adult plaintiff Shellondra Thomas.

29.     Plaintiffs' attorneys also seek reimbursement for each minor plaintiff's pro rata share of Plaintiffs' total advanced litigation costs.  Plaintiffs and their attorneys propose to allocate these costs on a pro rata basis reflecting the total recovery to each plaintiff. The total advanced litigation costs are $11,304.09.  Each minor plaintiff's pro rata share of the litigation costs is as follows:

N.B.: $2,671.61

T.A.: $2,671.61

T.B.: $2,671.61

D.S.: $824.09

Additionally, Plaintiffs' attorneys seek reimbursement for any liens asserted against the settlement, including a $2,244.41 Medi-Cal lien asserted against D.S.'s share of the settlement, and additional liens asserted against adult Plaintiff Shellondra Thomas's portion of the settlement.

30.     The contingency attorney fee award in this case is justified by attorney Dale K. Galipo's skill and experience in the civil rights field, the difficulties and complexities of this case, and the risk assumed by Plaintiffs' counsel.  Mr. Galipo is one of the most successful and experienced civil rights attorneys in the country.  Mr.

Galipo has been elected as a "Super Lawyer" every year since the year 2013. In 2019, Mr. Galipo was selected to the Inner Circle of Advocates, considered to represent the top one hundred civil plaintiff's attorneys in the United States. Also in 2019, Mr. Galipo was elected as a Fellow of the American College of Trial Lawyers, which is recognized as the preeminent organization of trial lawyers in North America. In 2020, Mr. Galipo received the "Trial Lawyer of the Year" award from the Consumer Attorneys Association of Los Angeles ("CAALA"). Also in 2020, Mr. Galipo received the "2020 Consumer Attorney of the Year" award from the Consumer Attorneys of California ("CAOC").

Some of Mr. Galipo's recent notable verdicts include the following: $13,500,000 verdict in the restraint death case *Zelaya v. City of Los Angeles*, tried in federal court before the Honorable Otis Wright in October 2023; $23,800,000 verdict in the police shooting case *Murillo v. City of Los Angeles*, tried in federal court before the Honorable Fernando Olguin in August 2023; $10,000,000 verdict in the case *Najera v. County of Riverside*, tried in federal court in April 2023 before the Honorable Dolly M. Gee; $17,002,000 verdict in the case *French v. City of Los Angeles*, tried in October 2021 before the Honorable Jesus G. Bernal; $13,200,000 verdict in the police in-custody death case *Valenzuela v. City of Anaheim*, tried in November 2019 before the Honorable Cormac J. Carney.

Mr. Galipo has recently been awarded statutory attorney fee rates of over $1,000 an hour and up to $1,400 an hour by multiple federal courts. In the case *L.D. v. City of Los Angeles*, tried in federal court in January 2020 in front of the Honorable Philip Gutierrez, Mr. Galipo achieved a verdict of $4.5 million, and Judge Gutierrez awarded Mr. Galipo an hourly rate of $1,100 in ruling on the attorney fee motion brought post-trial pursuant to 42 U.S.C. § 1988. In the case *Donastorg v. City of Ontario*, tried in federal court in June 2021 before the Honorable Jesus G. Bernal, Mr. Galipo was also awarded $1,100 per hour. In *Craig v. County of Orange*, which Mr. Galipo tried in April of 2019, the Honorable

DECLARATION OF RENEE V. MASONGSONG

Cormac J. Carney awarded Mr. Galipo an hourly rate of $1,000 for work performed in the district court case, as well as $1,200 per hour for his work in defending defendants' appeals to the Ninth Circuit and the Supreme Court.  Also in 2019, Judge Carney awarded Mr. Galipo $1,200 per hour for his work in defending the defendants' appeals of the verdict in the case *Valenzuela v. City of Anaheim*.  In *French v. City of Los Angeles*, Judge Bernal awarded Mr. Galipo $1,100 per hour for his work at the district court level.  In the same case, after the plaintiffs prevailed against the City's appeal, Judge Bernal awarded Mr. Galipo $1,400 per hour for attorney fees on appeal, in an order dated February 21, 2024.  Mr. Galipo's hourly rates as awarded by these federal judges supports Plaintiffs' attorneys' request for the full 40% contingency attorney fee in this case.

Additionally, this case involved a substantial amount of risk.  If the Law Offices of Dale K. Galipo and the Law Offices of Goldberg & Gage were not awarded a fully compensatory fee in cases such as this one, then these attorneys would not be able to take such difficult cases.  In turn, minor plaintiffs such as the minors in this case would not be able to attract competent counsel who could achieve similar results.  Accordingly, Plaintiffs' attorneys request reimbursement of the full amount of their attorneys' fees and costs.

31. As stated above, the gross amount of the settlement is $275,000.  After deducting requested attorneys' fees and deducting and the pro-rata share of costs and lien asserted against D.S.'s share of the settlement, the total net settlement proceeds to the Minor Plaintiffs are as follows:

        N.B.: $36,328.39

        T.A.: $36,328.39

        T.B.: $36,328.39

        D.S.: $8,931.50

32. It is requested that $36,328.39 be used to fund a structured settlement annuity for N.B.  Attached as hereto as "Exhibit A" t is the proposed structured

settlement annuity for N.B., which is incorporated herein in its entirety by reference. N.B.'s guardian *ad litem,* Elonda Holman, agrees to this proposal and believes that it is in the best interests of N.B.

It is further requested that $36,328.39 be used to fund a structured settlement annuity for T.B.  Attached hereto as "Exhibit B" is the proposed structured settlement annuity for T.B., which is incorporated herein in its entirety by reference. T.B.'s guardian *ad litem,* Sharice Armstead, agrees to this proposal and believes that it is in the best interests of T.B.

It is further requested that $36,328.39 be used to fund a structured settlement annuity for T.A.  Attached hereto as "Exhibit B" is the proposed structured settlement annuity for T.A., which is incorporated herein in its entirety by reference. T.A.'s guardian *ad litem,* Sharice Armstead, agrees to this proposal and believes that it is in the best interests of T.A.

It is further requested that $8,931.50 be used to fund a structured settlement annuity for D.S.  Attached hereto as "Exhibit C" is the proposed structured settlement annuity for D.S., which is incorporated herein in its entirety by reference. D.S.'s guardian *ad litem,* Shellondra Thomas, agrees to this proposal and believes that it is in the best interests of D.S. The net settlement amount to D.S. is different from the net settlement amount to T.A., T.B., and N.B. because D.S. had different claims and standing.  T.A., T.B., and N.B. are the children of the decedent, and T.A., T.B., and N.B. had wrongful death and survival claims as the decedent's successors in interest.

33.     This application or petition does not seek an order for payment of money to a special needs trust.

34.     I (attorney Renee V. Masongsong, California State Bar Number 281819) prepared the petition filed concurrently herewith. I am an attorney with the Law Offices of Dale K. Galipo, located at 21800 Burbank Boulevard, Suite 310, Woodland Hills, California, which represents the Plaintiffs in this action.

35.     Plaintiffs' attorneys did not become concerned with this matter at the instance of any party against whom the claims of the Minor Plaintiffs are asserted.

36.     Plaintiffs' attorneys are not employed by any other party or any insurance carrier involved in the matter.

37.     Plaintiffs' attorneys have not to date received any compensation for their services in connection herewith from any person.

38.     In addition to receiving compensation from the Minor Plaintiffs' shares of the settlement as described herein, Plaintiffs' attorneys expect to receive compensation for their services in connection herewith from the gross settlement proceeds allocated to Plaintiff Shellondra Thomas as follows: Plaintiffs' attorneys will receive $24,000 in attorneys' fees from Shellondra Thomas's portion of the settlement and reimbursement from Shellondra Thomas the amount of her pro rata share of costs advanced, which is $2,465.17.

39.     Attached hereto as "Exhibit D" is a group of documents from Prudential Assigned Settlement Services, Corp. including the ratings and sample guarantee.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 9th day of July at Woodland Hills, California.


_s/ Renee V. Masongsong_
Renee V. Masongsong

DECLARATION OF RENEE V. MASONGSONG